IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAI`I WILDLIFE FUND, a Hawaii non-profit corporation; SIERRA CLUB-MAUI GROUP, a non-profit corporation; SURFRIDER FOUNDATION, a non-profit corporation; and WEST MAUI PRESERVATION ASSOCIATION, a Hawaii non-profit corporation, <br><br>    Plaintiffs, <br><br>    vs. <br><br> COUNTY OF MAUI, <br><br>    Defendant. | CIVIL NO. 12-00198 SOM/BMK <br><br> ORDER DENYING MOTION TO DISMISS |

**ORDER DENYING MOTION TO DISMISS**

**I.      INTRODUCTION.**

　　　　This is a citizen-suit enforcement action under the Clean Water Act.  Plaintiffs Hawai`i Wildlife Fund, Sierra Club-Maui Group, Surfrider Foundation, and West Maui Preservation Association seek to require Defendant County of Maui to apply for and comply with the terms of a Clean Water Act National Pollutant Discharge Elimination System ("NPDES") permit for injection wells at the Lahaina Wastewater Reclamation Facility ("LWRF").  The wells allegedly discharge wastewater that migrates into the ocean.

　　　　The County of Maui has moved to dismiss this action. See ECF No. 8.  As part of their response, Plaintiffs filed a

motion to strike Exhibits C and D.  See ECF No. 16.  The parties have stipulated to the dismissal of the Second Claim for Relief asserted in the Complaint.  See ECF No. 30.  The court denies the motion to strike and denies the motion to dismiss.

**II.         BACKGROUND INFORMATION.**

The County of Maui operates the LWRF, which uses injection wells to dispose of wastewater.  See Complaint ¶ 1; see 40 C.F.R. § 144.3 (an "injection well" is a "'well' into which 'fluids' are being injected").  Plaintiffs allege that the LWRF puts 3 to 5 million gallons of wastewater into four injection wells on a daily basis.  Plaintiffs further allege that there are subsurface pipes at the bottom of the wells that allow the wastewater to mix with groundwater that flows into the ocean. Id. ¶¶ 3, 43, 44.  According to Plaintiffs, the County of Maui needs an NPDES permit for that discharge but has not even applied for such a permit.  Id. ¶ 5.

Plaintiffs allege that the County of Maui acknowledged in public hearings in 1973 that wastewater from the LWRF would be discharged into the ocean.  Id. ¶ 45.  In an environmental assessment done in 1991, the County of Maui allegedly agreed that treated effluent (suspended solids, dissolved oxygen, nitrogen, phosphorous) flows from the injection wells into the ocean.  Id. ¶ 45.

In 2007, the University of Hawaii at Manoa allegedly conducted a study that indicated an elevated level of a nitrogen isotope in algae growing in nearshore waters south of the LWRF. Id. ¶¶ 47-50.  Plaintiffs say that the study concluded that the nitrogen came from the LWRF.  Id. ¶ 49.

The United States Geological Survey also allegedly did a study that determined that "wastewater injection plumes were successfully detected in the ocean by nearshore wading surveys at . . . Lahaina, Maui."  Id. ¶ 51.  That study also allegedly found elevated levels of a nitrogen isotope in ocean water samples, which, according to Plaintiffs, is further evidence that wastewater from the LWRF is reaching the ocean.  Id. ¶ 53.

Plaintiffs allege that in 2011 the Environmental Protection Agency ("EPA") put tracer dye into the injection wells as part of a test.  Plaintiffs say that the dye was then found in nearshore waters, confirming that wastewater from the LWRF was reaching the ocean.  Id. ¶ 58.

The court takes judicial notice of a consent agreement entered into by the County of Maui and the EPA in August 2011 regarding the injection wells and compliance with the Safe Drinking Water Act, 42 U.S.C. §§ 300h-2(c), 200j-4(a).  See ECF No. 8-3.  This consent agreement did not discuss whether an NPDES permit was needed for the injection wells under the Clean Water Act, although the consent agreement required the County of Maui

to obtain a water quality certification under section 401 of the Clean Water Act from the State of Hawaii.  Id. ¶ 25.  According to the settlement agreement, the County of Maui applied for that certification, and the State of Hawaii is currently processing that application.  Id. ¶ 26.

**III.    ANALYSIS.**

    **A.   Clean Water Act Framework.**

The Clean Water Act was intended by Congress "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  To further that objective, the Clean Water Act prohibits the "discharge of any pollutant" unless certain provisions of the Clean Water Act are complied with.  See 33 U.S.C. § 1311(a); Natural Res. Defense Council, Inc. v. County of Los Angeles, 673 F.3d 880, 885 (9th Cir. 2011), cert. granted on other grounds, __ S. Ct. __, 2012 WL 2368688 (June 25, 2012).  The Clean Water Act defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source."[1]  33 U.S.C.

---

[1] In relevant part, the Clean Water Act defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

The Clean Water Act defines "navigable waters" as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The Supreme Court says:

§ 1362(12). The Clean Water Act allows discharges of pollutants when an NPDES permit is obtained and complied with. See 33 U.S.C. § 1342. Given this statutory framework, the Ninth Circuit has stated that a defendant must obtain an NPDES permit when it "(1) discharge[s] (2) a pollutant (3) to navigable waters (4) from a point source." Headwaters, Inc. v. Talent Irrigation Dist., 243 F.3d 526, 532 (9th Cir. 2001).

The Complaint's First Claim for Relief asserts that the County of Maui was required to obtain an NPDES permit for the wastewater it puts into the injection wells at the LWRF. In this motion, the County of Maui is not contesting whether its disposal of wastewater into the injection wells at LWRF qualifies as a discharge of pollutants from a point source. The County of Maui

---

> the phrase "the waters of the United States" includes only those relatively permanent, standing or continuously flowing bodies of water "forming geographic features" that are described in ordinary parlance as "streams[,] ... oceans, rivers, [and] lakes." See Webster's Second 2882. The phrase does not include channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall.

Rapanos v. United States, 547 U.S. 715, 739 (2006).

The Clean Water Act defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include agricultural stormwater discharges and return flows from irrigated agriculture." 33 U.S.C. § 1362(14).

5

instead argues that it is not discharging pollutants into navigable waters. Whether a discharge of wastewater into an injection well qualifies as a discharge of pollutants into navigable waters depends on the circumstances.

The Ninth Circuit faced a similar issue in <u>Northern California River Watch v. City of Healdsburg</u>, 496 F.3d 993 (9th Cir. 2007). In that case, a waste treatment plant discharged sewage into a body of water known as "Basalt Pond," a rock quarry pit that was filled with water from a surrounding aquifer located next to the Russian River. <u>See</u> <u>id.</u> at 995. The Ninth Circuit stated that the Russian River and Basalt Pond were situated on top of a gravel bed saturated with water such that there was "a continuous passage of water between Basalt Pond and the Russian River." <u>Id.</u> at 997.

The Ninth Circuit examined various Supreme Court precedents in determining whether Basalt Pond qualified as navigable water. Citing <u>Solid Waste Agency of Northern Cook County v. United States Corps of Engineers</u>, 531 U.S. 159 (2001), the Ninth Circuit noted that isolated ponds and mudflats that lack a "significant nexus" to navigable waters are not subject to the Clean Water Act. <u>See</u> <u>Healdsburg</u>, 496 F.3d at 998.

The Ninth Circuit then examined <u>Rapanos v. United States</u>, 547 U.S. 715 (2006). In that 4-4-1 plurality opinion, the plurality stated that only wetlands with a continuous surface

connection to bodies of water are "waters of the United States" protected under the Clean Water Act. Rapanos, 547 U.S. at 742. The dissent would have ruled that even wetlands not directly adjacent to navigable waters, but adjacent to tributaries of navigable waters, are protected under the Clean Water Act because they have the requisite "significant nexus". Id. at 797. Justice Kennedy, concurring with the plurality, examined whether there was a hydrologic connection sufficient to establish a "significant nexus." See id. at 786. The Ninth Circuit read Justice Kennedy's concurrence as providing the controlling rule. Healdsburg, 496 F.3d at 999-1000. The Ninth Circuit noted that a "mere hydrological connection" could be too insubstantial to provide the required nexus. Id. at 1000. Focusing on the need for a "significant nexus," the Ninth Circuit noted that any connection had to be evaluated in light of the Clean Water Act's goals of restoring and maintaining the chemical, physical, and biological integrity of the nation's waters. Id. The Ninth Circuit concluded that Basalt Pond had a "significant nexus" to navigable waters, "not only because the Pond waters seep into the navigable Russian River, but also because they significantly affect the physical, biological, and chemical integrity of the River." Id. at 995.

7

### B.   **Primary Jurisdiction**.

The County of Maui argues that this court should refrain from adjudicating Plaintiffs' claim under the primary jurisdiction doctrine. Because the EPA and the State of Hawaii Department of Health are allegedly assessing whether an NPDES permit is required, the County of Maui seeks dismissal of or a stay of this case.

Under the primary jurisdiction doctrine, courts may stay proceedings when issues involved in the proceedings are within the jurisdiction of and under consideration by an administrative agency with extensive regulatory powers over the matter and the parties involved. See Indus. Commc'n Sys. v. Pac. Tel. & Tel. Co., 505 F.2d 152, 156 (9th Cir. 1974).[2] "Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." See Reiter v. Cooper, 507 U.S. 258, 269-69 (1993). Accord Suntek v. Semiconductor Co. v.

---

[2] A stay may also be ordered under the court's inherent power to control its own docket  See Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936) ("the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance"); Mediterranean Enter. v. Ssyangyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983) (the "trial court possesses the inherent power to control its own docket and calendar").

Microchip Tech. Inc., 307 F.3d 775, 780 (9th Cir. 2002) ("Primary jurisdiction is not a doctrine that implicates the subject matter jurisdiction of the federal courts.  Rather, it is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts.").

In support of its primary jurisdiction doctrine argument, the County of Maui submits a nonprofit organization's May 2012 newsletter called "Environment Hawaii."  The newsletter represented that, according to David Albright, manager of the groundwater and underground injection control program for the EPA, it was too soon to determine whether the LWRF dye tests would trigger an NPDES permit requirement.  See ECF No. 8-6.  Albright was also quoted in an Associated Press article on April 17, 2012, as saying that the EPA was cooperating with others "to collect the best science we can to make whatever further decisions need to be made."  See ECF No. 8-5.  For purposes of deciding the present motion, the court is not treating these hearsay statements as indicating the EPA's position.  That is, the court is not admitting those statements as evidence.  The court therefore sees no need to grant Plaintiffs' motion to strike the exhibits containing Albright's alleged statements.

Even if the court did consider Albright's statements, the court would conclude that the County of Maui fails to show

9

that the primary jurisdiction doctrine applies here.  All Allbright supposedly said was that the EPA was waiting for further information before determining what might be required. Albright does not indicate that the EPA will indeed decide any issue that is before this court.  At most, even if considered, Albright's statements suggest a possible decision relating to an NPDES permit.  Thus, the statements do not demonstrate that the issues involved in this proceeding are within the jurisdiction of and presently under consideration by the EPA.  On the present record, the court cannot conclude that the primary jurisdiction doctrine applies.  See Indus. Commc'n Sys., 505 F.2d at 156.

In rejecting the primary jurisdiction doctrine argument as raised in this motion, the court is not foreclosing the possibility that it may deem the doctrine applicable on a different record.

**C. Ripeness.**

The County of Maui also asserts that Plaintiffs' claim that it should seek an NPDES permit is not ripe.  The County of Maui says that, as demonstrated by the consent agreement, it is currently going through a Safe Drinking Water Act permitting process and that, once that process is completed, new permits with possible new terms and conditions might allay Plaintiffs' fears.

The ripeness doctrine prevents courts, through avoidance of premature adjudication, from becoming entangled in abstract disagreements. Oklevueha Native Am. Church of Hawaii, Inc. v. Holder, 676 F.3d 829, 835 (9th Cir. 2012). Ripeness has both a constitutional and a prudential component. Id. The constitutional component mandates that, prior to exercising jurisdiction, a court have before it a case or controversy that makes the issues presented definite and concrete, not hypothetical or abstract. Id. The prudential component requires a court to consider the fitness of the issues for judicial review along with the hardship to the parties of withholding court consideration. Id. at 837.

The County of Maui argues that Plaintiffs' Clean Water Act claims are not ripe because the EPA and the State of Hawaii are examining the injection wells under the Safe Drinking Water Act framework. This court disagrees with the County. Plaintiffs contend that the County of Maui is violating the Clean Water Act by failing to have an NPDES permit. This court is not persuaded by the County of Maui's argument that, because the EPA is already supervising the injection wells under the Safe Drinking Water Act, "the Court can be reassured that . . . the County is protecting the public from any potential harmful contact with bacteria." The Clean Water Act is concerned with more than assuring that the public has safe drinking water. It aims "to

restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Even if, as the County of Maui contends, compliance with the Clean Water Act will be expensive and impractical, compliance is not excused by compliance with a separate federal law. See Hudson River Fisherman's Ass'n v. City of New York, 751 F. Supp. 1088, 1100 (S.D.N.Y. 1990) ("Clearly, the Safe Drinking Water Act does not provide adequate justification for ignoring the express and unambiguous directive of the previously adopted Clean Water Act. The objective of the Clean Water Act is to preserve the environmental integrity of navigable waters, while the objective of the Safe Drinking Water Act is to prescribe minimum national standards concerning the purity of drinking water for the protection of the public health. Neither of these objectives [is] mutually exclusive."). Accord Bath Petroleum Storage, Inc. v. Sovas, 309 F. Supp. 2d 357, 369 (N.D.N.Y. 2004) (stating that the Safe Drinking Water Act does not preempt the Clean Water Act and noting that compliance with a Safe Drinking Water Act Underground Injection Control permit does not excuse compliance with other acts).

Nor does this case lack ripeness because the County of Maui has applied for a Clean Water Act section 401 water quality certification. On the present motion, the County of Maui fails to demonstrate the meaning of such an application. That is, the

County of Maui fails to demonstrate that, if it receives the requested water quality certification, it need not obtain an NPDES permit.

Finally, the County of Maui is unpersuasive in arguing that further studies might reveal that an NPDES permit is unnecessary.  Plaintiffs have alleged that the County of Maui's discharge of wastewater into the injection wells causes pollutants to flow into the ocean.  Plaintiffs have further alleged that this is shown by several studies.  For purposes of this facial challenge to jurisdiction, the court assumes the facts alleged in the Complaint to be true.  See Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996) (when a motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.); St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (whether a case is ripe goes to the court's subject matter jurisdiction). For purposes of this motion, Plaintiffs have sufficiently alleged a significant nexus between the County of Maui's discharge of pollutants and the ocean such that this action survives the present motion to dismiss.  It may well be that studies will show no such significant nexus.  However, any such ongoing or future study does not render this action unripe.

**D. Parties.**

The County of Maui seeks dismissal of the Complaint under Rule 12(b)(7) of the Federal Rules of Civil Procedure, arguing that Plaintiffs have failed "to join a party under Rule 19" of the Federal Rules of Civil Procedure, which governs compulsory joinder in federal district courts. <u>EEOC v. Peabody W. Coal Co.</u>, 400 F.3d 774, 778 (9th Cir. 2005). In relevant part, Rule 19(a) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The County of Maui argues that both the EPA and the Department of Health ("DOH"), the state agency that administers the Clean Water Act's NPDES program, must be joined as parties. However, the Ninth Circuit has already rejected that argument. <u>See</u> <u>Ass'n to Protect Hammersley, Eld, & Totten Inlets v. Taylor</u>

Res., Inc., 299 F.3d 1007, 1014 (2002) (ruling in a Clean Water Act case involving a citizen suit regarding an NPDES permit that "federal and state agencies administering federal environmental laws are not necessary parties in citizen suits to enforce the federal environmental laws").

The County of Maui argues that complete relief cannot be afforded without the presence of the EPA or the DOH. But if Plaintiffs are successful, this court could order the County of Maui to apply for and obtain an NPDES permit. The court does not view itself as limited to issuing an order permanently shutting down the injection wells in the absence of a permit. Monetary fines requested in the Complaint have not been shown by the County of Maui to be unavailable as an additional remedy. Nor has the County of Maui shown that this court lacks the power to hold it in contempt if it were to violate a court order. In short, dismissal is not required just because the EPA and DOH are not parties.

**E.   Diligent Prosecution.**

Citizen suits under the Clean Water Act are allowed pursuant to 33 U.S.C. § 1365(a). However, no such citizen suit "may be commenced . . . if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any

such action in a court of the United States any citizen may intervene as a matter of right."  33 U.S.C. § 1365(b)(1)(B).

The County of Maui points to the consent agreement between the EPA and the County of Maui as triggering the protection of § 1365(b)(1)(B) and requiring dismissal of the Complaint.  What the County of Maui fails to show is that either the EPA or the State of Hawaii has commenced a court action to require compliance with an effluent limitation of the Clean Water Act.  Nothing in the record indicates that any entity is diligently prosecuting the County of Maui for a Clean Water Act violation.  It may well be that there is some overlap between the standards required by the Safe Drinking Water Act consent agreement and the effluent limitations under the Clean Water Act, but the County of Maui fails to show that § 1365(b)(1)(B) applies in the absence of an ongoing Clean Water Act court case by either the EPA or the State of Hawai.

IV.     CONCLUSION.

The court denies the motion to dismiss and the motion to strike exhibits.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 8, 2012.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Hawaii Wildlife Fund, et al. v. County of Maui; Civil No. 12-00198 SOM/BMK; ORDER DENYING MOTION TO DISMISS