IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAI`I WILDLIFE FUND, a Hawaii non-profit corporation; SIERRA CLUB-MAUI GROUP, a non-profit corporation; SURFRIDER FOUNDATION, a non-profit corporation; and WEST MAUI PRESERVATION ASSOCIATION, a Hawaii non-profit corporation, Plaintiffs, vs. COUNTY OF MAUI, Defendant. | CIVIL NO. 12-00198 SOM/BMK ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.   INTRODUCTION.**

Before the court are cross-motions for partial summary judgment filed by Plaintiffs Hawai`i Wildlife Fund, Sierra Club, Surfrider Foundation, and West Maui Preservation Association (collectively, "Plaintiffs") and by Defendant County of Maui (the "County").  The cross-motions concern whether the County has violated the Clean Water Act by discharging effluent without a National Pollutant Discharge Elimination System ("NPDES") permit at two of four injection wells at the Lahaina Wastewater Reclamation Facility ("LWRF").  The court grants Plaintiffs' motion and denies the County's motion.

## II.     FACTUAL BACKGROUND.

The County of Maui operates the LWRF, a wastewater treatment facility approximately three miles north of the town of Lahaina on the island of Maui.  See ECF No. 41, PageID # 451; ECF No. 139-10, PageID # 5029.  The facility receives approximately four million gallons per day of sewage from a collection system serving approximately 40,000 people.  See ECF No. 139-10, PageID # 5029.  The facility filters and disinfects the sewage, then releases the treated effluent (sometimes called "reclaimed water" or "wastewater") into four on-site injection wells.  See id.  The effluent reaches a groundwater aquifer, the precise depth of which "fluctuates somewhat, depending on water inputs and other conditions."  The aquifer contains "a sufficient quantity of ground water to supply a public water system."  See ECF No. 129-13, PageID # 4230.

This court granted summary judgment to Plaintiffs as to the County's liability under the Clean Water Act for discharges of effluent into two of the injection wells, wells 3 and 4, that cause pollutants to make their way to the Pacific Ocean.  See ECF No. 113.  Both parties now seek summary judgment on the issue of whether the County has violated the Clean Water Act by discharging effluent into the two remaining wells, wells 1 and 2.

The Environmental Protection Agency ("EPA"), the State of Hawaii Department of Health ("DOH"), the U.S. Army Engineer

Research and Development Center, and researchers at the University of Hawaii conducted a study "to provide critical data about the possible existence of a hydraulic connection between the injection of treated wastewater effluent at the [LWRF]. . . and nearby coastal waters, confirm locations of emerging injected effluent discharge in these coastal waters, and determine a travel time from the LWRF injection wells to the coastal waters." ECF No. 139-10, PageID # 5026. The study involved placing tracer dye into injection wells 2, 3, and 4, and monitoring the submarine springs of Kahekili Beach on Maui's west shore. See id.

Although dye introduced into wells 3 and 4 was detected at the seeps (i.e., the areas where the groundwater reaches the surface) eighty-four days after being placed in those wells, dye introduced to well 2 was not detected. Id., PageID #s 5028, 5042. The study concluded that the presence of dye from wells 3 and 4 at the seeps "conclusively demonstrate[s] that a hydrogeologic connection exists between LWRF Injection Wells 3 and 4 and the nearby coastal waters of West Maui." Id., PageID # 5028. No tracer study has been conducted on well 1. See ECF No. 127, PageID # 3733; ECF No. 139, PageID # 4889.

Irrespective of the tracer study's results for well 2 and the lack of such a study for well 1, the parties do not dispute that effluent pumped into wells 1 and 2 eventually finds

3

its way to the Pacific Ocean.  See ECF No. 129, PageID # 3933; ECF No. 136, PageID # 4515.  Though the County contends that the point of entry into the ocean of flow from wells 1 and 2 cannot be identified, the County acknowledges that there is a hydrogeologic connection between wells 1 and 2 and the ocean.  See ECF No. 136, PageID # 4515.  Indeed, this court repeatedly confirmed at the hearing on the present cross-motions that the County was expressly conceding that pollutants introduced by the County into wells 1 and 2 were making their way to the ocean.

Plaintiffs contend that the County's continued discharge of effluent into wells 1 and 2 without an NPDES permit violates the Clean Water Act.  See ECF No. 128-1, PageID # 3927.  The County contends that it is not subject to liability with respect to wells 1 and 2.  See ECF No. 125, PageID # 3708.

**III.      STATUTORY FRAMEWORK.**

The Clean Water Act, passed in 1972, was intended by Congress "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  To further that objective, the Clean Water Act prohibits the "discharge of any pollutant" unless certain provisions of the Clean Water Act are complied with.  See 33 U.S.C. § 1311(a).  The Clean Water Act defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source."  33 U.S.C. § 1362(12).  In relevant part,

4

the Clean Water Act defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6). The Clean Water Act defines "navigable waters" as "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The Clean Water Act defines "point source" as:

> any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include agricultural stormwater discharges and return flows from irrigated agriculture.

33 U.S.C. § 1362(14). The Clean Water Act allows discharges of pollutants when an NPDES permit is obtained and complied with. See 33 U.S.C. § 1342.

Plaintiffs sued the County, seeking to compel it to apply for and comply with the terms of an NPDES permit, and to pay civil penalties for discharges Plaintiffs contend were unlawful.

**IV.   STANDARD.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact

5

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000). The movant must support his or her position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. <u>See</u> <u>id.</u> at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to

6

identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)); see also Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587); accord Addisu, 198 F.3d at 1134 ("There must be enough

doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party.  T.W. Elec. Serv., Inc., 809 F.2d at 631.  Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  Id.  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  Id.

V.     **ANALYSIS.**

   A.    **Requests for Judicial Notice.**

The County makes multiple requests for judicial notice.  See ECF Nos. 127-13, 137-13, 141-8.  There being no opposition from Plaintiffs, the court grants those requests and takes judicial notice of the documents as public records and government documents.

   B.    **Plaintiffs are Entitled to Summary Judgment on the County's Liability Under the Clean Water Act for Discharges into Wells 1 and 2 at the LWRF.**

To establish the County's liability under the Clean Water Act, Plaintiffs must show that the County has discharged a pollutant into navigable waters from a point source without an

NPDES permit. See 33 U.S.C. §§ 1311(a), 1342, 1362(12); see also Headwaters, Inc. v. Talent Irrigation Dist., 243 F.3d 526, 532 (9th Cir. 2001).

There is no dispute that the County is discharging a pollutant into navigable waters without an NPDES permit. See ECF No. 136, PageID # 4515 ("The County does not dispute that effluent injected into Wells 1 and 2 enters groundwater and eventually flows to and enters the ocean. In other words, Plaintiffs meet three of the four elements of the 'discharge of any pollutant' definition, i.e., 'addition of any pollutant to navigable waters.'").[1] The only area of dispute between the parties is whether the discharge is from a point source. See id.

The County contends that an indirect discharge of pollutant to navigable waters requires "a series of sequential point sources conveying [the] pollutant[] from the initial point of discharge to navigable waters." ECF No. 125, PageID # 3710. In other words, according to the County, when a single point source does not discharge pollutant directly into navigable waters, liability under the Clean Water Act does not arise unless the pollutant passes through point sources along the entire

---

[1] As this court has noted earlier in this order, the County's statement that, with respect to wells 1 and 2, there is no tracer study data of the type available with respect to wells 3 and 4 concerns a meaningless distinction for purposes of the present motions given the County's concession that pollutants from wells 1 and 2 reach the ocean. The County nowhere contends that the amount of effluent is *de minimis*.

9

pathway it travels. Because Plaintiffs do not offer evidence of such multiple point sources, the County says that the effluent injected into wells 1 and 2 cannot be said to be discharged into navigable waters from a point source. According to the County, the groundwater though which the effluent travels cannot be a point source under 33 U.S.C. § 1362(14) because groundwater is not a "discernible, confined and discrete conveyance." Id., PageID # 3715.

The County acknowledges that, in making its present argument, it is seeking to persuade this court to revisit its earlier ruling granting Plaintiffs summary judgment as to wells 3 and 4. In its earlier order, this court addressed the County's argument that groundwater could not be considered a conduit because there is no "confinement or containment of the water," as required of a point source under the Clean Water Act. ECF No. 97, PageID # 3504 (internal quotation marks omitted). This court stated:

> This argument elides the distinction between a point source and a conduit. A point source is specifically defined in the Clean Water Act as a "confined and discrete conveyance." While any conduit that is a "confined and discrete conveyance" is a point source, that does not mean that all conduits must be "confined and discrete conveyances." An injection well itself is a point source, and the groundwater acting as a conduit need not also be "confined and discrete."

ECF No. 113, PageID # 3654

Plaintiffs note that the County failed to file a timely motion for reconsideration of this court's earlier order, and argue that the County cannot now challenge this court's prior decision given the law of the case doctrine. Under that doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." United States v. Cuddy, 147 F.3d 1111, 1114 (9th Cir. 1998) (internal quotation marks omitted). The County urges this court to depart from the law of the case because the prior ruling was clearly erroneous and results in a manifest injustice. See id. ("[A] court may have discretion to depart from the law of the case if: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result.").

This court remains unpersuaded by the County's reading of what the Clean Water Act requires. The authorities the County refers to are neither binding authority for the County's theory nor analyses establishing error in this court's prior ruling. In this court's "Inclinations," routinely issued by this judge in advance of hearings, the County was asked to come to the hearing on the present motions prepared to discuss authority specifically requiring pollutants not directly discharged into navigable

11

waters to travel though "a series of sequential point sources conveying pollutants from the initial point of discharge to navigable waters." ECF No. 156 (internal quotation marks omitted). At the hearing, the County discussed: Rapanos v. United States, 547 U.S. 715 (2006); South Florida Water Management District v. Miccosukee Tribe of Indians, 541 U.S. 95 (2004); United States v. Ortiz, 427 F.3d 1278 (10th Cir. 2005); Sierra Club v. El Paso Gold Mines, Inc., 421 F.3d 1133 (10th Cir. 2005); Concerned Area Residents for Environment v. Southview Farm, 34 F.3d 114 (2d Cir. 1994); Committee To Save Mokelumne River v. East Bay Municipal Utility District, 13 F.3d 305 (9th Cir. 1993); Dague v. City of Burlington, 935 F.2d 1343 (2d Cir. 1991); Alaska Community Action on Toxics v. Aurora Energy Services, LLC, 940 F. Supp. 2d 1005 (D. Alaska 2013); San Francisco Baykeeper v. West Bay Sanitary District, 791 F. Supp. 2d 719 (N.D. Cal. 2011); and United States v. Velsicol Chemical Corp., 438 F. Supp. 945 (W.D. Tenn. 1976).

These cases, many of which were cited in the County's papers, do not directly address the County's point source theory. Some of the cases involve sequential point sources, and some consider whether groundwater itself constitutes a point source, but none actually holds that a pollutant's indirect journey to navigable waters must be through a series of point sources.

At the hearing on this matter, the County articulated its position by saying that it could only be liable under the Clean Water Act if a pollutant from well 1 and/or well 2 ultimately reached navigable waters through a point source. Even assuming this particular articulation could be said to have been included in what the County advanced in its papers, the County fails to cite any binding authority for that proposition. Additionally, exempting discharges of pollutants from a point source merely because the polluter is lucky (or clever) enough to have a nonpoint source at the tail end of a pathway to navigable waters would undermine the very purpose of the Clean Water Act.

The County's present expansion of arguments made during earlier proceedings does not establish a basis for this court to read the point source requirement for wells 1 and 2 differently from the requirement for wells 3 and 4. The statutory language at issue includes no suggestion that a pollutant taking an indirect path from a well to the ocean must pass through "a series of sequential point sources." See ECF No. 125, PageID # 3710. The Clean Water Act prohibits "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). Neither this language nor the statutory definition of "point source" supports the County's theory.

This court rests on the analysis set forth in its order addressing wells 3 and 4. Adopting the County's interpretation

13

of the point source requirement would erode the Clean Water Act's prohibition on discharges of pollutants without an NPDES permit. It would be nonsensical to regulate a polluter that discharges effluent to the ocean through a series of sequential point sources, while exempting a polluter that discharges the same effluent through a combination of an initial point source and subsequent nonpoint sources.  In both situations, pollutants are discharged into navigable waters from point sources.  There is no basis for distinguishing between the two.

This court's rejection of the County's interpretation of the point source requirement by no means "nullifie[s] the meaning of point source" or "read[s] the point source requirement out of the statute," as the County contends.  ECF No. 125, PageID # 3713, 3714 (internal quotation marks omitted).  The injection wells are indisputably point sources.  See ECF No. 125, PageID # 3715 ("The LWRF injection wells are the only confined and discrete conveyances here.  33 U.S.C. § 1362(14) (point source includes well).").  The County's discharge of effluent into the injection wells satisfies the point source requirement, the only disputed issue before this court on the present motions.

The parties' discussions concerning the location and expanse of the pollutant's entry into the ocean and the harm, or lack thereof, resulting from discharge of the pollutants, are irrelevant to the County's liability.  See, e.g., Comm. To Save

Mokelumne River v. E. Bay Mun. Util. Dist., 13 F.3d 305, 309 (9th Cir. 1993) ("[T]he Act categorically prohibits any discharge of a pollutant from a point source without a permit. Thus, the factual issue raised by defendants concerning the historical level of pollution compared to the current level of pollution is not material to the resolution of the Committee's claim, and therefore does not preclude summary judgment on the issue of liability." (citations omitted)). This court sees no need to address those arguments on the present motions, which go solely to the issue of whether the County is liable.

Because Plaintiffs meet the point source requirement, and because there is no dispute regarding any of the other elements necessary for liability under the Clean Water Act, this court concludes that there is no genuine issue of material fact precluding a finding that the County is liable for discharges from wells 1 and 2 without an NPDES permit.

### C. Requests to Strike Evidence.

Both parties request that this court strike opposing experts' statements. See ECF No. 138, PageID # 4851; ECF No. 140, PageID # 5322; ECF No. 145. Whether this court considered the challenged evidence or not, the court's ruling would be unchanged. This court in actuality does not deem the challenged material necessary to deciding the summary judgment motions before it. The requests to strike are denied on the ground that

parsing the assertions in those requests will have no impact on the summary judgment motions.

**VI.      CONCLUSION.**

Plaintiffs' motion for partial summary judgment is granted and the County's motion for partial summary judgment is denied.

The requests for judicial notice are granted, and the requests to strike evidence are denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 23, 2015.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Hawai`i Wildlife Fund, et al. v. County of Maui; Civil No. 12-00198 SOM/BMK; ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT