IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAI`I WILDLIFE FUND, a Hawaii non-profit corporation; SIERRA CLUB-MAUI GROUP, a non-profit corporation; SURFRIDER FOUNDATION, a non-profit corporation; and WEST MAUI PRESERVATION ASSOCIATION, a Hawaii non-profit corporation,<br><br>      Plaintiffs,<br><br>  vs.<br><br>COUNTY OF MAUI,<br><br>      Defendant. | CIVIL NO. 12-00198 SOM/BMK<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON LACK OF FAIR NOTICE AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CIVIL PENALTIES |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON LACK OF FAIR NOTICE AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CIVIL PENALTIES**

**I.      INTRODUCTION.**

The court has before it a motion for summary judgment filed by Defendant County of Maui asserting that the County lacked fair notice that it was subject to penalties given actions it took without a National Pollutant Discharge Elimination System ("NPDES") permit. Also before the court is a motion for partial summary judgment filed by Plaintiffs Hawai`i Wildlife Fund, Sierra Club, Surfrider Foundation, and West Maui Preservation Association (collectively, "Plaintiffs") that seeks to establish the maximum number of statutory violations. The court denies the County's motion and grants Plaintiffs' motion.

## II. FACTUAL BACKGROUND.

The County of Maui operates the Lahaina Wastewater Reclamation Facility ("LWRF"), a wastewater treatment facility approximately three miles north of the town of Lahaina on the island of Maui.  See ECF No. 41, PageID # 451; ECF No. 139-10, PageID # 5029.  The facility receives approximately four million gallons of sewage per day from a collection system serving approximately 40,000 people.  See ECF No. 139-10, PageID # 5029. The facility filters and disinfects the sewage, then releases the treated effluent into four on-site injection wells.  See id.  The effluent reaches a groundwater aquifer and eventually the ocean. See ECF No. 129-13, PageID # 4230.

In a summary judgment order issued on May 30, 2014, this court ruled that the County was violating the Clean Water Act by discharging into navigable waters effluent containing pollutants from two of the injection wells, wells 3 and 4, without an NPDES permit.  See ECF No. 113.  In a separate summary judgment order issued on January 23, 2015, this court ruled that the County was similarly violating the Clean Water Act with respect to discharges from the remaining two injection wells, wells 1 and 2.  See ECF No. 162.

Having been found liable under the Clean Water Act, the County seeks summary judgment in its favor with respect to potential penalties, arguing that this court cannot assess

statutory penalties against the County because the County lacked fair notice that an NPDES permit was required.  See ECF No. 172.[1]

Plaintiffs, for their part, seek partial summary judgment regarding the method of calculating the civil penalties that may be assessed against the County.  See ECF No. 176.  Plaintiffs ask this court to determine the maximum possible number of the County's violations of the Clean Water Act by counting the number of days within the limitations period that effluent from each injection well was discharged and then totaling the results for all four wells.  See ECF No. 176-1, PageID # 6204.

**III.    STANDARD.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Addisu v. Fred Meyer, Inc., 198 F.3d 1130,

---

[1] In the County's motion for summary judgment, it stated that it "reserves its right to provide additional undisputed facts regarding agency public statements once the County receives a complete response to its May 2014 FOIA to EPA."  ECF No. 172-1, PageID # 5974.  Based on this statement, the County supplemented Appendix A to its motion for summary judgment three times without leave of court.  Under Local Rule 7.4, "[n]o further or supplemental briefing shall be submitted without leave of court."  Court staff responded to a request from the County's counsel regarding the manner of filing at least one of the County's supplements, but that was merely a logistical discussion that did not constitute leave of court.  The County may not reserve a right it does not have.  However, whether considering or striking ECF Nos. 190, 194, and 216-8, the court reaches the same result on the County's motion.

3

1134 (9th Cir. 2000). The movant must support his or her position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of

material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)); see also Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587); accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

5

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

**IV.      REQUESTS FOR JUDICIAL NOTICE.**

In connection with its motion for summary judgment, the County requests that this court take judicial notice of numerous documents. See ECF No. 173-2, PageID #s 6007-18; ECF No. 190-2, PageID #s 6405-19; ECF No. 216-17, PageID #s 7074-80. Plaintiffs have not opposed any of the County's requests.

The court takes judicial notice of the following exhibits in support of the County's motion for summary judgment as either public records, government documents, or the contents of the Federal Register: Exhibits 1 to 21, 23 to 42, the second page of 43, and 44 to 45. See ECF No. 173. The court also takes judicial notice of Exhibits 1 to 5 in support of the County's reply memorandum as public records and government documents. See ECF No. 216.

The court declines to take judicial notice of Exhibit 22 (a letter), ECF No. 173, and Exhibits 52 to 67 (emails), ECF No. 190, in support of the County's motion, and Exhibits 6 to 12 (emails and notes) in support of the County's reply memorandum, ECF No. 216. The County has not demonstrated that those exhibits, even if generated by government officials, are proper subjects for judicial notice.

**V.    THE COUNTY IS NOT ENTITLED TO SUMMARY JUDGMENT BASED ON A LACK OF FAIR NOTICE.**

    **A.    This Court Applies the Ninth Circuit's Articulation of the Required Fair Notice.**

The County contends that it had no notice from relevant statutes, regulations, or agency statements that its discharges from the LWRF required an NPDES permit. See ECF No. 172-1, PageID # 5966. According to the County, this lack of "fair notice" precludes the assessment of penalties against it for violations of the Clean Water Act. See id.

The Due Process Clause of the Constitution requires "fair notice of what conduct is prohibited before a sanction can be imposed." Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996). To provide fair notice, "a statute or regulation must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly.'" United States v. Approximately 64,695 Pounds of Shark Fins, 520 F.3d 976, 980 (9th Cir. 2008) (quoting Grayned v. City of Rockford,

7

408 U.S. 104, 108 (1972)). In the absence of fair notice, a party may not be deprived of property through civil or criminal penalties. See id.

The County relies on the D.C. Circuit's articulation of the required fair notice as notice that allows "a regulated party acting in good faith [to] be able to identify, with 'ascertainable certainty,' the standards with which the agency expects parties to conform." Gen. Elec. Co. v. EPA, 53 F.3d 1324, 1329 (D.C. Cir. 1995). The Ninth Circuit uses a different articulation of the requirement, saying that a statute or regulation must "give the person of ordinary intelligence a *reasonable opportunity to know what is prohibited* so that he may act accordingly." Shark Fins, 520 F.3d at 980 (emphasis added and internal quotation marks omitted). The Ninth Circuit recognizes that "due process does not demand unattainable feats of statutory clarity" and "absolute precision in drafting laws is not demanded, particularly where the law does not impose a criminal penalty." Planned Parenthood of Cent. & N. Arizona v. State of Ariz., 718 F.2d 938, 948 (9th Cir. 1983) (internal quotation marks omitted).

At the hearing on its motion, the County contended that the Ninth Circuit "directly and indirectly" relied on the "ascertainable certainty" standard in its decisions in Shark Fins, United States v. Trident Seafoods Corporation, 60 F.3d 556

8

(9th Cir. 1995), and <u>Phelps Dodge Corporation v. Federal Mine Safety & Health Review Commission</u>, 681 F.2d 1189 (9th Cir. 1982).

Under the circumstances of the present case, any distinction between the Ninth Circuit's and the D.C. Circuit's articulations is immaterial to this court's analysis.

### B. The County Has Not Demonstrated That it Lacked Fair Notice.

The County contends that the plain language of the Clean Water Act does not provide notice that an NPDES permit is required for the County's discharges from the LWRF. The County reads the Clean Water Act as indicating that "wastewater disposal through a UIC [Underground Injection Control] well into groundwater does not require an NPDES permit." ECF No. 172-1, PageID # 5970.

The Clean Water Act prohibits the "discharge of any pollutant by any person." 33 U.S.C. § 1311(a). The Clean Water Act defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). There is an exception to the general prohibition on the discharge of pollutants if a party obtains an NPDES permit. <u>See</u> 33 U.S.C. § 1342.

The County has never disputed that it releases pollutants from the LWRF that ultimately reach the ocean. The County's motion itself characterizes this information as "public knowledge." ECF No. 172-1, PageID # 5972.

9

Nor has the County ever disputed that the four injection wells at the LWRF are "point sources" under the Clean Water Act. See, e.g., ECF No. 125, PageID # 3715 ("The LWRF injection wells are the only confined and discrete conveyances here."). Indeed, the County could not plausibly deny that each injection well qualifies as a point source, given the inclusion of "well" in the definition of "point source" in 33 U.S.C. § 1362(14).

The County's discharges from the LWRF clearly implicate each statutory element necessary to trigger the NPDES permit requirement: (1) the addition of a pollutant, (2) the pollutant's reaching of navigable waters, and (3) a point source as an origin of the discharge of a pollutant. It therefore makes no sense to say as a matter of law that the County lacked fair notice.

The Ninth Circuit has recognized that the imposition of civil penalties under 33 U.S.C. § 1319(d) is mandatory once a violation of the Clean Water Act is found. See Natural Res. Def. Council v. Sw. Marine, Inc., 236 F.3d 985, 1001 (9th Cir. 2000); Leslie Salt Co. v. United States, 55 F.3d 1388, 1397 (9th Cir. 1995). Implicit in the Ninth Circuit's recognition is the concept that the Clean Water Act, by listing the elements of a violation, provides the required notice.

The County's argument also ignores the fair notice of violations that Plaintiffs, as citizens, gave the County before

filing this action.  This is a citizens' lawsuit, a vehicle expressly countenanced by the Clean Water Act that allows private parties to protect Hawaii's waters by suing over Clean Water Act violations in the absence of protective action by public officials.  See Molokai Chamber of Commerce v. Kukui (Molokai), Inc., 891 F. Supp. 1389, 1402 (D. Haw. 1995) ("Both the Congress and the courts of the United States have regarded citizen suits under the Act to be an integral part of its overall enforcement scheme.  The Ninth Circuit has recognized that Congress intended citizen suits to be 'handled liberally, because they perform an important public function.'").

Under the Clear Water Act, sixty days before filing this kind of lawsuit, citizens must give an alleged violator of the Clean Water Act notice of the alleged violations.  33 U.S.C. § 1365(b).  The notice must be detailed enough to allow the alleged violator to identify the specific standard, limitation, or order allegedly being violated; must describe the allegedly violating activity; and must include the location of the alleged violation, the persons responsible for the alleged violation, the dates of the alleged violation, and the contact information for the person giving notice and for any attorney representing that person.  40 C.F.R. § 135.3.  "Notice is sufficient if it is reasonably specific and if it gives the accused . . . the opportunity to correct the problem."  Waterkeepers N. Cal. v. AG

11

Indus. Mfg., Inc., 375 F.3d 913, 917 (9th Cir. 2004) (internal quotation marks omitted).

The County has never claimed that Plaintiffs are proceeding in this lawsuit without having given the statutorily required notice.

Plaintiffs have submitted evidence of notice they gave the County even before the sixty-day notice period. Plaintiffs contend that, for several years before the filing of this lawsuit, many of their members and other concerned citizens repeatedly warned the County of potential Clean Water Act liability resulting from the County's discharges at the LWRF. See ECF No. 208, PageID # 6758. For example, on November 6, 2008, a member of Plaintiff Sierra Club-Maui Group, among other individuals, testified regarding the County's noncompliance with the Clean Water Act at an Environmental Protection Agency ("EPA") hearing attended by County personnel. See ECF No. 209-2, PageID #s 6780-81; ECF No. 209-4. Evidence of such repeated warnings raises, at the very least, triable issues of fact as to whether the County lacked notice of potential liability. See also ECF No. 209-1.

The County's assertion that it is entitled to summary judgment on the fair notice issue is also called into question by factual disputes regarding the nature of agency action relating to the LWRF. Plaintiffs contend that the EPA put the County on

notice that its discharges from the LWRF might violate the Clean Water Act on at least two specific occasions. The first allegedly occurred in January 2010, when the EPA required the County "to conduct sampling, monitoring and reporting . . . pursuant to section 308(a) of the Clean Water Act" to determine compliance with the Act. ECF No. 209-25, PageID # 6920; ECF No. 208, PageID # 6752. According to Plaintiffs, such a requirement can only be imposed under section 308(a) on the "owner or operator of [a] point source." 33 U.S.C. § 1318(a)(A).

The second allegedly occurred in March 2010, when the County received a letter from the EPA instructing the County to apply for a water quality certification from the State of Hawaii pursuant to section 401 of the Clean Water Act. See ECF No. 208, PageID # 6753. The EPA required the certification based on its determination that "the County of Maui's operation of the [LWRF] may result in a discharge into navigable waters." ECF No. 209-26, PageID # 6928. The section 401 certification required the State of Hawaii to certify that discharges from the LWRF complied with 33 U.S.C. § 1311, the section under which this court eventually found the County liable. See 33 U.S.C. § 1341. Plaintiffs contend that these two EPA actions were clear indications to the County that it was at risk of being found liable for violating the Clean Water Act.

13

The County views the EPA's directives in a different light.  See ECF No. 216, PageID # 6972.  According to the County, the EPA was acting in connection with the issuance of a new UIC permit, not in connection with potential Clean Water Act liability for discharges from the LWRF.  See id.  The EPA's intent appears to be the subject of a factual dispute precluding summary judgment at this point.

At the very latest, the County had fair notice that it was violating the Clean Water Act once this court issued its first summary judgment order on May 30, 2014.  In that order, this court found the County liable under the Clean Water Act in connection with discharges into navigable waters of effluent from two of the four injection wells without an NPDES permit.  See ECF No. 113.

The County says that even with this court's earlier order it lacked fair notice because it had already taken the only action it says it could have taken to ensure compliance by filing an NPDES permit application in November 2012.  This application does not establish a lack of fair notice.  It is, rather, an argument as to the practicability of ending the violation, a different issue entirely.  Moreover, it makes little sense to say that one can violate the Clean Water Act without penalty as long as one has an NPDES permit application pending.  One might as well argue that one can drive a car if one has a driver's license

14

application pending, or can travel to a country requiring a visa if one has a visa application pending. The County's argument may go to other reasons that the County believes it could continue discharges even after this court's ruling, or to circumstances that might mitigate any penalty, but the argument does not speak to fair notice.

Because the County fails to demonstrate that it is entitled to judgment as a matter of law as to its fair notice argument, its motion is denied.

**VI. PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT REGARDING THE CALCULATION OF THE MAXIMUM NUMBER OF THE COUNTY'S CLEAN WATER ACT VIOLATIONS.**

The Clean Water Act provides for the mandatory imposition of civil penalties once a violation is found. See 33 U.S.C. § 1319(d); Sw. Marine, Inc., 236 F.3d at 1001. The Clean Water Act sets forth a maximum penalty per day for each violation. 33 U.S.C. § 1319(d). Plaintiffs contend that the number of the County's violations of the Clean Water Act should be calculated by counting the number of days within the limitations period that the County discharged effluent from each of the four injection wells, then adding the totals from the four wells. See ECF No. 176-1, PageID # 6204.

The County contends that partial summary judgment should not be granted to Plaintiffs on this calculation issue because the number of violations is not necessarily relevant to

this court's penalty calculation.  See ECF No. 203, PageID #
6599.  The County argues that "[t]he number of violations is an
important step under the 'top down' method [of calculating
penalties], but under the 'bottom up' method, may be just one
factor among many considered."  Id. at PageID # 6600.

Under the "top down" method of determining penalties,
"a court is to [first] calculate the maximum penalties that can
be awarded against a violator of the Act."  Hawaii's Thousand
Friends v. City & Cnty. of Honolulu, 821 F. Supp. 1368, 1395 (D.
Haw. 1993).  The court then "us[es] the maximum penalty as a
guideline" to "set the actual penalties by analyzing the specific
statutory factors" in 33 U.S.C. § 1319(d).  Id.

Under the "bottom up" method, "the economic benefit a
violator gained by noncompliance is established and adjusted
upward or downward using the remaining five factors in
§ 1319(d)."  United States v. Mun. Auth. of Union Twp., 150 F.3d
259, 265 (3d Cir. 1998).

As the County itself acknowledges, the number of
violations is relevant to both approaches.  See ECF No. 203,
PageID # 6600.  This court is not required to deny Plaintiffs'
motion simply because the number of violations is "just one
factor among many" using the "bottom up" approach.  Regardless of
which approach this court uses, the number of violations may be
considered.  See Hawaii's Thousand Friends, 821 F. Supp. at 1383

16

("In evaluating the seriousness of the city's . . . violations, the court looks to several factors, including, but not limited to . . . the number of violations.").

With respect to calculating the number of the County's violations, Plaintiffs contend that "an unpermitted discharge from one point source constitutes a distinct and separate violation from an unpermitted discharge from another point source." See ECF No. 176-1, PageID # 6203.

The County, on the other hand, contends that it is subject, at most, to one violation per day even if it discharged effluent from each of the four wells during that day. See ECF No. 203, PageID # 6597. The County, reading this court's order of May 30, 2014, as determining that groundwater itself is a point source, says that discharges from all four wells went into the groundwater, and it was through the groundwater that pollutants reached the ocean. According to the County, the aggregate discharge through groundwater must be a single violation each day.

The County's reading of this court's order is incorrect. Contrary to the County's assertion, this court's order merely noted that groundwater *could* constitute a "confined and discrete conveyance." See ECF No. 113, PageID #s 3654-55. This court did not rely on the proposition that the groundwater in this case served as a point source.

The County also argues that, in indirect discharge cases, "it is the outfall to navigable waters that matters for purposes of liability." See ECF No. 203, PageID # 6598. As noted above, the County contends that groundwater is a single source, subjecting the County to only one violation per day, rather than to four violations per day. Id. at PageID # 6598.

The County fails to cite any authority supporting the proposition that the number of Clean Water Act violations is tied to the "outfall to navigable waters." See ECF No. 203, PageID # 6598. At most, the County cites this court's order of May 30, 2014, but this court made no determination in that order that the calculation of violations is based on the outfall to navigable waters.

The court disagrees with the County's approach. The County's argument ignores the four point sources involved. If the County discharged effluent from all four wells in a day, it is liable for four violations. See Highlands Conservancy v. E.R.O., Inc., Civ. A. No. A:90-0489, 1991 WL 698124, at *4 (S.D.W. Va. Apr. 18, 1991) ("[T]he Clean Water Act considers each point source as giving rise to a distinct and separate discharge violation."). The Clean Water Act would require penalties even if the discharge of effluent into the ocean came solely from well 1. No governing law suggests that, when four wells are involved,

18

the same single violation is in issue.  Indeed, counting multiple acts as a single violation could invite increased pollution.

Plaintiffs are entitled to summary judgment as to the method of calculating the maximum number of violations by the County under the Clean Water Act.  That maximum is calculated by first counting the number of days within the limitations period that effluent from each injection well was discharged, then totaling the figures for the four wells.  This calculation will not necessarily equate with actual penalties that end up being assessed, but the court here determines that a discharge of pollutants from one well on one day counts as one violation, and a discharge on the same day from another well counts as a separate violation.

**VII.    CONCLUSION.**

The County's motion for summary judgment based on lack of fair notice is denied.  Plaintiffs' motion for partial summary judgment regarding civil penalties is granted.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 25, 2015.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Hawai`i Wildlife Fund, et al. v. County of Maui; Civil No. 12-00198 SOM/BMK; ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON LACK OF FAIR NOTICE AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CIVIL PENALTIES