DAVID L. HENKIN          #6876
MAHESH CLEVELAND       #11023
EARTHJUSTICE
850 Richards Street, Suite 400
Honolulu, Hawaiʻi 96813
Telephone No.: (808) 599-2436
Fax No.: (808) 521-6841
Email:  dhenkin@earthjustice.org
       mcleveland@earthjustice.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAIʻI

| | |
|---|---|
| HAWAIʻI WILDLIFE FUND, a Hawaiʻi non-profit corporation, SIERRA CLUB - MAUI GROUP, a non-profit corporation, SURFRIDER FOUNDATION, a non-profit corporation, and WEST MAUI PRESERVATION ASSOCIATION, a Hawaiʻi non-profit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF MAUI, <br><br> Defendant. | ) CIVIL NO. 12-00198 SOM KJM <br> ) <br> ) PLAINTIFFS' MEMORANDUM IN <br> ) SUPPORT OF THEIR MOTION FOR <br> ) AWARD OF ATTORNEYS' FEES <br> ) AND COSTS; CERTIFICATE OF <br> ) COMPLIANCE <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................1

II.    BACKGROUND .........................................................................2

       A.    Initial Proceedings Before This Court.............................2

       B.    Ninth Circuit Proceedings. .............................................3

       C.    Supreme Court Proceedings. ...........................................4

       D.    Proceedings On Remand. .................................................5

III.   PLAINTIFFS ARE ENTITLED TO AN AWARD .......................6

       A.    Plaintiffs Are The Prevailing Parties...............................6

       B.    An Award Is Appropriate. ...............................................7

IV.    PLAINTIFFS SEEK TO RECOVER FOR WORK BEFORE THE
       SUPREME COURT AND THIS COURT ON REMAND..........9

V.     PLAINTIFFS' EXCELLENT RESULTS JUSTIFY AN AWARD OF
       ALL CLAIMED HOURS..........................................................10

       A.    Plaintiffs Spent Appropriate Time To Secure Victory........11

             1.    Supreme Court Proceedings.....................................12

             2.    District Court Proceedings.......................................16

       B.    This Court Should Award Fees For Plaintiffs' Efforts To
             Convince Maui's Elected Officials To Settle.....................19

       C.    Reductions For Block Billing Are Not Appropriate. ..........22

       D.    Defendant's Other Objections Do Not Warrant Reductions...............23

VI.    PLAINTIFFS ARE ENTITLED TO FULL RECOVERY OF THEIR
       NONTAXABLE COSTS .........................................................25

       A.    Teleconferencing Charges.................................................26

B.    Attorney Travel. ...................................................................26

C.    Mailing And Courier Expenses. ........................................27

VII.  CONCLUSION......................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*America Unites for Kids v. Rousseau*,
  985 F.3d 1075 (9th Cir. 2021) ................................................................9

*Anderson v. Director, Office of Workers Comp. Programs*,
  91 F.3d 1322 (9th Cir. 1996) ................................................................2

*Armstrong v. Davis*,
  318 F.3d 965 (9th Cir. 2003) ..............................................................20

*Bateson v. Geisse*,
  857 F.2d 1300 (9th Cir. 1988) ..............................................................9

*Berry v. Hawaiian Express Service, Inc.*,
  Civ. No. 03-00385 SOM-LEK, 2006 WL 8446922 (D. Haw.
  Dec. 24, 2006)..............................................................................26, 28

*Bourke v. Beshear*,
  Civ. No. 3:13-cv-750, 2016 WL 164626 (W.D. Ky. Jan. 13, 2016)............10, 15

*B.T. ex rel. M.T. v. Department of Educ., Hawaii*,
  Civ. No. 10-00754 JMS-KSC, 2011 WL 3021129 (D. Haw.
  June 27, 2011)................................................................................24

*Cabrales v. County of Los Angeles*,
  935 F.2d 1050 (9th Cir. 1991) ......................................................9, 11, 20

*Camden v. State of Md.*,
  910 F. Supp. 1115 (D. Md. 1996)..........................................................22

*City of Burlington v. Dague*,
  505 U.S. 557 (1992)..........................................................................10

*Copper Sands Homeowners Ass'n v. Copper Sands Realty*,
  Civ. No. 2:10-cv-00510-GMN-NJK, 2016 WL 10719389 (D.
  Nevada July 18, 2016) ......................................................................20

**Page(s)**

**CASES**

*Davis v. City & County of San Francisco*,
976 F.2d 1536 (1992)..................................................................20

*EEOC v. Freeman*,
126 F. Supp. 3d 560 (D. Md. 2015)..............................................14

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992) .....................................................11

*Gilbrook v. City of Westminster*,
177 F.3d 839 (9th Cir. 1999) .......................................................20

*Hawaii Defense Foundation v. City and County of Honolulu*,
Civ. No. 12-00469 JMS-RLP, 2014 WL 2804445 (D. Haw.
Apr. 22, 2014) ......................................................................23, 25

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).............................................6, 10, 11, 28

*Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan*,
792 F.2d 762 (9th Cir. 1985) .......................................................26

*Marbled Murrelet v. Pacific Lumber Co.*,
163 F.R.D. 308 (N.D. Cal. 1995)..................................................19

*McClellan v. I–Flow Corp.*,
710 F. Supp. 2d 1092 (D. Or. 2010) .............................................17

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) ...........................................10, 12, 16

*Newman v. Piggie Park Enterprises, Inc.*,
390 U.S. 400 (1968)......................................................................7

*Resurrection Bay Conservation Alliance v. City of Seward*,
640 F.3d 1087 (9th Cir. 2011) ......................................................8

*Riter v. Moss & Bloomberg, Ltd.*,
Civ. No. 96 C 2001, 2000 WL 1433867 (N.D. Ill. Sept. 26, 2000) ...................15

**Page(s)**

## CASES

*Santana v. Berryhill*,
 Civ. No. 16-00367 ACK-KJM, 2017 WL 4211044 (D. Haw.
 Aug. 31, 2017) ....................................................................................12, 22, 23

*Sheehan v. Centex Homes*,
 853 F. Supp. 2d 1031 (D. Haw. 2011)..............................................................15

*Sierra Club v. BNSF Railway Co.*,
 276 F. Supp. 3d 1067 (W.D. Wash. 2017) ...................................................25, 26

*St. John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*,
 574 F.3d 1054 (9th Cir. 2009) .....................................................................6, 7, 8

*United States v. Cruikshank*,
 92 U.S. 542 (1876)............................................................................................21

*U.S. ex rel. Lockyer v. Hawaii Pac. Health*,
 490 F. Supp. 2d 1062 (D. Haw. 2007)..............................................................22

## FEDERAL STATUTES

33 U.S.C. § 1365(d) .................................................................................1, 6, 7, 8

## SUPREME COURT RULES

S. Ct. Rule 43(2) ..........................................................................................5

## LOCAL RULES

Local Rule 54.1(c)...........................................................................................24

Local Rule 54.2(d) .............................................................................8, 9, 11, 16

## HAWAII RULES OF PROFESSIONAL CONDUCT

HRPC 4.2 ..................................................................................................21, 22

Comments to HRPC 4.2 ....................................................................................22

v

## I.    INTRODUCTION

In the United States Supreme Court, Plaintiffs Hawaiʻi Wildlife Fund, Sierra Club–Maui Group, Surfrider Foundation, and West Maui Preservation Association successfully defended the Clean Water Act ("CWA") against Defendant County of Maui's full-frontal assault. The Supreme Court determined that there is no "loophole" allowing a polluter, like Defendant, "to avoid the [CWA's] permit requirement" simply by sticking its discharge pipe into the ground, "so that the pollution must travel through at least some groundwater before reaching the sea." ECF No. 281, PageID# 7511. On remand, this Court granted summary judgment to Plaintiffs that "[t]he discharge from the County's injection wells into the groundwater and ultimately into the ocean is the functional equivalent of a direct discharge such that it triggers the [CWA's] permit requirement." ECF No. 479, PageID# 13598. As prevailing parties, Plaintiffs now seek an award of their "costs of litigation (including reasonable attorney and expert witness fees)" for their successful litigation in the United States Supreme Court and in this Court on remand. 33 U.S.C. § 1365(d). As of today's date, Plaintiffs seek an award of attorneys' fees in in the amount of $984,643.30 and nontaxable costs in the amount of $71,612.27, for a total award of $1,056,255.57. *See* Exs. 1 & 2.[1]

---

[1] Plaintiffs' reply will supplement Plaintiffs' claim to reflect additional time reasonably spent on this litigation, including time related to this motion. *See*

## II.    BACKGROUND

### A.    Initial Proceedings Before This Court.

Plaintiffs filed this lawsuit on April 16, 2012. ECF No. 1. The sole claim at issue in this case is whether Defendant "has violated and is violating" the Clean Water Act's prohibition on "discharges of pollutants without [a National Pollutant Discharge Elimination Systems ("NPDES")] permit[] by allowing continuous discharges of wastewater and other pollutants from its injection wells at the [Lahaina Wastewater Reclamation Facility] through hydrologically connected groundwater into waters of the United States." ECF No. 36, PageID# 381.

On May 30, 2014, this Court granted partial summary judgment to Plaintiffs, holding that Defendant's unpermitted discharges from two of the Lahaina injection wells—Wells 3 and 4—violate the CWA. ECF No. 113, PageID# 3615-16. On January 23, 2015, the Court again granted partial summary judgment to Plaintiffs, holding that unpermitted discharges from Wells 1 and 2 also violate the Act. ECF No. 162, PageID# 5885-86. The parties then reached a settlement regarding remedies that requires Defendant to "make good faith efforts to secure and comply with the terms of an NPDES permit for the [Lahaina] injection wells." ECF No. 259, PageID# 7304. The settlement further obliges Defendant, once Plaintiffs

---

*Anderson v. Director, Office of Workers Comp. Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996) (time spent litigating fee petitions compensable).

secure final judgment regarding liability, to invest at least $2.5 million on projects in West Maui "to divert treated wastewater from the [Lahaina] injection wells for reuse" and to pay a $100,000 civil penalty. *Id.*, PageID# 7305; *see also id.*, PageID# 7303, 7306.

This Court entered judgment in Plaintiffs' favor on November 17, 2015. ECF No. 260. On December 24, 2015, the Court entered the parties' settlement resolving Plaintiffs' claim for fees and costs for proceedings before this Court. ECF No. 265.

### B.      Ninth Circuit Proceedings.

On December 14, 2015, Defendant appealed to the Ninth Circuit. ECF No. 261.

On February 1, 2018, the Ninth Circuit affirmed this Court's summary judgment rulings. ECF No. 272. On March 30, 2018, the Ninth Circuit denied Defendant's motion for rehearing *en banc* and issued an amended opinion affirming Defendant's CWA liability. ECF No. 275.

On April 23, 2018, the Ninth Circuit issued its mandate, which taxed costs against Defendant. ECF No. 277. Two days later, it entered the parties' settlement resolving Plaintiffs' claim for an award of attorneys' fees and nontaxable costs. ECF No. 278.

3

C.    Supreme Court Proceedings.

Defendant then appealed to the Supreme Court, which, on February 19, 2019, granted certiorari to decide "whether the [CWA] 'requires a permit when pollutants originate from a point source but are conveyed to navigable waters by a nonpoint source,' here, 'groundwater.'" ECF No. 281, PageID# 7502; *see also* ECF No. 280.

After certiorari was granted, while Earthjustice attorney David Henkin remained lead counsel, Plaintiffs also retained Supreme Court specialist Scott Nelson to take the lead on the answering brief and to assist with oral argument preparation. Henkin Decl. ¶ 16; *see* Nelson Decl. ¶¶ 2-7. Several other Earthjustice attorneys, including Supreme Court specialist Sambhav Sankar and CWA specialist Janette Brimmer, participated in Plaintiffs' Supreme Court litigation team. Henkin Decl. ¶¶ 39, 50.

On April 23, 2020, the Supreme Court held that the CWA requires an NPDES permit "when there is a direct discharge from a point source into navigable waters or when there is the functional equivalent of a direct discharge." ECF No. 281, PageID# 7516. Because the Ninth Circuit had applied a different standard, the Supreme Court "vacate[d] its judgment and remand[ed] the case for further proceedings consistent with [the Court's] opinion." *Id.*, PageID# 7519.

4

The Supreme Court's rules provide that, "[i]f the Court reverses or vacates a judgment, the respondent or appellee shall pay costs unless the Court otherwise orders." S. Ct. Rule 43(2). In this case, Defendant did not oppose Plaintiffs' motion to split taxable costs, which the Court granted. Henkin Decl. ¶ 49; Ex. 21.

D.      Proceedings On Remand.

On May 26, 2020, the Supreme Court entered its judgment remanding this case to the Ninth Circuit. ECF No. 282. The Ninth Circuit, in turn, remanded to this Court on June 3, 2020. ECF No. 283.

Mr. Henkin and Earthjustice associate attorney Mahesh Cleveland represented Plaintiffs in the proceedings on remand. Henkin Decl. ¶ 67; Cleveland Decl. ¶¶ 6-8.

On July 15, 2021, this Court again granted summary judgment to Plaintiffs, concluding "that the County must obtain a permit under the Clean Water Act consistent with the analysis established by the Supreme Court." ECF No. 468, PageID# 13428-29. Following supplemental briefing, the Court issued an amended order on July 26, 2021, reaffirming that Defendant's injection wells "must have an NPDES permit." ECF No. 479, PageID# 13598. The same day, the Court entered judgment in Plaintiffs' favor. ECF No. 480.

On August 19, 2021, Defendant filed a motion for reconsideration of the amended order and judgment (ECF No. 486), which is pending.

5

III.    PLAINTIFFS ARE ENTITLED TO AN AWARD

Plaintiffs are entitled to an award of attorneys' fees and costs under the

CWA if this Court finds that: (1) Plaintiffs are the "prevailing or substantially

prevailing party" and (2) an award is "appropriate." *St. John's Organic Farm v.*

*Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1058 (9th Cir. 2009) (citing 33

U.S.C. § 1365(d)). Plaintiffs easily satisfy both requirements.


A.    Plaintiffs Are The Prevailing Parties.

Plaintiffs are undeniably the prevailing parties. The Supreme Court has

instructed that "plaintiffs may be considered 'prevailing parties' for attorney's fees

purposes if they succeed on any significant issue in litigation which achieves some

of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S.

424, 433 (1983) (citation omitted). Here, the sole issue is whether Defendant is

violating the CWA by discharging treated wastewater from the Lahaina injection

wells into the Pacific Ocean via groundwater without an NPDES permit. ECF No.

36, PageID# 381. When this Court granted summary judgment that "[t]he

discharge from the County's injection wells into the groundwater and ultimately

into the ocean is the functional equivalent of a direct discharge such that it triggers

the NPDES permit requirement," Plaintiffs achieved complete success on the only

issue in this case. *See* ECF No. 479, PageID# 13598.

6

Plaintiffs have also obtained the requisite "judicially enforceable 'actual relief on the merits of [their] claim that materially alter[ed] the legal relationship between the parties.'" *St. John's Organic Farm*, 574 F.3d at 1058-59 (citation omitted). The court-ordered settlement that the parties reached in 2015 requires Defendant to make good faith efforts to secure an NPDES permit for the Lahaina injection wells. ECF No. 259, PageID# 7304. The settlement further provides that entry of final judgment regarding liability triggers Defendant's obligation to invest at least $2.5 million on projects in West Maui "to divert treated wastewater from the [Lahaina] injection wells for reuse" and to pay a $100,000 civil penalty. *Id.*, PageID# 7305; *see also id.*, PageID# 7303, 7306. Because the settlement is judicially enforceable and requires Defendant "to do something [it] otherwise would not have been required to do," Plaintiffs have achieved the "actual relief on the merits of [their] claim" necessary for "prevailing party status." *St. John's Organic Farm*, 574 F.3d at 1059; *see also* ECF No. 259, PageID# 7314.

B.    <u>An Award Is Appropriate.</u>

The CWA provides that this Court may award attorneys' fees to a prevailing party "whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). The Ninth Circuit has held that the "special circumstances" standard elaborated in *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968), "is the proper standard for determining whether an award of attorney's fees to a

7

prevailing plaintiff is 'appropriate' under § 1365(d)." *St. John's Organic Farm*, 574

F.3d at 1062. "Under this standard, 'the court's discretion to deny a fee award to a

prevailing plaintiff is narrow,' and a denial of fees on the basis of 'special

circumstances' is 'extremely rare.'" *Id.* at 1063-64 (citations omitted).

Accordingly, "fee awards 'should be the rule rather than the exception.'" *Id.* at

1062 (citation omitted).

The Ninth Circuit has observed that, "[g]iven this circuit's narrow

interpretation of the 'special circumstances' standard, examples of considerations

that do not rise to the level of special circumstances are more prevalent than

examples of considerations that do." *Resurrection Bay Conservation Alliance v.*

*City of Seward*, 640 F.3d 1087, 1092 (9th Cir. 2011). The Ninth Circuit has found

error when district courts have determined that the following were "special

circumstances":

> a party's "financial interest in the outcome of litigation"; the fact that
> the plaintiff would have retained competent counsel without the
> prospect of an attorney fee award; the fact that the plaintiff would be
> the primary beneficiary of its own success in the litigation; and the
> fact that the defendant had not anticipated being required to pay an
> attorney fee award.

*Id.* (citation omitted).

In the Joint Statement, Defendant reserves its "right to argue against any or

all of the fees and non-taxable costs … pursuant to the special circumstances

standard." Ex. 4 at 3. At no time during the LR 54.2(d) pre-motion meet and

8

confer, however, did Defendant ever identify any allegedly special circumstances that Defendant claims would warrant denying an award to Plaintiffs. Henkin Decl. ¶ 15. The sole situation of which Plaintiffs are aware where the Ninth Circuit found "special circumstances" warranting a denial of fees to a prevailing plaintiff was "when 'counsel failed to provide the court with any analysis of the central case, and thereby necessitated the court to engage in independent research.'" *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1094 (9th Cir. 2021) (quoting *Bateson v. Geisse*, 857 F.2d 1300, 1306 (9th Cir. 1988)). That is clearly not the situation here, where "[t]he dueling summary judgment motions before this court [came] with voluminous stacks of paper." ECF No. 497, PageID# 13547. As Defendant has failed to identify any allegedly special circumstances, the Court should find that an award to Plaintiffs is appropriate. *See* LR 54.2(d) (requiring disclosure of "the basis of any objections").

IV.    PLAINTIFFS SEEK TO RECOVER FOR WORK BEFORE THE
       SUPREME COURT AND THIS COURT ON REMAND

As noted in Part I.A and B, *supra*, the parties have already resolved by agreement awards of fees and costs to Plaintiffs for their work on the initial litigation before this Court and on appeal to the Ninth Circuit. *See* ECF Nos. 265 & 278. Accordingly, this motion seeks recovery for only Plaintiffs' work before the Supreme Court and on remand to this Court. *See generally Cabrales v. County of*

9

*Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) (remanding for district court to determine fees for Supreme Court phase of litigation); *Bourke v. Beshear*, No. 3:13-cv-750, 2016 WL 164626 (W.D. Ky. Jan. 13, 2016) (awarding fees in district court for work before Supreme Court).

## V.   PLAINTIFFS' EXCELLENT RESULTS JUSTIFY AN AWARD OF ALL CLAIMED HOURS

According to the Supreme Court, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. In awarding fees in CWA cases, there is "a 'strong presumption'" that this "lodestar represents the 'reasonable' fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Given that the parties agree on the reasonable hourly rates for the attorneys for whom Plaintiffs seek an award, to calculate the lodestar, this Court need determine only whether the hours that Plaintiffs claim are reasonable. *See* Ex. 4 at 2. As discussed below, Plaintiffs' hourly rates are eminently reasonable.

"The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). In *Hensley*, the Supreme Court further instructed:

10

> ***Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee***. … In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. ***Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.*** The result is what matters.

461 U.S. at 435 (internal citation and footnote omitted; emphasis added); *see also Cabrales*, 935 F.2d at 1053 (refusing to "scalpel out attorney's fees for every setback, no matter how temporary"). Because Plaintiffs secured excellent results— a favorable Supreme Court ruling followed by a grant of summary judgment on the only issue in the case, Plaintiffs should receive a fully compensatory fee. We address below Defendant's specific objections.

A.     Plaintiffs Spent Appropriate Time To Secure Victory.

Defendant devotes an entire exhibit in the Joint Statement (Exhibit B) to listing "attorney tasks where Defendant contends the time is excessive." Ex. 4 at 3 n.2. Merely alleging that Plaintiffs spent excessive time does not make it so. As "[t]he party opposing the fee application," Defendant "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). Defendant, however, failed to provide any evidence to support its claims during the pre-motion meet and confer, as Local Rule 54.2(d) requires. Henkin Decl. ¶ 12. There is, therefore, no way for Plaintiffs to know, for example,

11

why Defendant contends Plaintiffs should have spent 15 hours on their post-remand discovery statement, rather than the 20.8 hours they seek. *See* Ex. 4: Ex. B at 4.[2]

The Ninth Circuit has counseled that, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on a case; after all, he won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at 1112. This is particularly true where, as here, the lawyers representing the prevailing party did not charge their clients for their time. *See* Henkin Decl. ¶ 4; Nelson Decl. ¶ 6. "[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." *Moreno*, 534 F.3d at 1112; *see also Santana v. Berryhill*, Civ. No. 16-00367 ACK-KJM, 2017 WL 4211044, at *5 (Aug. 31, 2017), *adopted by* 2017 WL 4202153 (D. Haw. Sept. 21, 2017).

   1.   Supreme Court Proceedings.

Before delving into the details of Defendant's objections to Plaintiffs' Supreme Court work, this Court should bear in mind that the key question is what "time could reasonably have been billed to a private client." *Moreno*, 534 F.3d at

---

[2] In the exercise of billing judgment, Plaintiffs have already reduced their claim for this task by 6.0 hours, a reduction of more than 22%. *Id.*

12

1111. While Defendant has not provided its timesheets to Plaintiffs, publicly available information reveals how much money Defendant deemed reasonable to litigate this case before the Supreme Court, where outside counsel represented Defendant, requiring the Maui County Council to authorize payment. *See* Ex. 9 at 2. Following the Ninth Circuit's denial of rehearing *en banc*, the County Council authorized an additional $750,000 for outside counsel to litigate in the Supreme Court. *See* Henkin Decl. ¶¶ 19-23; Exs. 5-9. In contrast, Plaintiffs seek less than $475,000 for all the hours spent on work before the Supreme Court, over one-third less than the amount Defendant deemed reasonable for this phase of the litigation. *See* Ex. 10.

Without supporting evidence, Defendant asserts arbitrarily low figures for the time Plaintiffs' counsel allegedly should have devoted to essential tasks in litigation before the Nation's highest court: 40 hours to oppose Defendant's petition for certiorari; 60 hours to draft an answering brief; and 57 hours to prepare for oral argument, with time spent on moots deemed "non-essential" and "discretionary." Ex. 4: Ex. A at 11; *see also id.*: Ex. B at 1-4, 18-19. The attached declarations of Supreme Court specialists establish that, in fact, the time Plaintiffs spent is entirely reasonable and consistent with the time for which litigators at private firms charge their paying clients. Fisher Decl. ¶¶ 1-5, 7-8; Goldstein Decl.

¶¶ 1, 5-6; Nelson Decl. ¶¶ 2, 5, 7-16, 18-19, 25-28; Sankar Decl. ¶¶ 3-5, 8-12; *see also* Henkin Decl. ¶¶ 16-18, 25-28, 39-45, 47-48.

Defendant also baldly asserts that other key tasks—meeting with the Solicitor General after the Supreme Court sought his views on whether to grant certiorari and engaging with prospective amici to ensure they do not undermine Plaintiffs' litigation strategy—were not only unnecessary, but "non-legal" in nature. Ex. 4: Ex. A at 2-3, 27-30. On the contrary, it was reasonable and necessary for Plaintiffs' counsel to engage in these activities, which are the norm for Supreme Court practice. *See* Fisher Decl. ¶¶ 6, 9; Nelson Decl. ¶¶ 29-30; *see also* Brimmer Decl. ¶¶ 4-6; Henkin Decl. 29, 50.

Regarding work with amici, "[w]here the law is unsettled and evolving, the issues in a case are complex, or the impact of a case potentially widespread, amici presenting the positions of various interested non-parties could very well be helpful to the proper resolution of a case, and it is reasonable for attorneys to work with amici to ensure strong presentation of the issues." *EEOC v. Freeman*, 126 F. Supp. 3d 560, 577-78 (D. Md. 2015). Plaintiffs' efforts bore fruit here, securing amicus briefs the Supreme Court cited in its opinion. *See* ECF No. 281, PageID# 7506 (Brief for Aquatic Scientists), 7511 (Brief for State of Maryland).

Given the widespread recognition that "[a]micus briefs are part of appellate practice and can influence the court," "[a] paying client would expect an attorney

14

to seek out a variety of amici that could assist in the case's presentation." *Bourke*, 2016 WL 164626, at *6. It is, therefore, appropriate to award fees to Plaintiffs "for the review and solicitation of amicus briefs." *Id.*; *see also Riter v. Moss & Bloomberg, Ltd.*, No. 96 C 2001, 2000 WL 1433867, at *5 (N.D. Ill. Sept. 26, 2000).

Defendant's quibbling with the three hours that Mr. Nelson claims for attending the Supreme Court argument is baseless. Ex. 4: Ex. A at 37. Mr. Nelson played an active and vital role during the argument. Nelson Decl. ¶ 17. His participation as co-counsel was not only reasonable, but "essential." Fisher Decl. ¶ 11; *see id.* ¶ 10; *cf. Sheehan v. Centex Homes*, 853 F. Supp. 2d 1031, 1044 (D. Haw. 2011) ("As a general rule, this Court allows two attorneys to bill for their appearances at court proceedings when it is reasonable and necessary for a 'second chair' to appear with lead counsel").

Finally, Defendant's claim that Mr. Henkin spent excessive time arguing this case to the Supreme Court vividly illustrates how carelessly Defendant bandies about such objections. The 0.6 hours that Defendant do not dispute is barely half the time the argument lasted. Ex. 4: Ex. B at 4; Henkin Decl. ¶ 47. This Court should reject Defendant's arbitrary notion of reasonableness, which would have required Mr. Henkin to enter the courtroom halfway through the argument, missing

15

Defendant's and the United States' presentations, head to the podium, and then

leave immediately after Mr. Henkin finished, before the argument was over.

### 2.    District Court Proceedings.

Defendant's claims that Plaintiffs seek excessive hours for work performed

on remand to this Court are similarly baseless. Why, for example, was it allegedly

unreasonable for Plaintiffs to spend more than 15 hours opposing Defendant's

motion for reconsideration, which seeks to undo Plaintiffs' victory? *See* Ex. 4: Ex.

B at 13. In violation of Local Rule 54.2(d), Defendant has never explained the

basis for this—or nearly any other—objection or provided the evidence on which

Defendant relies. Plaintiffs' timesheets (Exhibit 1) reflect the care Plaintiffs took in

both recording their time and exercising billing judgment to reduce hours claimed

(by nearly 17%). This Court should "defer to the winning lawyer's professional

judgment as to how much time he was required to spend on a case." *Moreno*, 534

F.3d at 1112.

There are three tasks related to the voluminous expert discovery in this case

where Defendant's unsubstantiated claims of "excessive" hours are particularly

egregious. First, Defendant claims Plaintiffs should have spent no more than 15

hours working with their experts to prepare six expert reports, only 2.5 hours per

report. Ex. 4: Ex. B at 7-10. Unlike Defendant, Plaintiffs did not retain experts who

specialize in "litigation support and expert report preparation." Ex. 24 at 76; *see*

16

*also* Ex. 23: Thompson Resume at 1 ("expert witness support"), 3, 7 (presentation entitled "I Object! Applying Legal Admissibility Standards to Environmental Fate-and-Transport Modeling"). Rather, Plaintiffs retained Dr. Jean Moran, a Professor in the Department of Earth & Environmental Sciences at California State University East Bay (*see* ECF No. 432-22, PageID# 10556), Dr. Adina Paytan, a research scientist at the Institute of Marine Sciences, University of California, Santa Cruz (*see* ECF No. 432-32, PageID# 10832), and Robert Whittier, a geologist in the Safe Drinking Water Branch of the Hawai'i Department of Health (*see* ECF No. 444-1, PageID# 11403). Henkin Decl. ¶¶ 53, 57. Plaintiffs' experts have demanding day jobs that limited their availability for report preparation, so needed Plaintiffs' assistance to ensure their reports were timely and complied with Plaintiffs' disclosure obligations. *Id.* ¶¶ 54-56, 60-64; *cf. McClellan v. I–Flow Corp.*, 710 F. Supp. 2d 1092, 1118 (D. Or. 2010) ("Rule 26 does not prohibit counsel's assistance in preparing or drafting an expert report"). Moreover, Mr. Whittier had never previously served as an expert in litigation, requiring Plaintiffs to spend additional time familiarizing him with the process. Henkin Decl. ¶ 58. The time spent assisting Plaintiffs' experts with their reports was both reasonable and necessary to provide this Court with the information it needed to rule for Plaintiffs.

Second, Defendant incredibly claims Plaintiffs should have spent no more than eight hours preparing their January 8, 2021, production of expert discovery (Ex. 4: Ex. B at 10) and relatedly objects to all the time Mr. Cleveland spent, claiming his work was "duplicative." *Id.*: Ex. A at 32-33. This task was massive, with nearly 740,000 Bates-stamped pages of documents ultimately produced. Henkin Decl. ¶ 67. Plaintiffs had to work with their three experts to ensure a complete production and then review that production carefully to ensure no privileged communications were disclosed. This all needed to be completed in the ten days following the completion of rebuttal expert reports and over the New Year's holiday, and also required Plaintiffs to draft claims of privilege and protection in response to the subpoena duces tecum that Defendant served on each of Plaintiffs' three experts. *Id.* ¶¶ 67-68. Given the production's size, the time spent was more than reasonable.

It was also appropriate for more than one lawyer to work on this production, with Mr. Cleveland, an associate attorney, taking the first pass reviewing a portion of the production, and Mr. Henkin reviewing his work. *Id.* This team effort allowed the work to be completed efficiently and on time, following the "time-honored tradition of senior-level attorneys" reviewing work performed "by junior

18

associates." *Marbled Murrelet v. Pacific Lumber Co.*, 163 F.R.D. 308, 327 (N.D. Cal. 1995).[3]

Third, Defendant argues that Plaintiffs should have spent only 15 hours—not 20.4 hours—reviewing Defendant's experts' production. Ex. 4: Ex. B at 10-11. Defendant produced three sets of expert disclosures (on January 8, 12, and 15, 2021), totaling over 2,000 documents and nearly 78,000 pages. Henkin Decl. ¶ 69. With expert depositions scheduled for the end of January 2021, Plaintiffs had to review this voluminous production carefully to identify documents to be used in deposition questioning. *Id.* Plaintiffs also organized the documents as they reviewed them for later use at summary judgment or trial. *Id.* That Plaintiffs completed this task in only 20.4 hours is more than reasonable.

B.     This Court Should Award Fees For Plaintiffs' Efforts To Convince Maui's Elected Officials To Settle.

After the Supreme Court granted certiorari, Plaintiffs ramped up efforts to convince Maui County's elected officials to settle the case and focus on fixing the injection wells, instead of continued litigation. Henkin Decl. ¶ 30; *see also id.* ¶¶ 31-38; Moriwake Decl. ¶¶ 5-23. These efforts succeeded in convincing the County Council to adopt a resolution to settle, but Mayor Michael Victorino refused to

---

[3] Defendant's objections to Mr. Cleveland's assistance with summary judgment briefing and other tasks as excessive or duplicative are similarly baseless. *See* Ex. 4: Ex. A at 33-34; Ex. B at 17-18; Cleveland Decl. ¶¶ 11-12.

comply with the resolution, so the litigation continued. Moriwake Decl. ¶ 5; Ex.

25. It is well established that Plaintiffs may recover fees for such "lobbying" work

that is "directly and intimately related to the successful representation of a client."

*Davis v. City & County of San Francisco*, 976 F.2d 1536, 1545 (1992), *vacated in*

*part on other grounds on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993). "[P]rivate

attorneys do such work and bill their clients," so prevailing plaintiffs may likewise

recover fees for this work. *Id.*

While Plaintiffs did not ultimately secure settlement, their efforts are still

compensable. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 875-76 (9th Cir.

1999) (fee award proper for unsuccessful settlement efforts); *Copper Sands*

*Homeowners Ass'n v. Copper Sands Realty*, No. 2:10-cv-00510-GMN-NJK, 2016

WL 10719389, at *3-4 (D. Nevada July 18, 2016) (same). As prevailing parties,

Plaintiffs are entitled to all fees and costs incurred in the pursuit of their claim,

including time spent on unsuccessful efforts. *See Cabrales*, 935 F.2d at 1053.

"[T]he award of fees should cover 'every item of service which, at the time

rendered, would have been undertaken by a reasonably prudent lawyer to advance

or protect his client's interest' in the case at bar." *Armstrong v. Davis*, 318 F.3d

965, 971 (9th Cir. 2003) (citation omitted). Plaintiffs engaged in many of these

efforts in response to requests from Maui County's elected officials (*see, e.g.,*

Henkin Decl. ¶¶ 31, 33, 37; Moriwake Decl. ¶ 10; Exs. 13, 26) and ultimately

20

succeeded in convincing the County Council to call for settlement. It was clearly reasonable for Plaintiffs to spend time on this effort.

Defendant objects to these hours on the grounds they were spent on "non-legal, improper ex parte gov[ernment] lobbying." Ex. 4: Ex. A at 3-7, 9-10, 12-13, 26-27. As a factual matter, the outreach that Plaintiffs' counsel conducted was legal work; it required a detailed understanding of the legal issues related to this case. Moriwake Decl. ¶ 17; *see, e.g.,* Ex. 12 at 2; Ex. 26. Moreover, virtually none of the lobbying efforts for which Plaintiffs seek compensation was *ex parte*. Attorneys from the Department of the Corporation Counsel were present at meetings Plaintiffs' counsel attended and were copied on emails. *See* Henkin Decl. ¶¶ 32-34, 36-38; Moriwake Decl. ¶¶ 9-13; Exs. 12, 14, 16-17, 26-29.

To the extent that there were *ex parte* communications, they were entirely proper. The First Amendment guarantees "the right of the people ... to petition the Government for a redress of grievances." Nearly 150 years ago, the Supreme Court declared that this right is implicit in "[t]he very idea of government, republican in form." *United States v. Cruikshank*, 92 U.S. 542, 552 (1876).

Rule 4.2 of the Hawaiʻi Rules of Professional Conduct provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, **unless the lawyer … is authorized by law to do so**.

21

(Emphasis added). Comment 1 to Rule 4.2 confirms that "[c]ommunications authorized by law include … the right of a party to a controversy with a government agency to speak with government officials about the matter." This Court has recognized that there is "a government official exception to the general ban on communication with a represented party without the consent of the other lawyer." *U.S. ex rel. Lockyer v. Hawaii Pac. Health*, 490 F. Supp. 2d 1062, 1089 (D. Haw. 2007); *see also Camden v. State of Md.*, 910 F. Supp. 1115, 1118 n.8 (D. Md. 1996) ("Insofar as a party's right to speak with government officials about a controversy is concerned, Rule 4.2 has been uniformly interpreted to be inapplicable"). There was nothing improper about Plaintiffs' lobbying efforts, which should be compensated.

C.   Reductions For Block Billing Are Not Appropriate.

"Block billing refers to the practice of recording various tasks performed on a case, but entering only a total time spent collectively on those tasks, rather than entering the time spent on each discrete task." *Santana*, 2017 WL 4211044, at *4 (citation omitted). Defendant zealously objects to dozens of Plaintiffs' time entries as block-billing, including entries logging only 0.3 hours. *See, e.g.,* Ex. 4: Ex. A at 29 (objecting to Brimmer entry on 4/16/19 of 0.3 hours for "emails regarding EPA guidance documents release; emails regarding amicus brief from brewers"); *id.* (objecting to Brimmer entry on 4/17/19 for 0.3 hours for "emails with amicus

22

authors regarding work on briefs; email with SELC regarding brewers brief and check in"). It is unclear how more detailed records would help this Court ascertain the reasonableness of the time that Plaintiffs spent.

Plaintiffs acknowledge that, while "the majority of entries are for discrete tasks," Exhibit 1 does contain some instances of block billing, which easily occurs in the press of litigation. *Hawaii Defense Foundation v. City and County of Honolulu*, Civ. No. 12-00469 JMS-RLP, 2014 WL 2804445, at *9 (Apr. 22, 2014), *adopted and modified by* 2014 WL 2804448 (D. Haw. June 19, 2014). "Viewing Plaintiffs' counsel's request as a whole, the limited instances of block billing do not prevent the Court from evaluating the reasonableness of the hours expended." *Id.* Accordingly, this Court should not "apply a specific reduction for block billing" on top of the substantial reductions Plaintiffs have already made in the exercise of billing judgment. *Id.*; *see also Santana*, 2017 WL 4211044, at *4 (same).

D.    Defendant's Other Objections Do Not Warrant Reductions.

Defendant raises other objections, none of which warrants reducing Plaintiffs' fee award.

Defendant objects that Plaintiffs' letter informing the Supreme Court about the County Council's resolution to settle the case was an "improper ex parte communication." Ex. 4: Ex. A at 10. No *ex parte* communication occurred;

23

Plaintiffs served their letter on Defendant. Henkin Decl. ¶ 41; Ex. 18. It was entirely proper and reasonable for Plaintiffs to inform the Court about the Council's vote, which occurred only about six weeks before the oral argument. Henkin Decl. ¶ 40. The Supreme Court has continued oral argument in similar situations to see if cases resolved without the need to expend the Court's limited resources on them. *Id.*

Defendant also objects to time Plaintiffs spent preparing their Bill of Costs (ECF No. 484), claiming that it involved "administrative/paralegal tasks." Ex. 4: Ex. A at 25, 36. Under Local Rule 54.1(c), Plaintiffs must attach to their Bill of Costs "a memorandum setting forth the grounds and authorities supporting the request and an affidavit that the costs claimed are correctly stated, were necessarily incurred, and are allowable by law." That is a lawyer's task, not an "admin/paralegal" task. *See* Cleveland Decl. ¶ 14; *B.T. ex rel. M.T. v. Department of Educ., Hawaii*, Civ. No. 10-00754 JMS-KSC, 2011 WL 3021129, at *5 (June 27, 2011), *adopted by* 2011 WL 3022042 (D. Haw. July 21, 2011) (listing clerical tasks).

Finally, Defendant objects to various time entries on the grounds that they provide insufficient descriptions of the tasks performed. None of these objections

24

has any basis.[4] Should the Court find any of these entries incomplete, it can "evaluate the reasonableness of the requested fees from context clues within the time entries immediately before and after the questionable entries." *Hawaii Defense Foundation*, 2014 WL 2804445, at *9; *see, e.g.,* Cleveland Decl. ¶ 9; Moriwake Decl. ¶ 18. No reductions are warranted.

VI.    PLAINTIFFS ARE ENTITLED TO FULL RECOVERY OF THEIR NONTAXABLE COSTS

As the prevailing party, Plaintiffs are "entitled to 'reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client.'" *Sierra Club v. BNSF Railway Co.*, 276 F. Supp. 3d 1067, 1076 (W.D. Wash. 2017) (citation omitted). Defendant does not object to $64,462.38 of Plaintiffs' nontaxable costs. *See* Ex. 4: Ex. C; *see also* Ex. 3 (receipts). The Court should reject Defendant's objections to the remaining costs. *See* Ex. 2.[5]

---

[4] For example, Defendant objects to Mr. Cleveland's 8/9/21 time entry of 0.3 hours to "revise AO 133, exhibits." Ex. 4: Ex. A at 36. This entry is quite clear; AO 133 is the Court's form for summarizing taxable costs. Cleveland Decl. ¶ 13; *see also id.* ¶ 10.

[5] Plaintiffs no longer seek recovery of their share of costs taxed in the Supreme Court. Henkin Decl. ¶ 14.

### A.    Teleconferencing Charges

Defendant initially objects to costs incurred for conference calling services, claiming they are "[n]on-taxable office over head [sic]." Ex. 4: Ex. C at 1; *see* Henkin Decl. ¶¶ 51-52; Brimmer Decl. ¶¶ 11-13; Exs. 22, 35. That is incorrect. "[T]eleconferencing charges … are routinely incurred during litigation and are typically charged to fee paying clients." *Berry v. Hawaiian Express Service, Inc.*, Civ. N. 03-00385 SOM-LEK, 2006 WL 8446922, at *24 (Dec. 24, 2006), *aff'd in relevant part*, 2007 WL 689474 (D. Haw. Mar. 2, 2007). Those costs are recoverable. *See id.*

### B.    Attorney Travel.

Defendant next objects to several of Plaintiffs' travel expenditures, arguing that they were incurred for "non-essential travel." Ex. 4: Ex. C at 1; *see* Henkin Decl. ¶¶ 29, 33, 35; Moriwake Decl. ¶¶ 19-23; Exs. 11, 15, 30-34. In the case of Mr. Nelson's travel for the Supreme Court argument, Defendant objects that expense was for "Discertionary [sic] attendance by non-appearing counsel." Ex. 4: Ex. C at 1; *see* Nelson Decl. ¶¶ 20-24; Exs. 36-39.

Given that Defendant does not object to other travel expenses, Defendant apparently acknowledges that "attorney travel expenses … are ordinarily billed to a client" and, thus, generally recoverable. *Int'l Woodworkers of Am., AFL-CIO, Local 3-98 v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1985); *see also Sierra Club*,

26

276 F. Supp. 3d at 1076 (awarding "litigation costs including travel, meals").

Defendant's objections to these costs apparently, thus, turn on the merits of its

objections to the tasks for which the costs were incurred. Because it was

reasonable for Mr. Henkin to travel to meet with the Solicitor General in

Washington, D.C., for Mr. Nelson to attend the Supreme Court argument and assist

with pre-argument preparation, and for Plaintiffs to lobby County elected officials

regarding settlement, the Court should award the related nontaxable costs.

Defendant makes a different objection to the costs Mr. Henkin incurred

traveling from Honolulu to Washington, D.C., for the Supreme Court argument,

claiming they were for "[n]on-essential travel time preparing for argument." Ex. 4:

Ex. C at 1; *see* Henkin Decl. ¶¶ 43-46; Ex. 20. Even if the Court were to accept

Defendant's argument that Mr. Henkin spent excessive time preparing for

argument (and, as discussed above, it should not), Mr. Henkin still would have to

travel from Honolulu to get to the Supreme Court. Defendant offers no reason to

deny these necessary travel costs.

    C.    <u>Mailing And Courier Expenses.</u>

Defendant next objects to the costs Plaintiffs incurred serving and filing their

letter informing the Supreme Court about the County Council's settlement

resolution, claiming the letter was "inappropriate." Ex. 4: Ex. C at 1; *see* Henkin

Decl. ¶¶ 40-41; Exs. 18-19. "[M]ailing expenses" and "courier expenses" are

27

"typically charged to fee paying clients" and, thus, recoverable. *Berry*, 2006 WL 8446922, at \*24. As there was nothing inappropriate about Plaintiffs' letter updating the Court about a potentially significant development, Plaintiffs should recover these related expenses.

VII.   CONCLUSION

The "excellent results" that Plaintiffs obtained from the Supreme Court and this Court warrant granting their request for fees and costs in full. *Hensley*, 461 U.S. at 435.

Dated:  Honolulu, Hawaiʻi, September 27, 2021.

/s/ David L. Henkin
David L. Henkin
Mahesh Cleveland
EARTHJUSTICE

Attorneys for Plaintiffs

28

CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.4(e), I certify that the foregoing memorandum

contains 6,249 words, exclusive of the caption, tables, and signature block.  I have

relied upon Microsoft Word to determine the word count.


Dated:  Honolulu, Hawaiʻi, September 27, 2021.

/s/ David L. Henkin
David L. Henkin
Mahesh Cleveland
EARTHJUSTICE

Attorneys for Plaintiffs