DAVID L. HENKIN          #6876
MAHESH CLEVELAND        #11023
EARTHJUSTICE
850 Richards Street, Suite 400
Honolulu, Hawai'i 96813
Telephone No.: (808) 599-2436
Fax No.: (808) 521-6841
Email:  dhenkin@earthjustice.org
        mcleveland@earthjustice.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | |
|---|---|
| HAWAI'I WILDLIFE FUND, a Hawai'i non-profit corporation, SIERRA CLUB - MAUI GROUP, a non-profit corporation, SURFRIDER FOUNDATION, a non-profit corporation, and WEST MAUI PRESERVATION ASSOCIATION, a Hawai'i non-profit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF MAUI, <br><br> Defendant. | CIVIL NO. 12-00198 SOM KJM <br><br> DECLARATION OF JANETTE K. BRIMMER |

DECLARATION OF JANETTE K. BRIMMER

I, JANETTE K. BRIMMER, declare that, if called as a witness in this action, I could testify of my own personal knowledge under penalty of perjury that:

1.     I am a senior attorney at Earthjustice, the attorneys of record for Plaintiffs Hawai'i Wildlife Fund, Sierra Club-Maui Group, Surfrider Foundation and West Maui Preservation Association in this action. I practice in Earthjustice's Northwest Office in Seattle, Washington. If called as a witness, I could and would testify competently to the matters set forth herein. I submit this declaration in support of Plaintiffs' claim for legal fees based on my work in this case.

2.     I received my J.D. from the University of Wisconsin School of Law in 1986. I am currently a member of the bar in the states of Minnesota and Washington, as well as of the Supreme Court of the United States.

3.     Immediately following my graduation from law school, I was in private practice in Minneapolis for over five years practicing commercial litigation. I then served as an Assistant Attorney General for the state of Wisconsin from January of 1992 to 1993 and as an Assistant Attorney General for the state of Minnesota from 1993 through January of 2000. While employed in state government, I was engaged full-time in litigation, approximately half of which involved environmental matters or issues.

4.     I have practiced environmental law exclusively since 2000, initially as Legal Director for the Minnesota Center for Environmental Advocacy (2000 to

2008), and currently as a senior attorney with Earthjustice (2008 to present). I have extensive experience litigating under the federal Clean Water Act. I have been the chair or co-chair of Earthjustice's Water Practice Group for over a decade.

5.     In anticipation of a possible grant of certiorari by the United States Supreme Court, I joined the litigation team for this case in January 2019. Using my Clean Water Act expertise, I participated actively in developing Plaintiffs' strategy and arguments for the Supreme Court phase of the case. Once the Supreme Court granted certiorari, I also was assigned responsibility for engaging with groups that expressed an interest in filing an amicus curiae brief on the merits. This work included extensive coordination with the Southern Environmental Law Center ("SELC") and various academics and lawyers who wished to participate as amicus and sought to understand Plaintiffs' arguments and positions in the litigation and how the potential amici would engage in the litigation. Because this was an ongoing effort and the case attracted significant numbers of potential amici, this work required frequent telephone meetings and email communications. These discussions involved significant strategizing to ensure that amici were not repetitive or detracting from the main points of the case. As part of this work, I was asked to review numerous draft amicus briefs to flag possible conflicts with the positions that Plaintiffs were taking in their arguments to the Court.

6.      This work was very important to Plaintiffs' case. Supreme Court cases raising issues of national importance attract significant attention from many potential amici. That attention can take away focus from the main issues or even unintentionally detract from them when the amici and/or their attorneys are less familiar with the law and the case at issue. Engaging with potential amici is not work that can be managed by a paralegal, a client advocate, or an attorney who lack expertise regarding, in this case, the Clean Water Act and the nuances and potential implications of positions that amici may take. For Supreme Court cases with such important issues as this case, in order to fully serve the case and the clients, it is critical to have an attorney engage with amicus parties and their attorneys to ensure continuity and the best possible outcome for the case.

7.      As part of the Earthjustice team I also reviewed drafts of our briefs and helped strategize and moot various arguments.

8.      I have reviewed my time for this motion, and, in doing so, I worked with co-counsel to exercise careful billing judgment to exclude from my time records all time that may have been expended on tasks that advanced Plaintiffs' interests in the case, but were not necessarily litigation tasks and therefore not appropriately included in this fees claim, as well as time excessive to the task at hand. I also do not include in my timesheets any time for general office tasks unrelated to the litigation. The time claimed for me reflects these changes. My

3

resulting time records for work on the Supreme Court phase of this case are set forth in Exhibit 1.

9.      As reflected on Exhibit 1, in further exercise of billing judgment, Plaintiffs are not seeking recovery for 21.4 hours of my time spent preparing David Henkin, Plaintiffs' lead counsel, for oral argument and attending the November 6, 2019, Supreme Court argument.

10.      All of my time for which Plaintiffs are seeking recovery was reasonably necessary for me to perform my role in the case, which helped secure an excellent result from the Supreme Court.

11.      As noted above, a crucial part of my role engaging with prospective amici involved frequent participation in telephone calls with those groups, which were located across the United States. On some occasions, due to the number of parties involved, it was necessary for me to use RollCall conferencing service to host the call. RollCall was the conference calling capability and contract in effect for Earthjustice at the time. It was also impractical to conduct all discussions regarding the large number of amici, arguments, and briefs solely by email. Email would have entailed substantially more hourly time on my part than being able to conduct conferences through the RollCall mechanism.

12.      Plaintiffs seek reimbursement for the costs associated with three of those calls: (1) a March 12, 2019, call with several SELC attorneys to discuss the

various amici parties; (2) a May 15, 2019, call with SELC attorneys and attorneys for the Society Of Wetland Scientists amicus regarding the Wetland Scientists' brief; and (3) a July 16, 2019, call with SELC attorneys and attorneys for the Society Of Wetland Scientists amicus regarding arguments in the science brief. Attached hereto as Exhibit 35 are true and correct copies of the RollCall invoices for these calls, with confidential personal information and information related to other clients redacted.

13.    To calculate the share of each monthly invoice attributable to the calls I made for this case, Earthjustice started with the base cost of each call and then added the proportionate share of taxes and service fees as compared to the total charge for all conference calls made during that month.

I declare under penalty of perjury that I have read the foregoing declaration and know the contents thereof to be true of my own knowledge.

DATED: Seattle, Washington, September 24, 2021.

_____
JANETTE K. BRIMMER

5