DAVID L. HENKIN          #6876
MAHESH CLEVELAND        #11023
EARTHJUSTICE
850 Richards Street, Suite 400
Honolulu, Hawai'i 96813
Telephone No.: (808) 599-2436
Fax No.: (808) 521-6841
Email:  dhenkin@earthjustice.org
        mcleveland@earthjustice.org

Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | |
|---|---|
| HAWAI'I WILDLIFE FUND, a Hawai'i non-profit corporation, SIERRA CLUB - MAUI GROUP, a non-profit corporation, SURFRIDER FOUNDATION, a non-profit corporation, and WEST MAUI PRESERVATION ASSOCIATION, a Hawai'i non-profit corporation,<br><br>          Plaintiffs,<br><br>     v.<br><br>COUNTY OF MAUI,<br><br>          Defendant. | CIVIL NO. 12-00198 SOM KJM<br><br>DECLARATION OF JEFFREY L. FISHER |

## DECLARATION OF JEFFREY L. FISHER

I, JEFFREY L. FISHER, declare that, if called as a witness in this action, I could testify of my own personal knowledge under penalty of perjury that:

1.	I am currently Professor of Law at Stanford Law School and co-director of the Stanford Supreme Court Litigation Clinic. I am also special counsel at O'Melveny & Myers LLP. I have been a member in good standing of the Washington Bar since 2000 (though I am currently on inactive status) and of the California Bar since 2008. I submit this declaration in support of Plaintiffs' claim for attorney's fees and litigation-related costs in the above-captioned case.

2.	I graduated from the University of Michigan Law School in 1997. Following graduation, I clerked for Judge Stephen Reinhardt of the U.S. Court of Appeals for the Ninth Circuit and then for Justice John Paul Stevens on the Supreme Court of the United States. After that, I worked from 1999 until mid-2006 as an associate and then a partner at Davis Wright Tremaine LLP, in Seattle, Washington. During my last two years there, I was co-chair of the firm's Appellate Practice group.

3.	I began working at Stanford Law School in the 2006-07 academic year as an associate professor and have since received tenure and am now a full professor. I have served as co-director of the Stanford Supreme Court Litigation

Clinic since my arrival at Stanford. I began my special counsel relationship with

O'Melveny in 2018.

4.      As co-director of the Stanford Supreme Court Litigation Clinic, I

supervise students in drafting briefs in Supreme Court cases, representing both

parties and amici. The clinic also regularly hosts moot courts to assist attorneys

who are preparing to argue before the Supreme Court, both seasoned Supreme

Court specialists and attorneys who are new to Supreme Court practice. During my

time at the clinic, we have hosted over 50 such moots.

5.      I have extensive experience litigating Supreme Court matters. Over

the past eighteen years, I have presented oral argument in 44 cases, and I have

participated in the briefing in dozens of other cases on the merits. A news story

published in 2014 ranked me fifth among the most active private Supreme Court

litigators at that time (*see* Joan Biskupic, *et al.*, The Echo Chamber, Reuters (Dec.

8, 2014), *available at* https://www.reuters.com/investigates/special-report/scotus/)

(last visited September 23, 2021).

6.      My understanding is that the County of Maui has objected to the time

and costs associated with travel to Washington, D.C. by David Henkin, Plaintiffs'

lead counsel, to attend a meeting with the Office of the Solicitor General. I believe

it was eminently reasonable for Mr. Henkin to travel to Washington to meet in

person with representatives of the Government when the Supreme Court called for

2

the views of the Solicitor General regarding whether to grant the County's petition

for certiorari. I have participated in roughly a dozen such "CVSG" meetings over

the years, and, before the pandemic, I always flew out from California to do them

in person. The Solicitor General's Office sometimes offers to allow out-of-town

lawyers to participate in such meetings over the phone. But in my experience

(again, before the pandemic), everyone always traveled to Washington, D.C. to

attend the meetings in person. There are common-sense reasons for this. It is much

easier and more efficient to engage in person. It is also much easier to "get a sense

of the room" in person—especially where, as is usually the case, only two or three

people are asking questions, but several other government lawyers are observing

and reacting in nonverbal ways. Being there in person also allows for informal

conversation before and after the meeting, which can also be extremely useful.

7.      I further understand that the County has objected to the time and costs

associated with Mr. Henkin's attendance at three moots prior to his Supreme Court

argument: at the Stanford Supreme Court Litigation Clinic (in which I

participated), at the Georgetown University Law Center's Supreme Court Institute,

and at Public Citizen. I believe it was not only reasonable for Mr. Henkin to

participate in these moots, but also think that is the minimum number he could

have done while still discharging his duties to the Court and his clients. Even

though I have argued dozens of the cases over the years in the Court, I always do at

3

least two moots, usually three, and sometimes four. Virtually every other Supreme Court lawyer of whom I am aware, including those who practice in the Solicitor General's office, does at least two moots before every argument. Supreme Court litigators at private firms charge paying clients for their time when preparing for, and doing, these moots.

8.      Moots are in an indispensable way of honing one's arguments, surfacing new problems that have not yet been fully aired out in the briefing, and practicing answers to the hardest questions in the case. And when a lawyer is preparing to deliver his first argument, as was the case with Mr. Henkin, it is usually vital to do one or two more than normal simply to get acclimated to the special practices and rhythms of the nine-member Court. In particular, the Court approaches cases in much more of a "first principles" way than any other court. The Court's questioning also tends to be so rapid-fire that there is a special premium on being able to crystallize points in one or two sentences that are sharp and precise. That takes a lot of work and cannot be done simply standing in front of the mirror. True simulations are essential.

9.      My understanding is that the County has also objected to Earthjustice attorney Janette Brimmer's work monitoring the amicus effort in various ways. In my opinion, this work was more than reasonable; it was necessary. It is standard practice for at least one attorney for each party to take primary responsibility for

4

rounding up potential amici, responding to groups that express interest in participating, helping potential amici coordinate with each other (to avoid duplication and the like), and reviewing drafts for any inconsistencies or problems as they are produced. The importance of this work and the legal strategizing that goes into it are discussed in detail in "The Amicus Machine," by The College of William and Mary School of Law Professors Allison Orr Larsen and Neal Devins, which is available at

https://scholarship.law.wm.edu/cgi/viewcontent.cgi?article=2865&context=facpubs (last visited September 23, 2021). Indeed, the Supreme Court's Rule 37 itself advises that amici should avoid repeating the arguments of the party and should take care to add special value. Counsel for the parties customarily helps amici discharge those duties.

10.    Finally, I understand that the County has objected to the time and costs associated with Mr. Henkin's co-counsel, Scott Nelson, traveling to Washington, D.C. to attend oral argument. In every Supreme Court argument that I can think of, arguing private counsel has at least one second chair. That is customary practice for the Solicitor General's office as well. One's co-counsel does not just sit there. He or she serves as a calming influence and sounding board leading up to argument. And, even while the argument is going on, co-counsel can pass notes about what is transpiring or pinpoint and provide information in the

5

briefs or record, as necessary to assist arguing counsel. On any number of occasions, I have relied on co-counsel to provide such vital information to me and incorporated it into my argument.

11.    The Supreme Court itself has recently reinforced the importance of having co-counsel at counsel table for argument. On September 8, 2021, the Court announced that, this fall, it will hear oral arguments in the courtroom. But, because of the pandemic, the Court will allow only essential participants into the courtroom (*see* https://www.supremecourt.gov/publicinfo/press/pressreleases/pr_09-08-21; last visited September 23, 2021). That same day, Denise McNerney, the Supreme Court's Merits Cases Clerk, emailed to inform me and other lawyers with cases before the Court that the Justices have denominated as essential not only the attorneys who will be arguing the case, but also one co-counsel at counsel table.

I declare under penalty of perjury that I have read the foregoing declaration and know the contents thereof to be true of my own knowledge.

DATED:  Stanford, California, September 24, 2021.

_____
JEFFREY L. FISHER

6