IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAI'I WILDLIFE FUND, a Hawai'i non-profit corporation, SIERRA CLUB—MAUI GROUP, a non-profit corporation, SURFRIDER FOUNDATION, a non-profit corporation, and WEST MAUI PRESERVATION ASSOCIATION, a Hawai'i non-profit corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MAUI,<br><br>Defendant.<br>_____ ) | Civil No. 12-000198 SOM-KJM<br><br>(1) ORDER GRANTING PLAINTIFFS' MOTION TO AMEND FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS; AND (2) AMENDED FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS |

(1) ORDER GRANTING PLAINTIFFS' MOTION TO AMEND
FINDINGS AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART PLAINTIFFS' MOTION FOR AWARD OF
ATTORNEYS' FEES AND COSTS; AND (2) AMENDED FINDINGS
AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART
PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

INTRODUCTION

Plaintiffs Hawai'i Wildlife Fund, Sierra Club—Maui Group, Surfrider

Foundation, and West Maui Preservation Association (collectively, "Plaintiffs")

brought claims against Defendant County of Maui ("Defendant") under the Federal

Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*. (the "Clean Water Act").

Plaintiffs alleged that Defendant discharged wastewater from Defendant's four

injection wells at the Lahaina Wastewater Reclamation Facility into the waters of West Maui without the required National Pollutant Discharge Elimination System ("NPDES") permit.  ECF No. 36 at 2 ¶ 1.  Plaintiffs sought declaratory and injunctive relief and civil penalties against Defendant.  *Id*. at 24 ¶¶ 1–3.

After the district court entered judgment in favor of Plaintiffs, Plaintiffs sought an award of attorneys' fees in the amount of $999,295.80 and nontaxable costs in the amount of $71,612.27, for a total award of $1,070,908.07 ("Motion for Fees and Costs").  ECF No. 492-11 at 2; ECF No. 498 at 31.  On December 29, 2021, this Court issued Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for Award of Attorneys' Fees and Costs ("12/29/2021 Findings and Recommendation").  ECF No. 499.  This Court found and recommended that the district court award $937,162.10 in fees and $71,612.27 in costs, for a total award of $1,008,774.37 ("Fee Award").  *Id*. at 70.

On December 31, 2021, Plaintiffs filed a Motion to Amend Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for Award of Attorneys' Fees and Costs.  ECF No. 500.  The Court construes said motion as a "Motion for Reconsideration" of the 12/29/2021 Findings and Recommendation under Federal Rule of Civil Procedure 60(a) and Rule 60.1 of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  *See* ECF No. 501.  Defendant opposed the underlying Motion for Fees

and Costs but takes no position on the Motion for Reconsideration. *See* ECF No. 502.

The Court elected to decide the Motion for Reconsideration without a hearing pursuant to Local Rule 7.1(d). After carefully reviewing the filings and the record in this case, the Court GRANTS Plaintiffs' request for reconsideration. In this decision, the Court also AMENDS its 12/29/2021 Findings and Recommendation to FIND AND RECOMMEND that the district court GRANT IN PART AND DENY IN PART Plaintiffs' Motion for the reasons set forth below ("Amended Findings and Recommendation").

### ORDER GRANTING PLAINTIFFS' MOTION TO AMEND FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

The Court and the parties are familiar with the procedural history of this case, which are set forth in the district court's July 26, 2021 Amended Order Granting Plaintiffs' Motion for Summary Judgment; Amended Order Denying Defendant's Motion for Summary Judgment ("07/26/2021 Amended Order"). ECF No. 479 at 3–25. The Court thus details the background only to the extent necessary to analyze the Motion for Reconsideration and Plaintiffs' attorneys' fees request.

Plaintiffs ask this Court to reconsider its recommended reductions in the Fee Award based on hours "the Court had already recommended that, for other reasons, . . . should be disallowed in whole or in part." *See* ECF No. 500-1 at 4.

3

Plaintiffs specifically ask this Court to reconsider its recommendation as to:

(1) David L. Henkin, Esq.'s claimed hours that this Court excluded as unnecessary

to advance the litigation, and a further 20% reduction for improper block-billing;

(2) Isaac H. Moriwake, Esq.'s claimed hours that this Court excluded as

unnecessary to advance the litigation, a 50% reduction of claimed hours due to

inadequate time entry descriptions, and a further 20% reduction for improper

block-billing; and (3) Janette Brimmer, Esq.'s claimed hours that this Court

excluded due to inadequate time entry descriptions, and a further 20% reduction

for improper block-billing.  *See generally* ECF No. 500-1.

Upon review of the issues raised by Plaintiffs, this Court concludes that the

Court inadvertently applied an across-the-board 20% reduction to hours that this

Court found non-compensable.  This Court, therefore, initially recommended that

those hours be excluded.  Furthermore, this Court's inadvertent computational

errors warrant reconsideration to correct and clarify the record and to reflect this

Court's findings and recommendation as originally intended.

## LEGAL STANDARD

Local Rule 6.1 permits motions seeking reconsideration upon the following

grounds:  "[d]iscovery of new material facts not previously available";

"[i]ntervening change in law"; and "[m]anifest error of law or fact."  *Id*.  Fed. R.

Civ. P. 60(a) authorizes a court to "correct a clerical mistake or a mistake arising

from oversight or omission whenever one is found in a judgment, order, or other

part of the record." *Id*. The Court may accomplish this *sua sponte* or on a motion.

*Id*. The touchstone of Rule 60(a) is "fidelity to the intent behind the original

judgment" or in this case, the intent behind the original order or finding and

recommendation. *Garamendi v. Henin*, 683 F.3d 1069, 1078 (9th Cir. 2012). This

circuit "focuses on what the court originally intended to do." *Id*. (quoting *Blanton*

*v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir. 1987)).

## DISCUSSION

The Court acknowledges that the 12/29/2021 Findings and Recommendation

recommends that the district court apply an across-the-board reduction to hours

that the Court also recommended should be excluded from an award. Such a

recommendation for a duplicative penalty was unintentional. The Court also

agrees with Plaintiffs that other figures in the calculation of Plaintiffs' Fee Award

need to be corrected. Accordingly, the Court grants Plaintiffs' request for

reconsideration of this Court's 12/29/2021 Findings and Recommendations. This

Court, however, does not intend in any way to alter its analysis and rationale, or

the parties' substantive rights, that underlie the 12/29/2021 Findings and

Recommendation.

Accordingly, this Court amends the 12/29/2021 Findings and

Recommendation to the extent only to correct any inadvertent errors in tallying the

total hours awarded and the resulting lodestar figure. The Amended Findings and

Recommendation that follows supersedes this Court's 12/29/2021 Findings and Recommendation.

AMENDED FINDINGS AND RECOMMENDATION
TO GRANT IN PART AND DENY IN PART PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

On September 27, 2021, Plaintiffs filed their Motion for Fees and Costs ("Motion"). ECF No. 492. Plaintiffs attached thereto the Joint Statement of the Parties Pursuant to Local Rule 54.2(e) ("Joint Statement"). ECF No. 492-13. On October 19, 2021, Defendant filed its Memorandum in Response to the Motion ("Opposition"). ECF No. 496. On November 2, 2021, Plaintiffs filed their Reply. ECF No. 498. Plaintiffs seek an award of attorneys' fees in the amount of $999,295.80 and nontaxable costs in the amount of $71,612.27, for a total award of $1,070,908.07.[1] ECF No. 492-11 at 2; ECF No. 498 at 8.

The Court finds this matter suitable for disposition without a hearing

---

[1]  The total requested amount of $999,295.80 in attorneys' fees includes the additional time Plaintiffs' counsel expended litigating this matter since Plaintiffs filed the Motion for Fees and Costs. On October 12, 2021, the district court heard Defendant's motion for reconsideration, which required Plaintiffs' counsel to prepare for and argue at the hearing. This also includes the time Plaintiffs' counsel spent preparing the Reply. Plaintiffs requested a total of $74,744.27 in nontaxable costs. *See* ECF No. 492-13 at 63. The parties agreed to split taxable costs incurred in the Supreme Court pursuant to an unopposed motion by Plaintiffs to tax costs. *See* ECF No. 492-2 at 19 ¶ 49; *see also* ECF No. 492-30. Subtracting Plaintiffs' paid portion of these split taxable costs, $3,132, Plaintiffs' total requested nontaxable costs equals $71,612.27.

pursuant to Local Rule 54.2(g).  After carefully reviewing the filings and the

record in this case, the Court FINDS AND RECOMMENDS that the district court

GRANT IN PART AND DENY IN PART Plaintiffs' Motion for the reasons set

forth below.

BACKGROUND

As stated, this case arises out of Plaintiffs' claim against Defendant under

the Clean Water Act.  Plaintiffs alleged that Defendant discharged wastewater

from Defendant's four injection wells at the Lahaina Wastewater Reclamation

Facility into the waters of West Maui without the required NPDES permit.  ECF

No. 36 at 2 ¶ 1.  Plaintiffs sought declaratory and injunctive relief and civil

penalties against Defendant.  *Id*. at 24 ¶¶ 1–3.

The Court and the parties are familiar with the facts of this case, which are

detailed in the district court's 07/26/2021 Amended Order.  ECF No. 479 at 3–25.

Plaintiffs seek to recover fees and nontaxable costs incurred during proceedings

before the Supreme Court and this district court on remand only.  ECF No. 492-1

at 15.  Accordingly, the Court will discuss only the procedural background relevant

to the Motion.

I.    District Court and Ninth Circuit Proceedings

Plaintiffs filed a Complaint on April 16, 2012.  ECF No. 1.  On May 30,

2014, and January 23, 2015, the district court granted partial summary judgment to

Plaintiffs, ruling that Defendant's unpermitted discharges from its injection wells

violated the Clean Water Act.  ECF No. 113 at 2-3; ECF No. 162 at 1.  On

November 17, 2015, the parties reached a settlement, the terms of which included,

among other things, permission to file this Motion if the parties are unable to reach

agreement as to the amount of Plaintiffs' costs of litigation (including reasonable

attorneys' and expert witness fees) pursuant to § 1365(d) ("11/17/2015 Settlement

and Order Regarding Remedies").  ECF No. 259 at 14–15 ¶ 29.  On that same date,

the district court entered judgment ("11/17/2015 Judgment").  ECF No. 260.  On

December 24, 2015, the district court entered a Stipulated Settlement Agreement

Regarding Award of Plaintiffs' Costs of Litigation, "solely for the purpose of

compromising and settling Plaintiffs' claim for attorneys' fees, costs, and other

expenses."  ECF No. 265 at 2–3 ¶ 1.

In the interim, on December 14, 2015, Defendant appealed the 11/17/2015

Judgment to the Ninth Circuit ("Ninth Circuit Appeal").  ECF No. 261.  On

February 1, 2018, the Ninth Circuit affirmed the district court, but articulated a

different test by which to determine Defendant's liability under the Clean Water

Act, i.e., the "fairly traceable" test.  ECF No. 272 at 19.  On March 30, 2018, the

Ninth Circuit denied Defendant's motion for rehearing en banc and issued an

amended opinion affirming the district court's summary judgment rulings.  ECF

No. 275.  The Ninth Circuit also granted the parties' Joint Stipulation Regarding

Plaintiffs' Requests for Attorneys' Fees incurred in the Ninth Circuit.  ECF No.

278.

8

II.    Supreme Court Proceedings and Proceedings on Remand

On February 19, 2019, the Supreme Court granted certiorari.  ECF No. 280.

Since this case's inception, David Henkin, Esq., had been lead counsel for

Plaintiffs.  ECF No. 492-2 at 5 ¶ 16.  After the Supreme Court granted certiorari,

Plaintiffs retained Supreme Court specialist, Scott Nelson, Esq.  ECF Nos. 492-5 at

3 ¶ 6.  Additional Earthjustice attorneys joined the Supreme Court litigation team

for their expertise, including Sambhav Sankar, Esq., and Janette Brimmer, Esq.

ECF No. 492-2 at 14 ¶ 39.

On April 23, 2020, the Supreme Court rejected the Ninth Circuit's

"fairly traceable" standard and held that the Clean Water Act "requires a permit

when there is a direct discharge from a point source into navigable waters or when

there is the *functional equivalent of a direct discharge*."  ECF No. 281 at 19.  The

Supreme Court vacated the Ninth Circuit's judgment, entered judgment, and

remanded for further proceedings.  *Id*. at 22; ECF No. 282 at 4.  Mr. Henkin and

Earthjustice associate attorney, Mahesh Cleveland, Esq., represented Plaintiffs on

remand.  *See* ECF No. 492-2 at 25 ¶ 67; ECF No. 492-9 at 3 ¶ 6.

On July 15, 2021, the district court on remand granted summary judgment to

Plaintiffs.  ECF No. 468.  Following supplemental briefing, the district court issued

the 07/26/2021 Amended Order and again entered judgment ("07/26/2021

Judgment").  ECF Nos. 479, 480.

On August 19, 2021, Defendant filed a motion for reconsideration of the

07/26/2021 Amended Order and 07/26/2021 Judgment.  ECF No. 486.  On October

20, 2021, the district court denied Defendant's motion for reconsideration.  ECF

No. 497.

## DISCUSSION

I.     Plaintiffs Are Entitled to an Award of Costs of Litigation Under 33 U.S.C.
       § 1365(d)

Section 1365(d) states, in pertinent part:  "The court, in issuing any final

order in any action brought pursuant to this section, may award costs of litigation

(including reasonable attorney and expert witness fees) to any prevailing or

substantially prevailing party, whenever the court determines such award is

appropriate."  33 U.S.C. § 1365(d).  "In order to award attorney's fees under

§ 1365(d), a district court must make two findings.  First, it must find that the fee

applicant is a 'prevailing or substantially prevailing party.'  Second, it must find

that an award of attorney's fees is 'appropriate.'"  *Saint John's Organic Farm v.*

*Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1058 (9th Cir. 2009).  For

the reasons set forth below, the Court concludes that Plaintiffs are prevailing

parties and an award is appropriate.

A.     Plaintiffs Are Prevailing Parties

"[P]laintiffs may be considered 'prevailing parties' for attorney's fees

purposes if they succeed on any significant issue in litigation which achieves some

of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103,

109 (1992) (internal quotation marks omitted) (quoting *Hensley v. Eckerhart*, 461

U.S. 424, 433 (1983)).  Furthermore, "[a] litigant qualifies as a prevailing party if it

has obtained a 'court-ordered chang[e] [in] the legal relationship between [the

plaintiff] and the defendant.'" *Saint John's*, 574 F.3d at 1058 (quoting

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532

U.S. 598, 604 (2001) (alterations in original)).

      Here, the district court on remand granted summary judgment in favor of

Plaintiffs on their sole claim:  that Defendant violated the Clean Water Act by

discharging wastewater from injection wells into the Pacific Ocean via

groundwater without the required NPDES permit.  *See* ECF No. 479 at 52.  In

addition, the parties' 11/17/2015 Settlement and Order Regarding Remedies

required Defendant to, among other things:  secure and comply with the terms of

an NPDES permit for the injection wells; invest $2.5 million on projects in West

Maui "to divert treated wastewater from the [] injection wells for reuse"; and to

pay a civil penalty upon entry of final judgment regarding liability.  *See* ECF No.

259 at 4, 5–6 ¶¶ 4, 6.

      The Court finds that these results constitute success on a "significant issue in

litigation which achieves some of the benefit the parties sought in bringing suit," as

well as a "'court-ordered chang[e] [in] the legal relationship between [the plaintiff]

and the defendant." *Farrar*, 506 U.S. at 109 (quoting *Hensley*, 461 U.S. at 433);

*Saint John's*, 574 F.3d at 1058. Plaintiffs are, thus, prevailing parties under § 1365(d).

B.    An Award Is Appropriate

Where a court determines that the party seeking litigation costs is a prevailing party, the court must then determine whether an award is "appropriate." *Saint John's*, 574 F.3d at 1058. In *Saint John's*, the Ninth Circuit adopted the "special circumstances" standard to determine whether an award of litigation costs to a prevailing plaintiff is "appropriate" under § 1365(d). *Id*. at 1062. In other words, the fee-shifting provision in the Clean Water Act allows a "district court the discretion to deny attorneys' fees to a prevailing plaintiff only where there are 'special circumstances.'" *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1093 (9th Cir. 2021) (footnote omitted) (quoting *Saint John's*, 574 F.3d at 1063). "Under this standard, 'the court's discretion to deny a fee award to a prevailing plaintiff is narrow,' . . . and a denial of fees on the basis of 'special circumstances' is 'extremely rare.'" *Id*. (quoting *Saint John's*, 574 F.3d at 1063–64 (internal quotation marks and citations omitted)).

"When there is 'a complete absence of any showing of special circumstances to render [the award of an attorney's fee] unjust,' a district court must award a reasonable fee." *Resurrection Bay Conservation Alliance v. City of Seward, Alaska*, 640 F.3d 1087, 1094 (9th Cir. 2011) (quoting *Ackerly Commc'ns, Inc. v. City of Salem*, 752 F.2d 1394, 1398 (9th Cir. 1985)). Defendant does not claim

12

that any special circumstances exist to deny a fee award to Plaintiffs, nor does the Court find one. The Court, thus, recommends that the district court award a reasonable fee.

II.     Calculation of Award

    A.     Attorneys' Fees

"'[T]he determination of attorney fees is within the sound discretion of the trial court . . . .'" *Resurrection Bay*, 640 F.3d at 1094 (brackets in *Resurrection Bay*) (other citations omitted) (quoting *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1065 (9th Cir. 2006)). In *Resurrection Bay*, the Ninth Circuit indicated that courts should apply the commonly known lodestar method to attorneys' fee requests under § 1365(d). 640 F.3d at 1095 ("As this Court has explained, the usual approach to evaluating the reasonableness of an attorney fee award requires application of the lodestar method . . . ."). In applying the lodestar method, "'[t]he initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate . . . .'" *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). "Determining the number of hours reasonably expended requires 'considering whether, in light of the circumstances, the time could reasonably have been billed to a private client.'" *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citing *Hensley*, 461 U.S. at 434).

The court may adjust the "presumptively reasonable" lodestar calculation based on an evaluation of the "reasonableness" factors articulated in *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992), that are not already subsumed in the lodestar.[2] *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002) (citing *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993)). "The court need not consider all . . . factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Id*. (quoting *Kessler v. Assocs. Servs. Co. of Haw.*, 639 F.2d 498, 500 n.1 (9th Cir. 1981)).

### 1.    Reasonable Hourly Rates

The "district court must determine a reasonable hourly rate to use for attorneys and paralegals in computing the lodestar amount." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (citing *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006)). When determining reasonableness, the Court considers the prevailing market rate in the relevant community for similar work

---

[2] The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 70 (citing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

14

performed by attorneys of comparable skill, experience, and reputation. *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024–25 (9th Cir. 2019) (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)). The relevant community is the forum in which the district court sits for purposes of fee-shifting statutes. *Shirrod v. Div., Off. of Workers' Comp. Programs*, 809 F.3d 1082, 1087 (9th Cir. 2015) (citations omitted).

"It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate." *Roberts*, 938 F.3d at 1024 (citation omitted) (citing *Hensley*, 461 U.S. at 433). "The burden is on the fee applicant 'to produce satisfactory evidence' of the prevailing market rates." *Sam K. ex rel. Diane C. v. Haw. Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015) (citation omitted). In addition to their own statements, attorneys are required to submit additional evidence that the rate charged is reasonable. *Seven Signatures Gen. P'ship v. Irongate Azrep BW LLC*, 871 F. Supp. 2d 1040, 1053 (D. Haw. 2012) (citing *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987)). When determining the reasonable hourly rate, "[d]istrict courts may also use their 'own knowledge of customary rates and their experience concerning reasonable and proper fees.'" *Sam K. ex rel. Diane C.*, 788 F.3d at 1041 (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

The timekeepers in this case consist of five Earthjustice attorneys and

Mr. Nelson.  Plaintiffs request, and by the Joint Statement the parties have agreed

to, the following hourly rates:

| Attorney | Requested Hourly Rate |
|---|---|
| David L. Henkin | $375 |
| Isaac H. Moriwake | $375 |
| Janette Brimmer | $400 |
| Mahesh Cleveland | $200 |
| Sambhav Sankar | $747 |
| Scott Nelson | $894<br>(05/14/2019–05/31/2019) |
| Scott Nelson | $899<br>(06/01/2019 and following) |

*See* ECF No. 492-13 at 3.  The parties' agreement satisfies the purpose of Local

Rule 54.2 to encourage cooperation in the determination of statutory fees.

Furthermore, the Court is well aware of the prevailing rates in the

community for similar services performed by attorneys of comparable experience,

skill, and reputation.  Based on the Court's knowledge of the prevailing rates,

along with the parties' agreement, the Court finds that the requested hourly rates

are reasonable and will not disturb the parties' agreement.[3]  Accordingly, the Court

will apply the above hourly rates in calculating Plaintiffs' lodestar.  The Court now

turns to the principal dispute:  whether the hours Plaintiffs' attorneys expended are

reasonable.

---

[3]  The Court also finds that the declaration submitted by Thomas C. Goldstein,
Esq., who is familiar with Supreme Court litigation practice, supports Mr. Nelson's
requested hourly rates.  *See* ECF No. 492-8.

2.    Hours Reasonably Expended

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *U.S. v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)). "[T]he prevailing party is entitled to recover only reasonable attorneys' fees and costs, and the burden is on the prevailing party to prove those fees and costs were associated with the relief requested and reasonably necessary to achieve the results obtained." *Tirona v. State Farm. Mut. Auto. Ins. Co.*, 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted). The party opposing the fee application "has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110–11 (9th Cir. 2014) (quoting *Camacho*, 523 F.3d at 980 (internal quotation marks omitted)).

In addition, the Court has its own "independent duty to review the submitted itemized log of hours to determine the reasonableness of the hours requested in each case." *Irwin v. Astrue*, No. 3:10-CV-545-HZ, 2012 WL 707090, at *1 (D. Or. Mar. 5, 2012) (citing *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001)). The court must guard against awarding fees and costs which are excessive, and must determine which fees were self-imposed and avoidable. *Au v. Funding Grp., Inc.*, 933 F. Supp. 2d 1264, 1275 (D. Haw. 2013) (citing *Tirona*, 821 F. Supp.

17

at 637).  Courts have the "discretion to 'trim fat' from, or otherwise reduce, the

number of hours claimed to have been spent on the case."  *Id*. (quoting *Soler v. G*

*& U, Inc.*, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992)).  Accordingly, courts must

deny compensation for time expended on work deemed "excessive, redundant, or

otherwise unnecessary."  *Seachris v. Brady-Hamilton Stevedore Co.*, 994 F.3d

1066, 1083 (9th Cir. 2021) (quoting *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d

1041, 1045 (9th Cir. 2000)).

Plaintiffs seek to recover a total of 2,500.7 hours expended by their attorneys

in this case as follows:

| Attorney | Agreed Hourly Rate | Claimed Hours | Claimed Fees |
|---|---|---|---|
| David L. Henkin | $375 | 1,941.2 | $727,950.00 |
| Isaac H. Moriwake | $375 | 117.7 | $44,137.50 |
| Janette Brimmer | $400 | 63.6 | $25,440.00 |
| Mahesh Cleveland | $200 | 191.5 | $38,300.00 |
| Sambhav Sankar | $747 | 28.5 | $21,289.50 |
| Scott Nelson | $894 (05/14/2019–05/31/2019) | 8.6 | $7,688.40 |
| Scott Nelson | $899 (06/01/2019 and following) | 149.6 | $134,490.40 |
| | **Total** | **2,500.7** | **$999,295.80** |

ECF No. 498-8 at 31.

Plaintiffs submit supporting declarations from all six attorneys.  Plaintiffs

also submit declarations from Jeffrey L. Fisher, Professor of Law at Stanford Law

School and co-director of the Stanford Supreme Court Litigation Clinic, and

Thomas C. Goldstein, Esq., a partner at a law firm specializing in Supreme Court

practice.  *See* ECF No. 492-7 at 2 ¶ 1; ECF No. 492-8 at 2 ¶ 1.

Defendant claims that, at a minimum, Plaintiffs are not entitled to recover

$666,545.27 of their total fee request.[4]  Defendant argues that the Court should

exercise its discretion to apply an across-the-board reduction of Plaintiffs' fee

request in either the number of hours claimed for identifiable categories of work,

the final lodestar figure, or a combination of discernible categories of work and

balance of the lodestar to "trim fat."  *See* ECF No. 496 at 21, 29.  The Court

disagrees.  An across-the-board reduction is unwarranted for several reasons.

First, Plaintiffs' goal of this lawsuit is to hold Defendant liable for violating

the Clean Water Act.  Plaintiffs' attorneys should, therefore, recover their

compensatory fee for helping to achieve this result.  The Ninth Circuit has

recognized the importance of compensating attorneys who achieve desired results:

> Where a plaintiff has obtained excellent results, his attorney should
> recover a fully compensatory fee.  Normally this will encompass all
> hours reasonably expended on the litigation . . . .  In these
> circumstances the fee award should not be reduced simply because the
> plaintiff failed to prevail on every contention raised in the lawsuit . . . .
> Litigants in good faith may raise alternative legal grounds for a
> desired outcome, and the court's rejection of or failure to reach certain
> grounds is not a sufficient reason for reducing a fee.  The result is
> what matters.

---

[4]  $1,070,908.07 (Plaintiffs' total claimed fees and related nontaxable expenses)
minus $404,362.80 (total fees and related nontaxable expenses not disputed by
Defendant) equals $666,545.27.  *See* ECF No. 498-8 at 31; ECF No. 492-13 at 3.

*Hensley*, 461 U.S. at 435 (internal citation and footnote omitted). Furthermore, "the *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Harris v. Marhoefer*, 24 F.3d 16, 18–19 (9th Cir. 1994) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989)).

The Court finds that the high degree of success here has gone beyond the district court's grant of summary judgment to Plaintiffs on remand. On August 6, 2021, the Council of the County of Maui ("Maui County Council") passed a resolution for the Maui County Mayor to not appeal the district court's 07/26/2021 Amended Order and 07/26/2021 Judgment.[5] Defendant has indicated that it will not appeal the district court's 07/26/2021 Judgment.[6]

Second, Plaintiffs' attorneys did not charge Plaintiffs for their time. ECF No. 492-2 at 3 ¶ 4. The Ninth Circuit has acknowledged that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees," thus, "the court should defer to the winning lawyer's professional

---

[5] Maui County Council's Resolution No. 21-125 can be found at https://www.mauicounty.gov/DocumentCenter/View/129097/Reso-21-125?bidId= (last visited February 8, 2022).

[6] A November 19, 2021 press release reporting Defendant's decision can be found at https://www.mauicounty.gov/civicalerts.aspx?aid=11256 (last visited February 8, 2022).

judgment as to how much time he was required to spend on the case; after all, he

won, and might not have, had he been more of a slacker." *Moreno*, 534 F.3d at

1112.

Third, the Court recognizes that while courts frequently "trim fat" from

claimed hours, this is not necessary if the moving party's attorney requesting fees

has already done the task. Plaintiffs' attorneys represent that they have reduced

their claimed hours by approximately 17%. *See* ECF No. 498-8 at 31; *see also*

ECF No. 492-1 at 22; ECF No. 492-2 at 6 ¶ 17; ECF No. 492-3 at 3–4 ¶ 7; ECF

No. 492-4 at 4–5 ¶¶ 8–9; ECF No. 492-5 at 9 ¶ 19; ECF No. 492-6 at 4 ¶¶ 11–12

(declaring, generally, about self-imposed reductions in claimed hours).

Fourth, the Court is aware that during early proceedings before the district

court and the Ninth Circuit Appeal, Defendant was represented not by the

Department of Corporation Counsel ("Corporation Counsel"), but by outside

private counsel. *See* ECF No. 492-2 at 7 ¶ 19. After the Ninth Circuit denied an

en banc rehearing of its decision upholding this district court's summary judgment

rulings, the Maui County Council had voted twice to increase compensation to this

outside counsel by $750,000, not to exceed total compensation of $4.3 million.

*See id.* at 7–8 ¶¶ 19–23; *see also* ECF Nos. 492-14, 492-15, 492-16, 492-17. The

Court finds very relevant to the determination of reasonableness the time spent on

the same tasks by counsel for another party on the case who, in fact, lost but was

authorized to receive more than four times the amount Plaintiffs' attorneys seek in compensation.

Finally, Defendant has not fulfilled its burden of rebuttal. Defendant objects to numerous time entries by Plaintiffs' counsel. Defendant also sets forth broad reasons in the Opposition, citing few specific examples, as to why Plaintiffs' requested hours are excessive or otherwise non-compensable. Defendant does not adequately explain the basis for its objections, nor does it provide evidence to rebut the accuracy of Plaintiffs' attorneys' hourly statements, the reasonableness of the claimed hours, or the facts asserted in supporting declarations. *Camacho*, 523 F.3d at 980; *Gates*, 987 F.2d at 1397–98.

The Court keeps these considerations in mind in addressing Defendant's Opposition arguments and the entries this Court finds excessive or deficient based on its own independent review of the Motion.

### a.    Inadequate Documentation of Time

As a "preliminary matter," Defendant asserts that Plaintiffs have not provided adequate, contemporaneous documentary evidence or time records under Local Rule 54.2(d)(1), which requires the movant to provide, at the pre-motion meet and confer, the time and work records on which the fees petition will be based. ECF No. 496 at 18. Defendant did not raise this issue in the pre-filing meet-and-confer or in the Joint Statement. *See* ECF No. 492-13 at 1–4; ECF No. 498-1 at 2–3 ¶¶ 2–5. It is improper for Defendant to raise this argument now for

the first time in its Opposition.  The Joint Statement reflects only Defendant's

contention with time entries and amounts of fees and certain nontaxable expenses.

*See* ECF No. 492-13 at 4.  Defendant has thus waived any objection as to the

adequacy of Plaintiffs' time records or lack of contemporaneous documentary

evidence.

Even if this Court considers Defendant's improper argument, the Court finds

that Plaintiffs have fully complied with the submission requirements for the pre-

filing meet-and-confer, Joint Statement, and Motion under Local Rule 54.2(f)(1)

and (2) (requiring a summary table and itemization describing in chronological

order the services rendered) and Local Rule 54.2(f)(5) (requiring affidavit of

counsel).  The summary tables Plaintiffs provided are clear and detailed.  *See, e.g.,*

ECF No. 498-8.  Based on a thorough review of Plaintiffs' Motion and supporting

documentation, the Court is satisfied that the Earthjustice attorneys

contemporaneously documented their time and the work performed to enable the

Court to determine reasonableness.

In addition, the Court finds credible Mr. Nelson's declaration that he

recorded his time from a fresh recollection after completing the "core tasks of brief

preparation and the preparations leading up to oral argument" in 2019.  ECF No.

498-4 at 2 ¶¶ 2, 4.  Mr. Nelson declares that he "recorded time only if I was certain

that it was actually expended on the dates identified in my time records."  *Id*. at

¶ 4.  Mr. Nelson declares that he relied upon calendar entries, email

correspondence, and dates of documents to accurately reconstruct a record of his

tasks and the time expended in the Supreme Court phase of this case.  ECF No.

498-4 at 2, 3 ¶¶ 3, 4, 6.  Mr. Nelson's time entries, as a result, are also clear and

detailed.  *See Lindy Bros. Builders of Phila. v. Am. Radiator & Standard Sanitary

Corp.*, 540 F.2d 102, 109 (3d Cir. 1976) (accepting a careful and accurate

"reconstruction" in lieu of time records for less claimed time expended than billed

in connection with the litigation).  *See, e.g.*, ECF No. 498-8 at 31.  The Court finds

that Defendant's contention as to the adequacy of Plaintiffs' documentation of time

is without merit.

> b.    Excessive Time for Certain Categories of Work

Defendant claims that Plaintiffs' time entries for certain categories of work

completed are excessive and lack sound billing judgment.  ECF No. 496 at 7–8.

For clarity, the Court addresses the following categories:  (1) Supreme Court

proceedings, (2) district court proceedings on remand, and (3) lobbying activities.

> i.    Supreme Court Proceedings

>> (a)    Drafting Memorandum in Opposition to
>> Petition for Writ of Certiorari

Mr. Henkin claims 90.5 hours expended drafting the memorandum in

opposition to the petition for writ of certiorari ("opposition brief"), 40.0 hours of

which Defendant does not dispute.  *See* ECF Nos. 496-4 at 1.  In support of

Mr. Henkin's claimed hours, Mr. Nelson declares that the opposition brief is a

critical and time-consuming task.  The opposition brief must "maintain[] a broad focus on whether the case merits review" and it "must also, to avoid waiver, address any material factual errors in the petition for certiorari and identify all legal arguments that could result in affirmance of the decision below without the need to resolve the question presented."  ECF No. 492-5 at 11 ¶ 27.  Mr. Nelson, who has focused on Supreme Court practice for 30 years, has served as principal drafter of certiorari briefs and has argued four cases before the Supreme Court.  ECF No. 492-5 at 2–3 ¶ 5.

Mr. Nelson declares that Mr. Henkin's completion of the opposition brief was further complicated by a late-arising conflict among the appellate courts when a Sixth Circuit decision addressed whether the Clean Water Act regulates discharge via groundwater.  ECF No. 498-6 at 2–3 ¶ 3.  Mr. Nelson declares that Mr. Henkin had spent about 60 hours on the opposition brief when the circuit split occurred and significant revisions were necessary.  ECF No. 492-5 at 12 ¶ 28.  Mr. Nelson declares that Mr. Henkin's hours drafting the opposition brief are reasonable in light of these complications.  *Id.*

Mr. Goldstein has represented parties in approximately 150 merits cases in the Supreme Court, has argued 45, and has been principal author of over 100 opposition briefs.  ECF No. 498-6 at 2 ¶ 2.  Mr. Goldstein declares that Mr. Henkin's claimed 90.5 hours is within the average to draft an opposition brief.  ECF No. 498-6 at 2 ¶ 3.  Mr. Goldstein declares that this figure is especially

reasonable in light of the Sixth Circuit's decision that created the circuit split. *Id*. Defendant does not address how 40 hours would be adequate to surmount this task.

Given the positive result obtained in the Supreme Court, the Court finds that Mr. Henkin's claimed 90.5 hours expended drafting the opposition brief are reasonable and compensable.

(b)    Drafting Supreme Court Answering Brief

Mr. Henkin, Mr. Nelson, and Mr. Sankar claim a combined 260.6 hours expended in drafting the Supreme Court answering brief ("merits brief"). Mr. Henkin claims 106.9 hours, 60.0 of which Defendant does not dispute.  ECF No. 496-4 at 3.  Mr. Nelson claims 117.7 hours expended as the lead drafter of the merits brief, 30.0 of which Defendant does not dispute.  ECF No. 496-4 at 18. Mr. Sankar claims 36.0 hours expended in editing the merits brief.  ECF No. 498-8 at 31.

(1)    Mr. Henkin

Mr. Henkin declares that his involvement in this task was necessary, as he possessed the most institutional knowledge out of anyone on the brief writing team.  ECF No. 492-2 at 14–15 ¶ 39.  Mr. Nelson underscores in his declaration the necessity for Mr. Henkin, as the one who would be arguing before the Supreme Court, to be "thoroughly comfortable with the argument as presented in the brief." Mr. Henkin's intimate familiarity with Plaintiffs' position made his "participation throughout the drafting process [] essential."  ECF No. 492-5 at 6 ¶ 13.

26

Mr. Nelson described in his declaration the highly collaborative nature of preparing Supreme Court briefs, thereby discrediting Defendant's assertion that the work amongst multiple attorneys during proceedings before the Supreme Court was overstaffed and duplicative. *Id*.; *see also* ECF No. 496 at 10. Mr. Nelson declares that in his experience, the "process is typical in the preparation of Supreme Court briefs, which usually reflect substantial input from multiple attorneys who are genuinely co-authors with the principal drafter of the brief rather than merely acting as reviewers or editors." ECF No. 492-5 at 6–7 ¶ 13. Mr. Nelson declares that Mr. Henkin's claimed hours are reasonable given Mr. Henkin's contributions to the merits brief and the amount of time typically expended in creating a merits brief of this quality for the Supreme Court. *Id*. at 6 ¶ 12. The Court agrees and finds that Mr. Henkin's claimed 106.9 hours are reasonable and compensable.

(2)    Mr. Nelson

Mr. Nelson acknowledges that the drafting and polishing of a Supreme Court brief by an experienced practitioner is essential to an effective presentation. ECF No. 492-5 at 5 ¶ 11. It is among the most important determinants of the outcome of a case in the Supreme Court. *Id*. In support of Mr. Nelson's claimed hours, Mr. Goldstein declares that Mr. Nelson's hours are modest when compared to the drafting efforts of other practitioners. ECF No. 492-

27

8 at 4–5 ¶ 6.  The Court thus finds that Mr. Nelson's claimed 117.7 hours are reasonable and compensable.

(3)    Mr. Sankar

Mr. Sankar declares that he has approximately 16 years of private and government litigation practice in environmental matters.  ECF No. 492-6 at 2–3 ¶¶ 5–7.  Since 2019, Mr. Sankar has been the Senior Vice President for Programs working out of Earthjustice's Washington, D.C., office.  He has supervised the litigation of over 600 matters by over 170 Earthjustice attorneys in 14 offices nationwide, including the Honolulu office.  *Id*. at 3 ¶ 7.  Mr. Sankar declares that he has worked on dozens of briefs to the Supreme Court, including petitions and oppositions to certiorari and merits briefs.  *Id*. at 3–4 ¶ 9.

Mr. Nelson declares that given Mr. Sankar's position and background, his editorial suggestions sharpened the focus of the merits brief.  Mr. Sankar's input regarding strategic issues and framing of the argument contributed substantially to the finished product.  ECF No. 492-5 at 7 ¶ 14.  Mr. Nelson declares that Mr. Sankar's time expended reviewing the brief, commenting, and making editorial suggestions is reasonable.  *Id*. at 6 ¶ 12.  The Court finds that Mr. Sankar's claimed 36.0 hours is reasonable and compensable.

Mr. Goldstein declares that the claimed 260.6 hours for the completion of the merits brief are more than reasonable and quite modest, "considering the scope and size of Plaintiffs' efforts in this case."  ECF No. 498-6 at 3 ¶ 5.  Based on the

28

Court's scrutiny of the time entries and declarations in support of the claimed

hours expended drafting and editing the merits brief, the Court finds the claimed

260.6 hours to be reasonable and compensable.

(c)    Preparation for Supreme Court Oral
Argument

Defendant disputes Plaintiffs' claim for a combined 265.7 hours expended

by Mr. Henkin and Mr. Nelson in preparing for and attending the November 6,

2019 Supreme Court oral argument. ECF No. 496 at 8, 26. Mr. Henkin expended

236.7 hours engaged in researching and preparing for oral argument,

communicating and coordinating with various Earthjustice colleagues and other

counsel, and traveling to and attending moots. *See* ECF No. 496-4 at 4. Defendant

does not dispute 40.0 hours for Mr. Henkin's oral argument preparation. *Id*.

In these circumstances, the Court is especially mindful to consider what

amount of time (and associated expense) a reasonable and prudent lawyer would

expend to advance or protect his or her client's interest. *See Twin City*

*Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982)

(citation omitted) ("[A] prevailing antitrust plaintiff is entitled to recover a

reasonable attorney's fee for every item of service which, at the time rendered,

would have been undertaken by a reasonable and prudent lawyer to advance or

protect his client's interest in the pursuit of a successful recovery of . . .

damages."). The Court finds that based on his in-depth knowledge of this case,

29

Mr. Henkin was the natural choice to argue before the Supreme Court.  The Court notes that Mr. Henkin does not claim an initial trip to Washington, D.C., to observe the Supreme Court during its March 2020 session, nor the many other hours spent preparing.  ECF No. 492-2 at 16 ¶ 42.

This Court's review of the supporting declarations affirms that experienced Supreme Court counsel attend, at a minimum, two preparatory moots, with three or four moots being the norm.  ECF No. 492-7 at 4–5 ¶ 7; ECF No. 492-5 at 7 ¶ 15. Mr. Henkin attended four moots to adequately prepare:  (1) an "internal" moot at Earthjustice; (2) a Stanford Supreme Court Litigation Clinic moot ("Stanford moot"); (3) a Georgetown Law Supreme Court Institute moot; and (4) a Public Citizen moot.  ECF No. 492-2 at 16 ¶ 43.

Mr. Henkin's declaration confirms that being put through the rigors of multiple moots was productive.  Mr. Henkin declares that he developed a concise way to present Plaintiffs' theory of the case that figured prominently in his opening comments.  ECF No. 492-2 at 16–17 ¶ 43.  Mr. Henkin declares that a panel of experienced Supreme Court practitioners questioned him during the Stanford moot and his honed answers "ultimately persuaded the Court to rule in Plaintiffs' favor." *Id*.

Mr. Nelson claims 29.0 hours expended in helping Mr. Henkin prepare for and serving as second chair at oral argument.  ECF No. 496-4 at 19.  Defendant disputes the necessity of Mr. Nelson's "silent presence at oral argument" but does

not dispute 17.0 hours for Mr. Nelson's involvement in preparing Mr. Henkin.
ECF No. 496-4 at 19; ECF No. 496 at 26 n.7.

Mr. Nelson declares that oral argument before the Supreme Court requires
extensive preparation, "including discussion with colleagues of how best to convey
the arguments made in the brief, and how to respond to likely questions from the
Justices."  ECF No. 492-5 at 7 ¶ 15.  Having attended all scheduled moots,
Mr. Nelson declares that attendance by other key members of the litigation team
was essential for their feedback and to collaborate on the best strategy for
arguments and new legal and factual issues that may arise.  *Id*. at 7–8 ¶ 15.

As for Mr. Nelson's presence at counsel table at oral argument, Mr. Nelson
declares that it is customary for arguing counsel to be accompanied by co-counsel
who has had extensive involvement in briefing and preparing the case.  *Id*. at 8 ¶
17.  During opposing counsel's argument, Mr. Nelson passed notes to Mr. Henkin
to aid in Mr. Henkin's argument.  *Id*.  Professor Fisher, who possesses over 18
years' experience litigating Supreme Court matters, echoes Mr. Nelson and
declares that it is customary practice for arguing counsel to have at least one
second chair.  ECF No. 492-7 at 3 ¶ 5, 6–7 ¶ 10.  Professor Fisher declares that
even during the COVID-19 pandemic, the Supreme Court has permitted only
essential participants into the courtroom, one of which includes co-counsel at
counsel table.  *Id*. at 7 ¶ 11.

Defendant relies on *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945 (1st Cir. 1984), to assert that Mr. Nelson's presence at oral argument was unnecessary and that the time Mr. Nelson and Mr. Henkin expended preparing for oral argument was excessive. In *Grendel's Den*, the First Circuit determined that the district court's faulty analysis of the award of attorneys' fees was based, in part, on lack of contemporaneous time records. 749 F.2d at 952. This Court is not persuaded that the distinguishable facts and the First Circuit Court's holding in *Grendel's Den* apply to this case.

Plaintiffs benefited from their counsels' many hours devoted to honing Plaintiffs' position and from Mr. Henkin's integration of critical feedback gained from the moots. The Court finds that Mr. Henkin's extensive preparation and Mr. Nelson's counsel and presence were invaluable to Mr. Henkin's readiness before the Supreme Court as a first-time presenter. Plaintiffs ultimately benefitted from the time expended by Mr. Henkin and Mr. Nelson. The Court thus finds that the total claimed 265.7 hours expended preparing for oral argument, 236.7 hours claimed by Mr. Henkin and 29.0 hours claimed by Mr. Nelson, are reasonable and compensable.[7]

---

[7] The Court also notes that while Mr. Henkin claimed the most hours out of anyone on the Supreme Court litigation team, his $375 hourly rate, as compared to Mr. Sankar's $747 hourly rate or Mr. Nelson's $894 and $899 hourly rates, produces a more reasonable lodestar figure.

   (d) Lobbying Amici and Work on Amici
     Work-Product

   Defendant disputes Ms. Brimmer's claimed 59.2 hours expended in

monitoring the amicus effort and managing amici work-product.  Defendant

objects to Ms. Brimmer's work as "non-legal work lobbying and/or time on work-

product of third-party non-litigants" and asserts that no fees should be awarded.

ECF No. 496-4 at 17; *see also* ECF No. 492-13 at 34.

   Ms. Brimmer, a senior Earthjustice attorney in the Northwest (Seattle)

Office, has practiced environmental law since 2000.  ECF No. 492-4 at 2–3 ¶¶ 1, 4.

She is an experienced Clean Water Act litigator and has served as chair and co-

chair of Earthjustice's Water Practice Group for over a decade.  *Id*. at 3 ¶ 4.

   This case attracted numerous potential friends of the court.  ECF No. 492-4

at 3 ¶ 5.  Ms. Brimmer declares that she was responsible for engaging with and

coordinating the submission of amicus briefs, which required frequent and

extensive communication and coordination with the Southern Environmental Law

Center ("SELC"), various academics, and lawyers.  *Id*.  These constituents "wished

to participate as amicus and sought to understand Plaintiffs' arguments and

positions in the litigation and how the potential amici would engage in the

litigation."  *Id*.  Ms. Brimmer declares that her role strategizing this aspect of the

case was important to ensure that the amicus briefs were focused and conducive to

Plaintiffs' position before the Supreme Court.  *Id*.

Ms. Brimmer declares that the recruitment and coordination of amici and amicus briefs cannot be done by a paralegal, client advocate, or attorney who lacks expertise. She declares that it was critical to have an attorney with full knowledge of the nuances of the issues and the potential implications of the positions amici may take. *Id*. at 4 ¶ 6.

In support, Professor Fisher declares that Ms. Brimmer's work monitoring the amicus effort was not only reasonable, but necessary. ECF No. 492-7 at 5 ¶ 9. Accordingly, Professor Fisher declares that:

> It is standard practice for at least one attorney for each party [arguing before the Supreme Court] to take primary responsibility for rounding up potential amici, responding to groups that express interest in participating, helping potential amici coordinate with each other (to avoid duplication . . .), and reviewing for any inconsistencies or problems as they are produced.

*Id*. at 5–6 ¶ 9. Given the successful result obtained by Plaintiffs, the Court finds the 59.2 claimed hours expended by Ms. Brimmer in garnering and managing amicus briefs to be reasonable and compensable.

ii.    District Court Proceedings on Remand

The Court recognizes that Plaintiffs' counsels' efforts and time expended to ensure success in the Supreme Court continued in proceedings before this district court on remand. The Court acknowledges Plaintiffs' victory in conducting an independent review of the remaining categories of tasks, the claimed expended hours to which Defendant objects as excessive. *Hensley*, 461 U.S. at 435 ("Where

34

a plaintiff has obtained excellent results, his attorney should recover a fully
compensatory fee."); *Moreno*, 534 F.3d at 1112 ("By and large, the court should
defer to the winning lawyer's professional judgment as to how much time he was
required to spend on the case . . . .").

> (a)    Statement Regarding Reopening Discovery

Mr. Henkin claims 20.8 hours expended in drafting Plaintiffs' position
statement on reopening discovery on remand, 15.0 of which Defendant does not
dispute.  ECF No. 496-4 at 4.  On remand, this Court ordered the parties to submit
statements regarding Defendant's need to conduct additional discovery.  ECF No.
289.  Plaintiffs argued that, given the "exceptionally extensive" record to assess the
factors articulated by the Supreme Court as relevant to determining Defendant's
liability, reopening discovery on remand would prejudice Plaintiffs by causing
further delay.  ECF No. 290 at 4, 27.  This Court issued an amended Federal Rules
of Civil Procedure Rule 16 Scheduling Order and established a deadline for
additional fact discovery and supplemental expert reports on remand.  *See* ECF No.
297.

Nearly half of Plaintiffs' position statement is devoted to procedural
background and the remainder reviews the Supreme Court's enunciated factors.
*See* ECF No. 290.  The Court finds that for drafting a position statement, 28.0
hours is excessive and 15.0 undisputed hours is reasonable.  The Court thus

recommends the district court reduce Mr. Henkin's 20.8 claimed hours expended by 13.0 hours and award 15.0 hours for this task.[8]

(b)    Reviewing, and Revising Experts' Reports

Mr. Henkin claims 143.5 hours expended in revising Plaintiffs' expert reports, 15.0 of which Defendant does not dispute.  ECF No. 496-4 at 10. Mr. Henkin declares that on remand, Plaintiffs retained two experts, Dr. Jean Moran, a professor in the Department of Earth & Environmental Sciences at California State University East Bay, and Dr. Adina Paytan, a research scientist at the Institute of Marine Sciences, University of California, Santa Cruz.  ECF No. 492-2 at 21 ¶ 53.  Mr. Henkin declares that due to maintaining full academic schedules, Dr. Moran and Dr. Paytan had limited available time.  Mr. Henkin thus assisted in sifting through hundreds of pages of their testimony to extract the salient details, as well as with drafting and revising their reports.  *Id*. at 21, 22 ¶¶ 53, 54.

Mr. Henkin's extensive communications with Dr. Moran and Dr. Paytan were necessary to ensure that the substance of the reports remained theirs and that they were accurate.  *Id*. at 22 ¶ 54.  Mr. Henkin declares that he also assisted these

---

[8]  The Court recommends that the district court reduce a total of 13.0 hours from the following claimed hours by Mr. Henkin as excessive in drafting Plaintiffs' position statement on reopening discovery on remand:  06/18/2020 (4.8); 06/19/2020 (2.4); 06/20/2020 (2.0); 06/21/2020 (8.4); 06/22/2020 (3.2).  ECF No. 492-13 at 46.

experts in revising their subsequent rebuttal expert reports due to their limited availability. *Id.* at 23 ¶ 60. As with their initial reports, Dr. Moran and Dr. Paytan actively participated to ensure the accuracy and bases for their opinions in their rebuttal reports. *Id.* at 21–22 ¶ 54.

Plaintiffs retained a third expert, Robert Whittier, a geologist at the Safe Drinking Water Branch of the Hawaiʻi Department of Health, to rebut Defendant's expert reports. *Id.* at 22 ¶ 57. Mr. Henkin declares that Mr. Whittier had never authored an expert report, which necessitated substantial hours devoted to familiarizing Mr. Whittier with the process and revising his report. *Id.* at 23 ¶ 58. Mr. Henkin declares that he assisted Mr. Whittier to ensure that his report fulfilled Plaintiffs' disclosure obligations. *Id.* at ¶ 59.

Mr. Henkin declares that he assisted Mr. Whittier in revising his supplemental report to rebut a supplemental rebuttal report by one of Defendant's experts. *Id.* at 24 ¶ 62. In addition, Mr. Henkin declares that the issues revealed in these supplemental rebuttal reports necessitated supplemental opinions by Dr. Moran pursuant to obligations set forth in the federal discovery rules, with which Mr. Henkin also assisted. *Id.* at 24–25 ¶ 64.

Given the specialized and technical nature of the subject matter covered and the importance of fulfilling the summary judgment standard on remand, the Court finds that Defendant's suggested time of 15.0 hours is unrealistic. The Court finds

that Mr. Henkin's claimed 143.5 hours expended in reviewing and revising

Plaintiffs' experts' reports are reasonable and compensable.

(c)    Preparing Expert Document Production

Mr. Henkin claims 29.3 hours expended in preparing expert document

production, 8.0 of which Defendant does not dispute.  ECF No. 496-4 at 10.  The

parties agreed to exchange expert discovery days after submission of the rebuttal

expert reports.  ECF No. 492-2 at 25–26 ¶ 67.  Mr. Henkin declares that he and

Mr. Cleveland reviewed nearly 740,000 Bates-stamped pages of produced

documents to avoid inadvertent disclosure of privileged communications during

this exchange.  *Id*. at 25 ¶ 67.  Mr. Henkin declares that, in addition, he drafted

Plaintiffs' claims of privilege and protection in response to respective subpoena

duces tecum that Defendant served on Dr. Moran, Dr. Paytan, and Mr. Whittier.

*Id*. at 26 ¶ 68.

The Court finds that Mr. Henkin's supervisory role over Mr. Cleveland and

personal involvement in reviewing this volume of documents warrants the claimed

29.3 hours expended.

(d)    Reviewing Defendant's Expert Document<br>Production

Mr. Henkin claims 20.4 hours expended in reviewing Defendant's expert

document production, 15.0 of which Defendant does not dispute.  ECF No. 496-4

at 11.  Mr. Henkin declares that Defendant's expert production consisted of over

38

2,000 documents and nearly 78,000 pages. ECF No. 492-2 at 26 ¶ 69. Mr. Henkin declares that he needed to thoroughly review these documents to identify the ones upon which he would base his upcoming depositions of Defendant's experts. *Id*. at ¶ 70. The Court finds that Mr. Henkin's claimed 20.4 hours expended poring over the high volume of Defendant's expert document production is reasonable and compensable.

(e)    Drafting Motion for Summary Judgment and Supporting Expert Declarations

Mr. Henkin claims 98.0 hours expended in drafting the remand motion for summary judgment, 40.0 of which Defendant does not dispute. ECF No. 496-4 at 12. Mr. Cleveland claims 33.6 hours expended in preparing the supportive expert declarations, 12.0 of which Defendant does not dispute. ECF No. 496-4 at 18.

The Court finds that Plaintiffs' motion for summary judgment on remand was not simply a matter of rehashing and expanding on arguments from the prior motion for partial summary judgment. *See* ECF No. 72-1. Plaintiffs needed to synthesize the Supreme Court's decision and the experts' opinions coalesced from thousands of pages of documents and their testimony. Given this substantial task and the fact that Plaintiffs ultimately succeeded in their lawsuit, the Court finds that Mr. Henkin's claimed 98.0 hours expended drafting the motion for summary judgment and Mr. Cleveland's claimed 33.6 hours expended preparing supporting expert declarations, for a combined 131.6 hours, are reasonable and compensable.

    (f)    Drafting Opposition to Defendant's
           Counter-Motion for Summary Judgment and
           Reply in Support of Plaintiffs' Motion for
           Summary Judgment

Mr. Henkin claims 94.2 hours expended in drafting the opposition to

Defendant's counter-motion for summary judgment and reply memorandum in

support of Plaintiffs' motion for summary judgment ("opposition and reply").

ECF No. 496-4 at 12.  Defendant does not dispute 40.0 hours for this task.  *Id*.  The

Court carefully reviewed the parties' remand pleadings and finds that Plaintiffs'

opposition and reply contain similar arguments to support their assertion that,

pursuant to the Supreme Court's "functional equivalent" test, Defendant's

discharges are the functional equivalent of direct discharges.  *Compare* ECF No.

431-1, *with* ECF No. 443.  The Court thus funds that Mr. Henkin's claimed 94.2

hours are excessive and recommends that the district court reduce this amount by

half, and award 47.1 hours for this task.[9]

           (g)    Other Tasks on Remand

The Court has reviewed the claimed hours of the remaining categories of

tasks to which Defendant objects as excessive.  Mr. Cleveland claims 27.1 hours

expended in drafting the brief in response to the district court's procedural

---

[9]  The Court recommends that the district court reduce the following 94.2 hours of
Mr. Henkin by 50% as excessive in drafting the opposition and reply:  04/30/2021
(3.6); 05/01/2021 (4.0); 05/02/2021 (10.8); 05/03/2021 (13.0); 05/04/2021 (10.4);
05/05/2021 (7.7); 05/06/2021 (10.5); 05/07/2021 (7.7); 05/08/2021 (9.8);
05/09/2021 (12.8); 05/10/2021 (3.9).  ECF No. 492-13 at 54.

questions on whether it should hold an evidentiary hearing.  ECF No. 496-4 at 17.

Mr. Henkin claims 28.2 hours expended in drafting the opposition to Defendant's

motion for reconsideration of the district court's 07/26/2021 Amended Order.  ECF

No. 496-4 at 13.  Again, given Plaintiffs' counsels' success in achieving the

desired results of litigation, the Court finds that Mr. Cleveland's claimed 27.1

hours and Mr. Henkin's claimed 28.2 hours expended in their respective tasks are

reasonable and compensable.

### iii.    Lobbying Activities

#### (a)    Maui County

Defendant disputes Plaintiffs' claim for a combined 187.5 hours for two

Earthjustice attorneys to engage with Maui County elected officials to discuss

potential settlement pending certiorari in the Supreme Court.  *See* ECF No. 496 at

8.  Defendant objects to these activities as "non-legal, improper *ex parte*

government lobbying" and, therefore, asserts that no fees should be awarded.  *See,*

*e.g.*, ECF No. 492-13 at 8, 31–32.

The Ninth Circuit has held that "[p]revailing civil rights counsel are entitled

to fees for 'press conferences and performance of other lobbying and public

relations work' when those efforts are 'directly and intimately related to the

successful representation of a client.'"  *Gilbrook v. City of Westminster*, 177 F.3d

839, 877 (9th Cir. 1999), *as amended on denial of reh'g* (July 15, 1999) (quoting

*Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1545 (9th Cir. 1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993)).

In *Gilbrook*, the United States District Court for the Central District of California awarded attorneys' fees for media and public relations activities that "contributed directly and substantially to plaintiffs' litigation goals."  177 F.3d at 877.  The district court reasoned that "[l]ocal politics had a potentially determinative influence on the outcome of settlement negotiations and the availability of certain remedies such as reinstatement."  *Id*.  The Ninth Circuit held that "the district court did not abuse its discretion by granting fees for media and public relations activities insofar as those activities contributed directly and substantially to plaintiffs' attainment of favorable jury verdicts."  *Id*.  The Ninth Circuit remanded only for the district court to deduct from the fee award those hours spent on post-verdict media activities.  *Id*.; *see also Davis*, 976 F.2d at 1545 (suggesting that the district court on remand should disallow hours claimed for media appearances made by counsel after the attainment of plaintiff's litigation goals).

Similarly, in *Davis*, the Ninth Circuit affirmed the United States District Court for the Northern District of California's allowance for attorneys' fees to compensate counsel "for time spent giving press conferences and performing other public relations work."  976 F.2d at 1545.  The district court had explained that "[a]ttorney work in the political arena . . . where narrowly focused on fostering the

42

litigation goals of their clients, is compensable." *Id.* (citation omitted); *see also*

*Jenkins by Agyei v. State of Mo.*, 862 F.2d 677, 678–79 (8th Cir. 1988) (time spent

campaigning for passage of tax levy funding court-ordered desegregation plan held

compensable), *aff'd*, 491 U.S. 274 (1989).

The Ninth Circuit has held that even "a plaintiff who is unsuccessful at a

stage of a litigation that was a necessary step to her ultimate victory is entitled to

attorney's fees even for the unsuccessful stage." *Gilbrook*, 177 F.3d at 876

(quoting *Cabrales v. Cnty. of L.A.*, 935 F.2d 1050, 1053 (9th Cir. 1991)).  The

Ninth Circuit in *Cabrales* considered whether the plaintiff was entitled to

attorneys' fees for an unsuccessful opposition to a certiorari petition.  935 F.2d at

1051.  There was no dispute that the plaintiff ultimately prevailed in her civil rights

action.  *Id.* at 1052.  The Ninth Circuit's reading of *Hensley* was that "plaintiffs are

to be compensated for attorney's fees incurred for services that contribute to the

ultimate victory in the lawsuit."  That being the case, "even if a specific claim fails,

the time spent on that claim may be compensable, in full or in part, if it contributes

to the success of other claims."  *Id.* (citing *Hensley*, 461 U.S. at 435).

Defendant generally asserts that Plaintiffs' counsel excessively billed for

their time but offers no authority or rebuttal evidence to support its objection to

Plaintiffs' counsel's lobbying activities in Maui County.  After an independent

review of the submitted time entries, the Court finds that Plaintiffs' attorneys are

entitled to reasonable compensation for these activities, as they contributed to a

successful claim.  After the Supreme Court granted certiorari in February 2019,

Plaintiffs endeavored to reach a settlement with the Maui County Council and

Maui County Mayor to avoid the need for further litigation.  ECF No. 492-3 at 3 ¶

5.  Mr. Moriwake, an Earthjustice managing attorney at the Mid-Pacific

(Honolulu) Office who had joined the litigation team at this time, and Mr. Henkin

participated in these efforts.  *Id*. at 2 ¶¶ 1, 3 ¶ 5; ECF No. 492-2 at 11 ¶ 30.

Mr. Moriwake's tasks included communicating with the Maui County

Council, the Mayor, and Corporation Counsel regarding matters of public policy,

as well as personally attending Maui County Council and Government, Ethics, and

Transparency ("GET") Committee meetings to observe or testify.  *See* ECF No.

496-4 at 13–14.  Mr. Henkin engaged in similar activities.  *See* ECF No. 496-4 at

5–7.  The two attorneys communicated extensively with one another regarding

potential settlement with Maui County.  *See id*.

On September 20, 2019, the Maui County Council voted to settle the case.

ECF No. 492-34; ECF No. 492-3 at 3 ¶ 5.  Mr. Henkin declares that it was

important to inform the Supreme Court of the settlement, as the Supreme Court

has, in similar situations, continued oral argument to conserve resources if the case

ultimately settles.  ECF No. 492-2 at 15 ¶ 40.  Mr. Henkin reached out to lead

counsel for Defendant during the Supreme Court proceedings and to Corporation

Counsel to see if they would inform the Supreme Court; they indicated they would

not.  On October 3, 2019, Plaintiffs thus filed a letter alerting the Supreme Court of

the Maui County Council's vote to settle the matter. *Id.* The Maui County Mayor, however, refused to comply with the Council's resolution and litigation continued. ECF No. 492-3 at 3 ¶ 5.

There is no dispute that Mr. Henkin and Mr. Moriwake's presence at the Maui County Council and GET Committee meetings was "technically . . . lobbying." ECF No. 492-21 at 4. The Court finds that this lobbying led to the Maui County Council's vote on September 20, 2019, to settle the case. *See* ECF No. 492-34 at 2, 5–6. The Maui County Mayor's refusal to comply with the Council's resolution was but a "temporary setback on the way to a complete victory for plaintiff" in the Supreme Court and on remand. *Cabrales*, 935 F.2d at 1053.

The Court finds that the hours Plaintiffs' counsel expended lobbying directly influenced the Maui County Council's decision to settle the matter, and the Maui County Mayor's decision to not pursue an appeal on remand, if not indirectly. Accordingly, the Court finds Mr. Henkin and Mr. Moriwake's claimed hours expended for these purposes to be reasonably compensable. The Court further finds that, based on both counsels' affidavits, all meetings by Plaintiffs' counsel and correspondence exchanged included Corporation Counsel. No improper *ex parte* communications had occurred. *See, e.g.*, ECF No. 492-2 at 12–14 ¶¶ 32, 34–38; ECF No. 492-3 at 4–5 ¶¶ 9–11. The Court, thus, finds that Mr. Henkin's

claimed 84.0 hours and Mr. Moriwake's claimed 103.5 hours, a total of 187.5

hours, expended lobbying in Maui County are reasonable and compensable.

(b)    Office of the Solicitor General

Mr. Henkin claims 46.5 hours expended in communicating with allies,

consultants, and Earthjustice colleagues about, preparing for, and meeting with the

Office of the Solicitor General ("Solicitor General").  *See* ECF No. 498-8 at 2.

Defendant does not dispute 1.8 of Mr. Henkin's claimed hours.  *See* ECF No. 496-

3 at 2.  Defendant objects to most of Mr. Henkin's activities meeting with the

Solicitor General as "non-client/non-essential communication; non-legal

government lobbying."  *See id*.

Mr. Henkin declares that on December 10, 2018, the Solicitor General

invited him to a meeting to discuss the position that the United States should take

in its brief.  ECF No. 492-2 at 10–11 ¶ 29.  Mr. Henkin declares that he consulted

Professor Fisher and Mr. Nelson and both advised that as lead counsel

Mr. Henkin's personal attendance at that meeting was essential to represent

Plaintiffs' interests.  *Id*.

Professor Fisher and Mr. Nelson declare that in their experiences attending

several such meetings with the Solicitor General, the expectation prior to the

pandemic was that attendance would be in person.  ECF No. 492-5 at 13 ¶ 30; ECF

No. 492-7 at 4 ¶ 6.  Mr. Nelson also declares that it would be "highly unusual, and

professionally irresponsible, for counsel to a party to decline to meet with the

46

Solicitor General's Office in light of the influence the Office's recommendations have on the Court's decisions whether to hear cases." ECF No. 492-5 at 13 ¶ 29. The Deputy Solicitor General argued for the United States as amicus curiae at the November 6, 2019 oral argument. ECF No. 492-2 at 18 ¶ 47.

Mr. Nelson declares that Mr. Henkin's participation in such meetings required extensive preparation. The Solicitor General attorneys expect counsel for the parties "to be able to address not only all the circumstances bearing on whether the case is one the Supreme Court should review, but also the merits of the legal issues presented and the extent to which those issues implicate interests of the federal government." *Id*. Given the position of the Solicitor General at oral argument and the Supreme Court's decision in favor of Plaintiffs, the Court finds that Mr. Henkin's claimed 46.5 hours expended preparing for and meeting with the Solicitor General are reasonable and compensable.

### c.    Overstaffed and Duplicative Work

Defendant objects to Mr. Henkin and Mr. Moriwake's lobbying activities in Maui County and four attorneys working in the Supreme Court phase as duplicative. ECF No. 496 at 10. The Court generally does not permit more than one attorney to bill for attending a meeting between co-counsel, a client meeting, or a meeting with opposing counsel. *Sheehan v. Centex Homes*, 853 F. Supp. 2d 1031, 1044 (D. Haw. 2011). "The duplicative entries for which client and co-counsel meetings, settlement conferences, and strategy meetings between co-

counsel are not the types of events for which duplicative billing is permitted."
*Liberty Mut. Ins. Co. v. Sumo-Nan LLC*, CIVIL NO. 14-00520 DKW-KSC, 2017
WL 810277, at *12 (D. Haw. Mar. 1, 2017) (citing *Robinson v. Plourde*, 717 F.
Supp. 2d 1092, 1099 (D. Haw. 2010)).

In addition, attendance by multiple attorneys at a hearing may result in
needless duplication. *See Democratic Party of Wash. State v. Reed*, 388 F.3d
1281, 1286 (9th Cir. 2004) (citation omitted) ("[C]ourts ought to examine with
skepticism claims that several lawyers were needed to perform a task, [] and
should deny compensation for such needless duplication as when three lawyers
appear for a hearing when one would do."). "In such a situation, the Court
typically deducts the time spent by the lowest-billing attorney." *Liberty Mut. Ins.*,
2017 WL 810277, at *12 (quoting *Seven Signatures Gen. P'ship*, 871 F. Supp. 2d
at 1055).

The Court acknowledges, however, that duplicative preparation for
attendance of certain hearings and conferences are not in and of themselves
unreasonable. Nonetheless, when "a plaintiff chooses to retain more than one
attorney to prosecute his or her case, the plaintiff, as the applicant for attorneys'
fees, has the burden of demonstrating that where more than one attorney is
involved, the time requested reflects the distinct contribution of each attorney."
*Muegge v. Aqua Hotels & Resorts, Inc.*, Civil 09-00614 LEK-BMK, 2015 WL
4041313, at *18 (D. Haw. June 30, 2015) (internal quotation marks and citation

48

omitted).

Regarding lobbying activities in Maui County, the Court notes that, with one exception, Mr. Henkin and Mr. Moriwake's respective attendance at Maui County Council and GET Committee meetings did not overlap.  The Court, however, recommends that the district court exclude Mr. Moriwake's claimed 14.0 hours for attending the April 23, 2019 Maui County Council meeting as duplicative.  *See* ECF No. 498-8 at 23.

As to four attorneys handling the Supreme Court phase, the Court notes that each attorney's distinct contribution led to Plaintiffs' ultimate success; to wit: Mr. Henkin principally drafted the opposition brief, represented Plaintiffs' interests at the meeting with the Solicitor General, and argued before the Supreme Court, among other tasks; Ms. Brimmer utilized her Clean Water Act expertise and actively developed Plaintiffs' strategy and arguments and fielded interest from potential amici; Mr. Sankar assisted in developing Plaintiffs' strategy, drafted the merits brief, and helped prepare Mr. Henkin for oral argument; and Mr. Nelson helped develop Plaintiffs' strategy, drafted the merits brief, assisted Mr. Henkin with oral argument preparation, and was co-counsel at counsel table.  Furthermore, based on a careful analysis of Mr. Sankar and Mr. Nelson's supporting declarations and time entries, the Court finds that their respective tasks were not duplicative. Each had been retained for very limited and specific purposes and their participation was collaborative, not redundant.

49

A thorough analysis of the Plaintiffs' time entries reveals that Mr. Henkin and Mr. Cleveland both conducted legal research to address an evidentiary dispute raised by Defendant on remand. *See* ECF No. 417 at 1. The Court finds that Mr. Henkin commenced research on the issue, but Mr. Cleveland completed the bulk of that research.[10] The Court recommends that the district court allow Mr. Henkin's 0.4 claimed hours expended as not duplicative, but exclude Mr. Moriwake's 14.0 claimed hours as duplicative.

d.    Fees for Work Not Reasonable or Necessary to Advance the Litigation

Defendant asserts that the amount of communication by Plaintiffs' attorneys was excessive and not reasonable or necessary to advance the litigation. ECF No. 496 at 9–10, 12. The Court finds that Plaintiffs' success can be attributed to, among other factors, a coordinated effort with frequent communication and strategy discussions amongst all counsel and Earthjustice colleagues during Supreme Court proceedings and on remand. The Court also finds that ongoing communication with non-client individuals and organizations, such as with lawyers from the SELC, Supreme Court advocates who provided guidance, and potential amici, contributed to a successful outcome. ECF No. 492-2 at 19–20 ¶ 50. The

---

[10] *See* ECF No. 498-8 at 18 (DLH—03/03/2021 "Research re: *Daubert* hearing (0.4) . . . ."); *id.* at 28 (MC—03/11/2021 "Research *Daubert* and progeny" (4.0); 03/12/2021 "Conduct legal research re *Daubert*" (1.2); 03/15/2021 "Conduct legal research re 'uncertainties' under *Daubert*" (1.2)).

50

Court, thus, finds that the hours Plaintiffs' counsel expended on communications are reasonable and compensable.

Defendant also posits that the travel hours claimed by Plaintiffs' attorneys do not reflect good billing judgment. ECF No. 496 at 11. Defendant cites as examples Mr. Moriwake's travel to Maui from Oahu to testify at the Maui County Council meetings on September 6, 2019, and September 20, 2019. *Id.* Other objected-to travel involves Mr. Henkin's meeting with the Solicitor General in Washington, D.C., and to attend moots. *Id.*

The decision to reduce fees for attorney travel time falls within the district court's discretion. *Lemus v. Burnham Painting & Drywall Corp.*, 426 F. App'x 543, 546 (9th Cir. 2011). "The touchstone in determining whether hours have been properly claimed is reasonableness. The assessment of reasonableness is made by reference to standards established in dealings between paying clients and the private bar." *Davis*, 976 F.2d at 1543. "[The] calculation of fees for prevailing civil rights plaintiffs is to be the same as in traditional fee arrangements and . . . all reasonable time spent is to be compensated." *Id.* (quoting *Suzuki v. Yuen*, 678 F.2d 761, 764 (9th Cir. 1982)).

In addition, "[t]his Court typically allows counsel to claim reasonable travel time for case-related travel to and from the other islands or the mainland." *F.K. ex rel. A.K. v. Dep't of Educ., Haw.*, Civ. No. 10-00753 BMK, 2011 WL 2650198, at *3 (D. Haw. July 5, 2011) (quoting *Brandon E. v. Dep't of Educ., State of Haw.*,

51

No. CV 07-00536 ACK-LEK, 2008 WL 4602533, at *8 (D. Haw. Oct. 16, 2008)).

Courts are, however, "especially reluctant to award fees for traveling to a hearing

where an insufficient showing has been made that local counsel alone could not

have attended and/or the out-of-state counsel could not have attended

telephonically." *Pell v. HMC Kea Lani LP*, CIVIL NO. CV 17-00529 DKW-KJM,

2019 WL 11542389, at *2 (D. Haw. July 30, 2019) (quoting *Aevoe Corp. v. AE

Tech Co.*, No. 2:12-cv-00053-GMN-NJK, 2013 WL 5324787, at *6 (D. Nev. Sept.

30, 2013) (other citations omitted) (citing *Stanford v. Ocwen Fed. Bank, FSB*, No.

CIV-S-10-1763-JAM GGH, 2012 WL 37383, at *2 (E.D. Cal. Jan. 6, 2012)

(reducing fees for travel time where telephonic appearance was possible))).  The

Ninth Circuit recognized that "a litigant is entitled to retain an attorney of his

choice; yet, a district court does not abuse its discretion by reducing fees for travel

time when the litigant fails to show that his attorney's travel expenses were

reasonable." *Lemus*, 426 F. App'x at 546.

> i.    Mr. Henkin
>
> > (a)    Meeting with the Solicitor General and
> > Attending Moots

As previously discussed, this Court finds that Mr. Henkin's claimed 46.5

hours expended to meet with the Solicitor General and 236.7 hours traveling to and

attending moots are reasonable and compensable.  The Court finds that

Mr. Henkin's long-standing representation of Plaintiffs necessitated his presence at

the meeting with the Solicitor General and that Mr. Henkin was in the best position

to argue before the Supreme Court, which, pre-pandemic, could not be

accomplished telephonically.  *Pell*, 2019 WL 11542389, at *2.

In further support of Mr. Henkin's travel time to attend moots, Professor

Fisher declares that "Supreme Court litigators at private firms charge paying

clients for their time when preparing for, and doing, these moots."  ECF No. 492-7

at 4–5 ¶ 7.  The Court notes that Mr. Nelson does not claim travel time associated

with attending moots.  *See* ECF 498-8 at 31.  The Court finds that Mr. Henkin's

total claimed 283.2 hours expended to meet with the Solicitor General and to

participate in moots are reasonable and were necessary to advance the litigation.

> (b)    Maui County Council and GET Committee
>          Meetings

As previously addressed, the Court finds that lobbying activities in Maui

County advanced the litigation—by settling the matter altogether.  Even though the

Maui County Mayor refused to recognize the Maui County Council's decision to

settle the case, the Court found that certain hours expended lobbying to convince

the Maui County Council to settle are compensable.

Mr. Henkin claims 44.7 hours expended traveling to Maui County to discuss

settlement with Maui County municipal officers.  ECF No. 498-8 at 4, 6.  The

Court finds that the only way Mr. Henkin could testify at Maui County Council

and GET Committee meetings was in person.  Furthermore, Plaintiffs had no local

counsel in Maui County.  Prior to the pandemic, the only way to speak at a Council meeting was to appear in person in the Council Chambers or to testify from a remote site in Hāna, Maui, on Lānaʻi, or on Molokaʻi.  *See* ECF No. 498-1 at 8 ¶ 20.

The Court carefully reviewed Mr. Henkin's time entries and supporting declarations pertaining to hours he expended traveling to Maui County.  The Court, on the one hand, finds that Mr. Henkin's presence was pertinent to two visits: (1) the April 23, 2019 Maui County Council meeting, where Mr. Henkin testified, submitted written testimony, and served as a resource person; and (2) the May 20, 2019 GET Committee meeting, to which Mr. Henkin was expressly invited to make a presentation on settlement.  ECF No. 492-2 at 11–12 ¶¶ 31, 33.[11]  The Court finds that the time Mr. Henkin claimed traveling to Maui County on these two occasions merit reasonable compensation.

Mr. Henkin's travel time to Maui on April 22, 2019, and May 23, 2019, on the other hand, is not compensable.  The April 22, 2019, visit, for which

---

[11]  *See also* Maui County Council April 23, 2019 meeting minutes at 10–13, 16, 52–54, 56, 88–91, which can be found at https://mauicounty.legistar.com/View.ashx?M=M&ID=689866&GUID=FF306154 -FF38-48B0-A691-6698089CC7D4 (last visited February 8, 2022); GET Committee May 20, 2019 meeting minutes at 42–44, 62–67, 68–92, which can be found at https://mauicounty.legistar.com/View.ashx?M=M&ID=694102&GUID=94188F93 -E380-4E46-9C0B-9338BA6A2CE7 (last visited February 8, 2022).

Mr. Henkin logged 9.2 hours of travel time, did not entail testifying before the Maui County Council or GET Committee.  *See* ECF No. 498-8 at 4.  On May 23, 2019, Mr. Henkin logged 11.6 hours of travel time to attend an open meeting that was voted into an executive session.[12]  The Court finds that Mr. Henkin did not testify or serve as a resource person for the Maui County Council or GET Committee deliberations on settlement at this meeting, either.  Consequently, the Court recommends that the district court exclude 20.8 hours as not compensable case-related travel, and award Mr. Henkin 23.9 hours for travel to Maui County.

ii.    Mr. Moriwake

Mr. Moriwake claims a total of 82.3 hours expended traveling to Maui County.  *See* ECF No.  498-8 at 23–24.  Defendant objects to Mr. Moriwake's travel as excessive and not necessary to advance the litigation.  Defendant disputes two trips in particular, during which Mr. Moriwake reported testifying at Maui County Council meetings.  ECF No. 496 at 11.  The only evidence Defendant submits to purportedly rebut Mr. Moriwake's claimed trips is an unhelpful declaration by a Corporation Counsel paralegal, who assisted in reviewing Plaintiffs' declarations and exhibits.  *See* ECF No. 496-2 at 1–2 ¶ 2.

---

[12]  *See* GET Committee May 23, 2019 meeting minutes at 5, which can be found at https://mauicounty.legistar.com/View.ashx?M=M&ID=694879&GUID=204D2163-467B-48B8-8467-9BC8DD461C8F (last visited February 8, 2022).

On September 6, 2019, Mr. Moriwake attended the GET Committee meeting that took place after the full council recessed ("09/06/2019 GET Committee meeting"). ECF No. 498-8 at 24. Minutes of the 09/06/2019 GET Committee meeting indicate a call to order at 1:31 p.m. and adjournment at 9:20 p.m. ECF No. 498-2 at 2–3 ¶ 4; *see also* ECF No. 498-13 at 2; 498-14 at 1.[13] Mr. Moriwake declared that he attended the 09/06/2019 GET Committee meeting by arriving in Maui County at 11:40 a.m. and returning to Honolulu at 11:05 p.m.. *See* ECF No. 498-2 at 3 ¶ 6. As stated, Plaintiffs had no local counsel on Maui and at that time, one could only attend a council meeting in person or from a remote location. Mr. Moriwake testified at the 09/06/2019 GET Committee meeting. The Court finds that Mr. Moriwake's claimed 15.0 hours expended to attend this meeting is compensable case-related travel.

On September 20, 2019, the full council voted to settle the case ("09/20/2019 Council meeting"). ECF No. 492-34; ECF No. 492-3 at 3 ¶ 5. The council meeting was called to order at 9:00 a.m. and adjourned at 3:35 p.m.[14]

---

[13] Plaintiffs' Exhibit 46 does not contain page 105 (the last page) in the minutes indicating adjournment of the GET Committee meeting at 9:20 p.m. *See* ECF No. 498-14 at 11. That page of the 09/06/2019 GET Committee meeting minutes can be found at https://mauicounty.legistar.com/View.ashx?M=M&ID=719190&GUID=84186003-5D0A-4A3F-9CCE-B9D7ABB2EA19 (last visited February 9, 2022).

[14] 09/20/2019 Council meeting minutes at 144. These minutes can be found at https://mauicounty.legistar.com/View.ashx?M=M&ID=720926&GUID=8B1CB6FD-FCD3-4732-A90C-2041546B7AF1 (last visited February 8, 2022).

Similar to the way he made himself available at the 09/06/2019 GET Committee

meeting, Mr. Moriwake attended the 09/20/2019 Council meeting to provide

additional oral testimony, if needed.  ECF No. 498-2 at 4 ¶ 9.  Mr. Moriwake did

not, however, provide testimony.[15]  Instead, he provided one-and-a-half pages of

written testimony.[16]

       After the 09/20/2019 Council meeting concluded, Mr. Moriwake met with

clients to "'debrief" regarding the Council's decision and discuss next steps." *Id*.

at 5 ¶ 11.  That day, Mr. Moriwake had departed for the airport at 6:00 a.m. for the

7:20 a.m. flight.  Mr. Moriwake returned to Honolulu at 9:00 p.m.  *Id*. at ¶ 12.  The

Court finds that Mr. Moriwake's presence at the 09/20/2019 Council meeting did

not necessarily contribute to the Maui County Council's decision to settle the

matter, as they had voted to settle at that meeting without his testimony.

       The Court finds that Mr. Moriwake's lobbying influenced the Maui County

Council prior to the 09/20/2019 Council meeting.  The Court is unable to

determine how much time Mr. Moriwake spent debriefing and discussing next

steps with Plaintiffs after that meeting concluded.  The Court, nonetheless, finds

that this post-meeting activity was case-related.  Accordingly, the Court

---

[15]  09/20/2019 Council meeting minutes at 17.  Over 240 individuals submitted written testimony, and only 27 signed up to give testimony.  Mr. Moriwake had not signed up to testify.  *See id*. at 77–82.

[16]  *See* 09/20/2019 Council meeting minutes at 366–67.

recommends that the district court reduce Mr. Moriwake's claimed hours expended

to attend the 09/20/2019 Council meeting by 2.0 hours, for a compensable 13.0

hours that day.  The Court recommends that the district court award Mr. Moriwake

a total of 80.3 hours for travel to Maui County.[17]

### e.   Inadequate Time Descriptions

Defendant contends that many of Plaintiffs' counsels' time entries contain

inadequate descriptions, such as not indicating the content of a claimed

communication or contact event.  ECF No. 496 at 12.  Local Rule 54.2(f)(3)

expressly provides:  "The party seeking an award of fees must describe adequately

the services rendered so that the reasonableness of the requested fees can be

evaluated."  Local Rule 54.2(f)(3) also gives guidance as to the level of detail a

time entry should contain:

> For example, time entries for telephone conferences must include an
> identification of all participants and the reason for the call; entries for
> legal research must include an identification of the specific issue
> researched and, if possible, should identify the pleading or document
> for which the research was necessary; entries describing the
> preparation of pleadings and other papers must include an
> identification of the pleading or other document prepared and the
> activities associated with such preparation.

---

[17]  The Court notes that Ms. Brimmer did not claim 16.0 hours for round-trip travel
and attendance to the Supreme Court oral argument.  *See* ECF No. 498-8 at 26.
Mr. Cleveland did not claim a total of 39.9 hours to travel to Maui County to
attend Maui County Council and GET Committee meetings and attend the hearing
on Defendant's motion for reconsideration.  *See id.* at 26, 30.

*Id*.  Accordingly, incomplete or inadequate descriptions are grounds for the Court

to recommend an award reduction.

"[A]ttorneys are 'not required to record in great detail how each minute of

[their] time was expended.'"  *United Steelworkers of Am. v. Ret. Income Plan for*

*Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (quoting

*Hensley*, 461 U.S. at 437 n.12).  As the party seeking attorneys' fees, nonetheless,

Plaintiffs bear the burden of keeping records in sufficient detail so that "a neutral

judge can make a fair evaluation of the time expended, the nature and need for the

service, and the reasonable fees to be allowed."  *Id*. (quoting *Hensley*, 461 U.S. at

441 (Burger, C.J., concurring)).  Where Plaintiffs fail to satisfy this burden, the

Court will recommend the district court to reduce Plaintiffs' requested hours

accordingly.

Here, the Court carefully analyzed Plaintiffs' attorneys' time entries.  The

Court finds that, with noted exceptions, they contain sufficient detail to enable this

Court to evaluate whether the time expended was reasonable.  Where Mr. Sankar

and Mr. Nelson's time entries contain an incomplete description—specifically, the

lack of identification of all participants in a particular e-mail or phone call—the

Court evaluated the reasonableness of the time expended and fees requested with

information provided in their respective supporting declarations.

Mr. Sankar and Mr. Nelson's declarations clarify that Plaintiffs retained

these individuals for discrete tasks.  Based on these declarations, the Court finds

59

that Mr. Nelson and Mr. Sankar's communications, as recorded in their respective

time entries, would have been with Mr. Henkin or Earthjustice colleagues.  *See,*

*e.g.*, ECF No. 492-5 at 3–4 ¶ 7; ECF No. 492-6 at 4 ¶ 10.

Many of Mr. Moriwake's time entries, by contrast, do not identify all

participants in the numerous entries for e-mails and teleconferences, as required by

LR 54.2(f)(3).[18]  Based on Mr. Moriwake's supporting declaration and time

entries, the Court could not determine whether Mr. Moriwake communicated with

Earthjustice colleagues, Maui County Council officials, GET Committee members,

the Maui County Mayor, or others, for purposes of determining the reasonableness

of the corresponding time entries.  Many of Mr. Moriwake's entries are, as a result,

deficient or incomplete.  The Court notes that he did not claim hours for some

incomplete entries.  The Court, nonetheless, finds that several of Mr. Moriwake's

entries warrant reduction.

Ms. Brimmer's supporting declaration reflects that she, too, engaged with

various individuals during the Supreme Court phase.  *See* ECF No. 492-4 at 3 ¶ 5.

Ms. Brimmer's time entries reflect numerous communications via e-mail and

teleconferences.  The corresponding time entries identify the reason for these

communications but many of them do not identify all participants, as required by

LR 54.2(f)(3).  For example, on January 8, 2019, Ms. Brimmer billed 2.3 hours for

---

[18]  *See, e.g.*, ECF No. 498-8 at 23 (05/26/2019 "Emails, t/cs re status and strategy"
(1.1); 05/28/2019 "T/cs re status and strategy" (1.4)).

"emails and tel. confs. regarding amicus; review our response to SG."  ECF No. 498-8 at 24.[19]

The Court cannot determine from this or other similarly worded time entries the participants of Ms. Brimmer's e-mails and teleconferences, whether with co-counsel, with or about amici, amici and other counsel, or individuals whose participation would (or would not) be pertinent to this case.  In some entries, Ms. Brimmer identifies the participants.[20]  For two entries that do not include teleconference participants, Ms. Brimmer provides the required details in her declaration.  *See* ECF No. 492-4 at 5-6 ¶ 12.  Overall, however, the Court finds that Ms. Brimmer's entries are inconsistent, and the Court is unable to determine, from one deficient entry to the next, whether the hours claimed are reasonable.  The Court thus, recommends that the district court reduce inadequately described time

---

[19]  Other examples include:  01/14/2019 "email regarding status" (0.1); 01/16/2019 "emails and tel. conf. regarding amicus parties" (0.4); 02/19/2019 "emails regarding cert and review amicus rule" (.8); 02/26/2019 "tel. conf. regarding specific petitioner arguments and strategies for response and follow up emails" (1.6); 08/27/2019 "emails regarding ongoing settlement discussions; tel. conf. regarding argument strategies" (1.5).  ECF No. 498-8 at 24, 26.

[20]  *See, e.g.*, ECF No. 498-8 at 24 (02/26/2019 "emails with SELC and attorneys regarding amici" (0.5); 03/01/2019 "tel. conf. with Waterkeepers and Harvard regarding fact research and potential amici; emails related to same" (2.0)).

entries by one-half.  The recommended hours awarded after a 50% reduction are as

follows:  (1) Mr. Moriwake—6.1 hours;[21] and (2) Ms. Brimmer—16.85 hours.[22]

### f.    Block-Billed Time Entries

The practice of block-billing violates Local Rule 54.2(f), which requires that

a memorandum in support of a motion for attorneys' fees describe "the work

performed by each timekeeper, broken down by hours expended on each task . . . ."

LR54.2(f).  "Block billing entries generally fail to specify a breakdown of the time

spent on each task."  *Au*, 933 F. Supp. 2d at 1276.  The Ninth Circuit has

recognized a district court's authority to reduce hours that are billed in block

format.  *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("We do

not quarrel with the district court's authority to reduce hours that are billed in

---

[21]  The Court recommends the district court reduce the following 12.2 hours by
Mr. Moriwake by 50% for inadequate time entry descriptions:  09/01/2019 (4.5);
09/02/2019 (7.7).  ECF No. 498-8 at 23.

[22]  The Court recommends the district court reduce the following 33.7 hours by
Ms. Brimmer by 50% for inadequate time entry descriptions:  01/08/2019 (2.3);
01/10/2019 (1.2); 01/14/2019 (0.1); 01/16/2019 (0.4); 01/22/2019 (0.2);
02/19/2019 (0.8); 02/20/2019 (0.2); 02/21/2019 (2.8); 02/25/2019 (0.7);
02/26/2019 (1.6); 02/28/2019 (0.6); 03/04/2019 (1.8); 03/12/2019 (0.6);
03/13/2019 (0.3); 03/14/2019 (0.3); 03/19/2019 (0.1); 03/20/2019 (0.1);
04/16/2019 (0.3); 05/01/2019 (0.1); 05/06/2019 (0.2); 05/07/2019 (0.8);
05/14/2019 (0.1); 05/16/2019 (0.5); 05/17/2019 (0.3); 05/23/2019 (0.5);
06/19/2019 (0.9); 06/20/2019 (1.2); 06/21/2019 (0.1); 06/25/2019 (1.3);
06/28/2019 (1.7); 06/30/2019 (0.1); 07/01/2019 (0.3); 07/02/2019 (0.2);
07/05/2019 (0.4); 07/08/2019 (0.9); 07/09/2019 (1.0); 07/10/2019 (0.9);
07/11/2019 (0.2); 07/12/2019 (2.2); 08/27/2019 (1.5); 09/03/2019 (0.1);
10/10/2019 (3.4); 07/21/2021 (0.4).  ECF No. 498-8 at 24–26.

block format."). Generally, the district court "may properly impose a reduction for block billing, but it should 'explain how or why . . . the reduction . . . fairly balance[s] those hours that were actually billed in block format." *Id*. (citing *Sorenson*, 239 F.3d at 1146).

This district court has previously declined to impose a reduction for block-billed entries. In doing so, the court found "limited instances" of block-billing that did not prevent the court from evaluating the reasonableness of the hours expended. *See Santana v. Berryhill*, Civil No. 16-00367 ACK-KJM, 2017 WL 4211044, at *4 (D. Haw. Aug. 31, 2017), *adopted by* No. CV 16-00367 ACK-KJM, 2017 WL 4202153 (D. Haw. Sept. 21, 2017) (citations omitted) ("The limited instances of block-billed entries . . . do not prevent the Court from evaluating the reasonableness of the hours expended."); *Dep't of Educ. Haw. v. C.B. ex rel. Donna B.*, Civil No. 11-00576 SOM-RLP, 2012 WL 7475406, at *10 (D. Haw. Sept. 28, 2012) (citing *Ko Olina Dev., LLC v. Centex Homes*, CV. NO. 09-00272 DAE-LEK, 2011 WL 1235548, at *11 (D. Haw. Mar. 29, 2011) (declining to apply a percentage reduction for block-billing because "[v]iewing the record as a whole, the limited instances of block billing do not prevent the Court from evaluating the reasonableness of the hours expended").

Defendant claims that Plaintiffs' summary hourly statements contain block-billed entries, giving only Ms. Brimmer as an example of an attorney who billed in block format. *See* ECF No. 496 at 12. After carefully reviewing the parties'

submissions, the Court finds numerous entries in block format.  For example, one

of Mr. Cleveland's entries for December 17, 2020, indicates that he expended 2.7

hours to perform six distinct tasks:  "Add remote language to depo notice; review

package; submit to DLH; review DLH edits; finalize; generate copies for other

four deponents."  ECF No. 498-8 at 27.[23]

When a single entry contains multiple tasks—particularly tasks that are

clearly different, such as writing e-mails, drafting testimony, and legal research—

the Court is unable to assess the reasonableness of the hours expended on each

specific task.  The Court thus applies an across-the-board reduction of 20% to

block-billed entries.  *See Liberty Mut. Ins.*, 2017 WL 810277, at *14 (imposing an

across-the-board reduction of 20% to block-billed entries); *Painsolvers, Inc. v.

State Farm Mut. Auto. Ins. Co.*, CIV. No. 09-00429 ACK-KSC, 2012 WL

2529298, at *3 (D. Haw. June 28, 2012) (reducing block-billed hours by 20%);

*Signature Homes of Haw., LLC v. Cascade Sur. and Bonding, Inc.*, No. CV 06-

00663 JMS BMK, 2007 WL 2258725, at *3 (D. Haw. Aug. 3, 2007) (reducing

block-billed hours by 20%).

---

[23] *See also, e.g.*, ECF No. 498-8 at 23 (IHM—09/01/2019 "emails re status, draft
and revise testimony to GET committee, research and review background" (4.5));
*id*. at 24 (JB—01/09/2019 "discuss case management and amici with SELC; follow
up emails and research related to same" (2.0)); *id*. at 30 (SS—06/24/2019 "edit
brief, email and phone calls regarding briefing strategy" (2.5)).

Based on the foregoing, and accounting for prior recommended exclusions and reductions, the Court recommends that the district court impose a further 20% reduction of claimed hours, totaling 40.54 hours, by the following attorneys who logged entries containing improper block-billing: (1) Mr. Henkin—8.86 hours;[24] (2) Mr. Moriwake—15.3 hours;[25] (3) Ms. Brimmer—5.96 hours;[26]

---

[24] Accounting for prior recommended exclusions, the Court recommends that the district court impose a further 20% reduction of the following 44.3 hours by Mr. Henkin for improper block-billing: 12/10/2018 (9.8); 04/16/2019 (1.0); 04/19/2019 (1.6); 04/23/2019 (9.9); 05/20/2019 (14.0); 10/20/2019 (8.0). ECF No. 498-8 at 2, 4, 6, 9.

[25] Accounting for prior recommended exclusions and reductions, the Court recommends that the district court impose a further 20% reduction of the following 76.5 hours by Mr. Moriwake for improper block-billing: 02/28/2019 (7.0); 04/09/2019 (5.8); 04/16/2019 (6.0); 06/03/2019 (3.5); 09/01/2019 (2.25); 09/02/2019 (3.85); 09/03/2019 (16.0); 09/06/2019 (15.0); 09/20/2019 (13.0); 09/20/2021 (1.0); 09/24/2021 (1.5); 09/25/2021 (1.6). ECF No. 498-8 at 23-24.

[26] Accounting for prior recommended reductions, the Court recommends that the district court impose a further 20% reduction of the following 29.8 hours by Ms. Brimmer for improper block-billing: 01/08/2019 (1.15); 01/09/2019 (2.0); 01/16/2019 (0.2); 02/21/2019 (0.4); 02/22/2019 (1.4); 02/22/2019 (0.7); 02/26/2019 (0.8); 02/27/2019 (1.8); 03/01/2019 (2.0); 03/04/2019 (0.9); 03/06/2019 (2.0); 03/11/2019 (0.8); 03/21/2019 (0.5); 04/05/2019 (0.8); 04/17/2019 (0.3); 04/24/2019 (0.9); 04/29/2019 (2.3); 05/07/2019 (0.4); 05/17/2019 (0.15); 05/22/2019 (1.0); 06/19/2019 (0.45); 06/20/2019 (0.6); 06/25/2019 (0.65); 06/26/2019 (1.5); 06/28/2019 (0.85); 07/03/2019 (1.7); 07/08/2019 (0.45); 07/09/2019 (0.5); 07/10/2019 (0.45); 07/11/2019 (0.1); 07/12/2019 (1.1); 08/27/2019 (0.75); 07/21/2021 (0.2). ECF No. 498-8 at 24-26. Contrary to Plaintiffs' assertion, these entries are not the same as those that this Court recommended the district court to reduce based on inadequate time entry descriptions. *See* n.20 *supra*; *see also* ECF No. 500-1 at 8.

(4) Mr. Cleveland—8.82 hours;[27] and (5) Mr. Sankar—1.6 hours.[28]

g.    Amended Summary of Hours Expended

Notwithstanding the foregoing deductions, this Court finds that the

remaining 2,340.31 hours expended in this litigation are reasonable.  The following

chart is an amended summary of this Court's deductions and total compensable

hours:

\\

\\

\\

\\

\\

\\

\\

---

[27]  The Court recommends that the district court reduce the following 44.1 hours by
Mr. Cleveland by 20% for improper block-billing:  12/15/2020 (3.1); 12/17/2020
(2.7); 01/07/2021 (1.5); 01/07/2021 (0.8); 01/18/2021 (5.5); 03/17/2021 (2.5);
03/29/2021 (3.0); 03/29/2021 (2.0); 05/02/2021 (6.1); 05/04/2021 (1.0);
05/04/2021 (0.7); 05/05/2021 (2.0); 05/19/2021 (2.2); 05/19/2021 (2.5);
05/20/2021 (2.2); 05/22/2021 (1.0); 05/23/2021 (1.6); 07/21/2021 (1.0);
08/09/2021 (2.7).  ECF No. 498-8 at 27-30.  The Court notes that an additional
60.9 hours are in block format, but Mr. Cleveland does not claim those hours.  *See*
ECF No. 498-8 at 26–27, 29–30.

[28]  The Court recommends that the district court reduce the following 8.0 hours by
Mr. Sankar by 20% for improper block-billing:  06/24/2019 (2.5); 06/27/2019
(4.5); 06/28/2019 (1.0).  ECF No. 498-8 at 30.

| Attorney | Total Claimed Hours | Excessive Time | Duplicative Work | Unnecessary to Advance Litigation | Inadequate Descriptions | 20% Deduction from Block-Billed Entries | Total Compensable Hours Awarded |
|---|---|---|---|---|---|---|---|
| David L. Henkin | 1,941.2 | <60.1> | | <20.8> | | <8.86> | 1,851.44 |
| Isaac H. Moriwake | 117.7 | | <14.0> | <2.0> | <6.1> | <15.3> | 80.3 |
| Janette Brimmer | 63.6 | | | | <16.85> | <5.96> | 40.79 |
| Mahesh Cleveland | 191.5 | | | | | <8.82> | 182.68 |
| Sambhav Sankar | 28.5 | | | | | <1.6> | 26.9 |
| Scott Nelson (5/14/2019 to 5/31/2019) | 8.6 | | | | | | 8.6 |
| Scott Nelson (6/01/2019 and Following) | 149.6 | | | | | | 149.6 |
| **TOTAL HOURS** | **2,500.7** | | | | | | 2,340.31 |

3.    Amended Total Lodestar Calculation

The following is an amended breakdown of this Court's finding as to

attorneys' fees:

| Attorney | Hourly Rate | Total Hours | Total Award |
|---|---|---|---|
| David L. Henkin | $375 | 1,851.44 | $694,290.00 |
| Isaac H. Moriwake | $375 | 80.3 | $30,112.50 |
| Janette Brimmer | $400 | 40.79 | $16,316.00 |
| Mahesh Cleveland | $200 | 182.68 | $36,536.00 |
| Sambhav Sankar, Esq. | $747 | 26.9 | $20,094.30 |
| Scott Nelson, Esq. | $894 (5/14/2019–5/31/2019) | 8.6 | $7,688.40 |
| Scott Nelson, Esq. | $899 (6/01/2019 and following) | 149.6 | $134,490.40 |
| | | **TOTAL AWARD** | **$939,527.60** |

The Court finds the above amounts reasonable and declines to adjust this amended lodestar amount. Accordingly, the Court awards Plaintiffs $939,527.60 in attorneys' fees.

  B. Nontaxable Costs

   Lastly, in addition to attorneys' fees, Plaintiffs seek to recover $71,612.27 in nontaxable costs. *See* ECF No. 492-11 at 2. "Litigation expenses" include reasonable "out-of-pocket expenses that would normally be charged to a fee-paying client." *S.F. Baykeeper v. West Bay Sanitary Dist.*, No. C-09-5676 EMC, 2011 WL 6012936, at *14 (addressing the plaintiff's requests for "other litigation expenses" under § 1365(d) (citing *Harris*, 24 F.3d at 19). "These costs and expenses 'are subject to a test of relevance and reasonableness in amount . . . . The

judge must look at the practical and reasonable needs of the party in the context of the litigation.'" *Id*. (other citation omitted) (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)).

1.    Telephone and Internet

Plaintiffs claim $170.91 for MeetingOne and Roll Call communications services for teleconferencing.  Defendant objects to these conference call expenses as "non-taxable office overhead."  *See* ECF No. 492-13 at 62.  "The description of costs of litigation in Section 505(d) of the Clean Water Act is exemplary rather than exclusive.  Indeed, the phrase has been interpreted by the D.C. Circuit broadly, allowing all expenses incurred in the course of litigation including travel and postage."  *Proffitt v. Mun. Auth. of Borough of Morrisville*, 716 F. Supp. 845, 854 (E.D. Pa. 1989), *aff'd sub nom. Profitt v. Mun. Auth. of Borough of Morrisville, Twp. of Lower Makefield*, 897 F.2d 523 (3d Cir. 1990) (citing *Alabama Power v. Gorsuch*, 672 F.2d 1, 5 (D.C. Cir. 1982)).

The Court finds that, as previously addressed, the hours Earthjustice attorneys expended communicating in this case are reasonable and compensable. As for expenses incurred in utilizing conference call services, the Court finds that teleconferencing was the most practical way for Earthjustice attorneys to communicate with large numbers of individuals and organizations during the critical Supreme Court phase.  The Court has carefully reviewed the claimed expenses, supporting declarations, and copies of billing statements.  *See* ECF No.

492-2 at 20–21 ¶¶ 51–52; ECF No. 492-4 at 5–6 at ¶¶ 11–12; ECF No. 492-31 at

1–6, 9–10; ECF No. 492-44 at 1–3, 5–7, 8–10. Even if Plaintiffs did not provide

copies of receipts, this Court is "content to rely upon the integrity of counsel, and

allow these expenses." *See Alabama Power Co.*, 672 F.2d at 5 (footnote omitted)

(allowing expenses absent receipted bills).

              2.     Travel and Lodging

      Plaintiffs claim $7,033.45 for travel and lodging, $6,948.82 of which

Defendant disputes. *See* ECF N. 492-13 at 62. Parsing this disputed figure further,

Defendant first objects to $1,622.83 incurred by Mr. Nelson for travel and lodging

as "discretionary attendance [to the oral argument] by non-appearing counsel."

*See* ECF No. 492-13 at 62. This Court has determined that the hours Mr. Nelson

expended attending moots and oral argument as co-counsel are reasonable and

compensable. Having carefully reviewed Mr. Nelson's declaration and

documentation of the associated expenses, the Court finds that Mr. Nelson's travel

and lodging expenses are also reasonable and recoverable. *See Johnson v. Credit

Int'l, Inc.*, 257 F. App'x 8, 10 (9th Cir. 2007) ("If the travel time was reasonably

expended, the travel costs should also be recoverable.") (citing *Chalmers*, 796 F.2d

at 1216 n.7.). *See* ECF No. 492-5 at 9–10 ¶¶ 20-24; ECF Nos. 492-45, 492-46,

492-47.

      Defendant next objects to Mr. Henkin's request for $4,330.96 in travel

expenses as non-essential. *See* ECF No. 492-13 at 62. Mr. Henkin's travel costs

covered the following trips: (1) to Washington, D.C., to meet with the Solicitor General; (2) to Maui County to make a presentation before the GET Committee; and (3) to the Stanford moot. *See id*. As discussed, the Court has determined that Mr. Henkin's travel time for these purposes is reasonable and compensable. After carefully reviewing Mr. Henkin's declaration and documentation, the Court finds the associated travel expenses to be reasonable and recoverable. *Johnson*, 257 F. App'x at 10 (citing *Chalmers*,796 F.2d at 1216 n.7). *See* ECF No. 492-2 at 17–19 ¶¶ 44-48; ECF Nos. 492-20, 492-29.

Lastly, Defendant objects, as non-essential, to Mr. Moriwake's claimed expenses of $995.03 incurred to travel to Maui County. *See* ECF No. 492-13 at 62. The Court has determined that the hours Mr. Moriwake expended attending the April 23, 2019 Maui County Council meeting are not compensable. Plaintiffs do not claim travel expenses for this meeting. *See id*. The Court finds that Mr. Moriwake's claimed travel and lodging expenses are reasonable and compensable.

   3.    Other Costs

Defendant objects to $13.60 incurred to personally deliver the letter notifying the Supreme Court of the Maui County Council's decision to settle as "[c]osts incurred for filing of inappropriate pleading." *See* ECF No. 492-13 at 62. As declared by Mr. Henkin, it was important to inform the Supreme Court of the settlement if it could conserve the Supreme Court's limited resources on oral

argument. *See* ECF No. 492-2 at 15 ¶ 40. This Court does not construe

Mr. Henkin's letter to the Supreme Court as an "inappropriate pleading" and finds

that this claimed expense is recoverable.

In summary, the Court recommends that the district court award nontaxable

costs to Plaintiff in the amount of $71,612.27.[29]

## CONCLUSION

A defendant that vigorously contests liability in a fee-shifting case faces the

well-known risk of having to pay for both its attorneys *and* the plaintiff's

attorneys. In the face of this considerable risk, and until Defendant decided to not

appeal this district court's 07/26/2021 Amended Order and 07/26/2021 Judgment,

Defendant made an informed decision to exercise its right to aggressively contest

Plaintiffs' claim. This Court finds that, Defendant having lost, this fee award

necessarily follows.

Based upon the foregoing, the Court:

(1) GRANTS Plaintiffs' Motion to Amend Findings and Recommendation

to Grant in Part and Deny in Part Plaintiffs' Motion for Award of Attorneys' Fees

and Costs ("Motion for Fees and Costs") (ECF No. 500); and

---

[29] The total nontaxable costs include: $286.37 for postage and delivery; $170.91 for telephone and internet; $4,018.23 for printing; $8,845.94 for travel; and $58,290.82 for professional services.

(2) AMENDS the December 29, 2021 Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for Award of Attorneys' Fees and Costs (ECF No. 499). Specifically, the Court RECOMMENDS that the district court GRANT Plaintiffs' request for attorneys' fees and nontaxable costs as follows:

|  |  |  |
|---|---|---|
| **(A)** | **Attorneys' Fees** | **$ 939,527.60** |
| **(B)** | **Costs** | **$ 71,612.27** |

**TOTAL** $1,011,139.87

The Court RECOMMENDS that the district court DENY Plaintiffs' Motion in all other respects.

IT IS SO ORDERED AND SO FOUND AND RECOMMENDED.

Dated: Honolulu, Hawaii, February 15, 2022.



Kenneth J. Mansfield
United States Magistrate Judge

*Hawai'i Wildlife Fund et al v. County of Maui,* Civil No. 12-00198 SOM-KJM; (1) Order Granting Plaintiffs' Motion to Amend Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for Award of Attorneys' Fees and Costs; and (2) Amended Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for Award of Attorneys' Fees and Costs